UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

YAKOV WEISLER, IN THE RIGHT OF AND
FOR THE BENEFIT OF SYCAMORE
NETWORKS, INC.,

              Plaintiff,

    v.

TIMOTHY A. BARROWS,
PAUL W. CHISHOLM,
GURURAJ DESHPANDE,
PAUL J. FERRI,
RICHARD J. GAYNOR,
JOHN W. GERDELMAN,
FRANCES M. JEWELS,
DANIEL E. SMITH,

              Defendants and

and

SYCAMORE NETWORKS, INC.,

              Nominal Defendant.

Civil Action No.

JURY TRIAL DEMANDED

## VERIFIED DERIVATIVE ACTION COMPLAINT

Plaintiff, Yakov Weisler, for his derivative action complaint, based upon the investigation of his counsel, alleges as follows on information and belief:

### SUMMARY

1.    This derivative action is brought in the right of, and for the benefit of nominal defendant Sycamore Networks, Inc. ("Sycamore" or the "Company"), against members of its Board of Directors and certain executive officers, to remedy defendants' breaches of fiduciary duties and other violations of law which have caused damage to the Company.

2.      Defendants have engaged in certain transactions, including the back-dating and canceling and reissuing of stock options, which, as a result, allowed certain employees to reap millions of dollars in unlawful windfall profits at the expense of the Company.

3.      A stock option granted to an employee of a corporation allows the employee to purchase company stock at a specified price – referred to as the "exercise price" – for a specified period of time. Stock options are granted as part of employees' compensation packages to create incentives for them to boost profitability and stock value. When an employee exercises an option, he or she purchases the stock from the company at the exercise price, regardless of the stock's price at the time the option is exercised.

4.      Option pricing is based on the price of the Company stock on the day of the grant. If an option is back-dated to a day on which the market price is lower than the price on the day the option is granted, then the employee pays less. As a result, the company receives less money for the stock when the option is exercised. Furthermore, the purchaser of the option receives a greater compensation than that to which he or she is entitled. Such conduct is unlawful.

5.      From 1999 to 2001 defendants authorized, modified, or failed to halt the back-dating of six new employee stock option grants, and cancelled and reissued six existing stock option grants, in both cases, to provide a lower exercise price for these options.

6.      As a result these employees were unjustly enriched to the detriment of Sycamore and its shareholders. Back-dating the stock option grants also breached Defendants' fiduciary duties of care, loyalty, and good faith to Sycamore.

7.      In 2005, as a result of an internal investigation, Defendants had an opportunity to, and in fact did, discover the practice of manipulating options that had occurred at the Company from 1999 to 2001. However, at the conclusion of this investigation no director or officer was

penalized and no director or officer lost his or her option grant. While the Company issued a restatement of its financials it stated merely that the changes were being made "to reflect the effects of additional non-cash stock compensation expense resulting from certain identified stock options granted during calendar years 1999 to 2001 that were erroneously accounted for." In effect Defendants, by presenting this as a minor accounting error, failed to rescind or reverse any of the manipulated stock option grants, ratified the unlawful transactions and forced the Company to absorb the loss. This is a clear breach of Defendants' fiduciary duties.

## JURISDICTION AND VENUE

8.      This Court has subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. Section 78aa. This Court also has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. § 1331, because Plaintiff's claims arise in part under the Constitution and the laws of the United States, including the Sarbanes-Oxley Act of 2002. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interests and costs. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

9.      Venue is proper in this Court pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §§1391(a) because one or more of Defendants either resides or maintains executives offices in this Judicial District, and a substantial portion the acts and transactions constituting the violations of law alleged in this Complaint occurred in substantial part in this Judicial District. Moreover, Defendants have received substantial compensation in this Judicial District by doing business here and engaging in numerous activities that had an effect in this Judicial District.

## PARTIES

**The Plaintiff**

      10.     Plaintiff Yakov Weisler is a New York resident and has been a holder of the Company's common stock since June 25, 2004.

      11.     As a current holder of Sycamore common stock and a holder during the period of the wrongs alleged herein, Plaintiff has standing to assert these claims on behalf of the Company and will fairly and adequately protect the interests of the Company and its other stockholders.

**The Nominal Defendant**

      12.     Nominal Defendant Sycamore is a corporation duly organized and existing under the laws of the State of Delaware, with its principal executive offices and principal place of business at 220 Mill Road, Chelmsford, Massachusetts 01824. Founded in 1998, the Company went public in October 1999. Sycamore engages in the development and marketing of optical networking products for domestic and international wire line and wireless network service providers, and government entities with private fiber networks. Its networking product portfolio includes optical switching products, network management products, and design and planning tools.

**The Director Defendants**

      13.     The following parties, sometimes referred to herein as the "Director Defendants," during the relevant time period, served as members of the Board of Directors of the Company as follows:

      14.     Defendant Gururaj Deshpande ("Deshpande") has served as Chairman of Sycamore's board of directors since its inception in February 1998. He served as Sycamore's Treasurer and Secretary from February 1998 to June 1999 and as Sycamore's President from February 1998 to October 1998. Defendant Deshpande resides in Andover, Massachusetts.

15.     Defendant Daniel E. Smith ("Smith") has served as Sycamore's President, Chief Executive Officer and as a member of Sycamore's board of directors since October 1998. Defendant Smith resides in Norwood, Massachusetts.

16.     Defendant Timothy A. Barrows ("Barrows") has served as a director since February 1998. Mr. Barrows has been a member of the Compensation Committee since the Company went public. Defendant Barrows resides in Cambridge, Massachusetts.

17.     Defendant Paul W. Chisholm ("Chisholm") has served as a director since October 2002. Defendant Chisholm resides in Medford, Massachusetts.

18.     Defendant Paul J. Ferri ("Ferri") has served as a director since February 1998. Mr. Ferri has been a member of the Compensation Committee since the Company went public. Defendant Ferri resides in Weston, Massachusetts.

19.     Defendant John W. Gerdelman ("Gerdelman") has served as a director since September 1999. Defendant Gerdelman resides in Williamsburg, Virginia.

**The Officer Defendants**

20.     The following parties, sometimes referred to herein as the "Officer Defendants," who, under the direction of Mr. Deshpande, served in direct and substantial management positions during the relevant time period as follows:

**Defendant Gaynor**

21.     Defendant Richard J. Gaynor ("Gaynor") has served as the Company as Chief Financial Officer, Vice President of Finance and Administration, Treasurer and Secretary pursuant to a letter arrangement dated October 5, 2004. Defendant Gaynor resides in Northhampton, Massachusetts.

22.     Since October 2004, Defendant Gaynor has supervised the Company's financial transactions and has signed and submitted several Securities and Exchange Commission ("SEC") fillings regarding the Company's financial conditions.

23.     In 2005, Defendant Gaynor conducted and/or supervised an internal investigation into the Company's prior stock option grants.  The investigation revealed, among other things that the Company had been manipulating stock options in order to give certain employees more favorable exercise prices.

24.     As a result of the investigation, Defendant Gaynor caused the Company to restate its financial statements for the years of 2000 to 2004.  However, as indicated in the Company's amended Form 10-K/A, signed and submitted by Defendant Gaynor to the SEC on September 12, 2005, defendant failed to reveal the full extent of the improprieties and instead treated it as a mere accounting problem.

**Defendant Jewels**

25.     Defendant Frances M. Jewels ("Jewels") served as Chief Financial Officer, Vice President of Finance and Administration, Treasurer and Secretary of Sycamore from 1999 until her resignation effective October 5, 2004.  Defendant Jewels resides in Sudbury, Massachusetts.

26.     At all times from 1999 until her resignation in 2004, Defendant Jewels was the Chief Financial Officer of the Company.  During this period Defendant Jewels authorized, modified, or failed to halt the back-dating and/or the cancellation and reissuing, of options in dereliction of her fiduciary duties to the Company, thus causing or allowing the Company to suffer millions of dollars in harm.

27.    On October 21, 2003, and on August 23, 2004, Defendant Jewels signed and submitted Form 10-K annual reports to the SEC that were false and misleading in that they concealed and failed to reveal Defendant's improper manipulation of stock option grants.

28.    The Director Defendants and Officer Defendants are sometimes collectively referred to herein as the "D&O Defendants."

## FACTS

29.    On June 7, 2005, the Company announced that it would delay the filing of its second quarter Form 10-Q with the SEC pending the conclusion of an internal investigation relating to the accounting of certain stock options granted during the period from 1999 to 2001, including whether additional stock compensation expenses should have been recorded during the period under review.

30.    On August 26, 2005, the Company announced that it had concluded the investigation and that, "as a result, the Board of Directors, upon the recommendation of Sycamore's management, determined that the Company's financial statements should be restated for fiscal years 2000 through 2004, to reflect the additional non-cash stock compensation expense amortized over the vesting period of the identified options.... [A]djustments are currently estimated to amount to an aggregate of $33.8 million of additional non-cash stock compensation expense over the six-year period." The Company further revealed that the investigation had revealed "the existence of a material weakness in the Registrant's internal controls related to stock option accounting." At no time did Defendants reveal that stock options had been back-dated or manipulated in any way. No director or officer was penalized and no executive lost his or her option grant.

31.     On September 12, 2005, the Company filed a Form 10-K/A with the SEC,

detailing its restated financials for the period from 2000 to 2004.  In Note 3, buried at page 51 of

this filing, the Company stated:

> The Company's decision to restate these financial statements was
> based on the findings of an independent investigation into the
> Company's stock option accounting that was conducted under the
> direction of the Audit Committee of its Board of Directors. The
> independent investigation identified certain stock options granted
> during calendar years 1999 to 2001 that were erroneously
> accounted for under generally accepted accounting principles
> ("GAAP"). **The options identified consisted of (i) six new
> employee stock option grants in which the employment start
> date records were deliberately modified and six existing stock
> option grants that were deliberately cancelled and reissued, in
> both cases, to provide a lower exercise price for these options,
> (ii) options granted under the April 14, 2000 broad based stock
> option grant program, where from a review of supporting
> records it appeared that the number of options granted likely
> was not ultimately determined until April 26, 2000,** (iii) three
> stock option grants that continued to vest following a change in
> grantees' employment status without the Company recording an
> appropriate corresponding stock compensation charge, and (iv) one
> stock option grant that was improperly accounted for due to an
> inadvertent recording error.
>
> **The restatement adjustments increased net loss by $0.8 million,
> $1.6 million and $29.9 million for the years ended July 31,
> 2003, 2002 and 2001, respectively and decreased net income by
> $1.4 million for the year ended July 31, 2000** and had a
> negligible impact on net loss for the year ended July 31, 2004. The
> cumulative effect of the restatement adjustments on the Company's
> consolidated balance sheet at July 31, 2004 was an increase in
> additional paid-in capital offset by a corresponding increase in the
> accumulated deficit and deferred compensation which results in a
> net effect in the stockholders' equity section of $0. The
> adjustments reduced previously reported diluted earnings per
> common share by $.01 and $.12 for the years ended July 31, 2002
> and 2001, respectively. There was no impact to previously reported
> diluted earnings per common share for the years ended July 31,
> 2004, 2003 and 2000. (Emphasis supplied)

As evidenced in this filing the D&O Defendants were fully aware of the inappropriate conduct that had taken place, which included the back-dating of options, and the canceling and reissuing of options in order to give certain employees more beneficial exercise prices. Irrespective of this revelation the Company continued to highlight only the accounting problems while down playing the importance of the inappropriate conduct. Furthermore, as a result of these findings the D&O Defendants did nothing to rectify the situation. No options grants were rescinded or reversed, and there is no indication that any of the employees suffered any adverse consequence as a result of this breach of fiduciary duty. In fact, what did happen is that the Company was forced to absorb the additional expenses, to the detriment of both the Company and its Shareholders.

32. On May 19, 2006, The Wall Street Journal published an analysis of stock options granted to chief executive officers of half a dozen companies in an article titled, "U.S. INTENSIFIES STOCK-OPTIONS PROBE: Subpoenas by Prosecutors in Manhattan Office Signal Major Step-up in scrutiny." The subject matter of this article, and several others in previous and subsequent days, was the illegal backdating of stock option grants to senior executives at the expense of public companies like Sycamore and its shareholders.

33. That same day, the staff of the Securities and Exchange Commission informed Sycamore that it had commenced a formal investigation related to certain stock options granted by the Company during calendar years 1999 through 2001 that were erroneously accounted for under generally accepted accounting principles.

**SUBSTANTIVE ALLEGATIONS**

34. In 1999 the Company had in place two stock option plans: the 1999 Non-Employee Director Stock Option Plan (the "Director Plan"), and the 1998 Stock Incentive Plan (the "1998 Plan"). The 1998 Plan alleges that it was established in order "to advance the

interests of the Company's stockholders by enhancing the Company's ability to attract, retain and motivated persons who make (or are expected to make) important contributions to the Company."

35.     Both option plans were administered by the Compensation Committee, which at all relevant times was composed of Defendants Barrows and Ferri.   Both option plans required that "[t]he purchase price of the stock covered by an option granted pursuant to this Plan shall be 100% of the fair market value of such shares on the day the option is granted."

36.     Between 1999 and 2001, the Company, through the actions of its Board of Directors and its Compensation Committee, granted back-dated stock options, and cancelled and reissued stock options, in order to give more favorable exercise prices to certain Company employees.

37.     As a result of the improper manipulation of stock options by the D&O Defendants certain employees have been unjustly enriched at the expense of the Company.  The Company has received and will continue to receive less money from these employees when they exercise their options at prices substantially lower than they would have if the options had not been back-dated.

38.     In its public filings with the SEC and shareholder approved stock options plans, the Company represented that the exercise price of all of the stock options was in fact the fair market value of the Company's common stock, measured by the publicly traded closing price for the Company stock, on the date of the grant.

39.     Contrary to the provisions in the Company's stock option plans, however, as evidenced by Defendants' own internal investigation and subsequent restatement, the stock

options were not priced on the date of the grant, but were in fact back-dated or otherwise manipulated.

40.    The D&O Defendants stood in a fiduciary relationship with the Company's shareholders and thereby owed them duties of due care and loyalty. These duties require the board of directors to act in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner he or she reasonably believes to be in the best interest of the Company and its shareholders.  Disclosing complete and accurate information regarding the improper manipulation of stock option grants falls squarely within a director's and officer's fiduciary duties.

41.    The D&O Defendants violated their fiduciary duties to the Company by failing to act with due care, loyalty and good faith, when they either expressly authorized the practice of manipulating stock options, or in conscious abrogation of their fiduciary duties, permitted it to occur.

42.    The D&O Defendants also breached their duties when they misrepresented and/or caused the Company to misrepresent in public SEC filings that the stock options were priced at no less than the fair market value of the stock on the date of the grant, thereby affirmatively concealing the claims set forth herein.

43.    The D&O Defendants further violated their fiduciary duties when even after being confronted with evidence of, and admitting to, the improper manipulation of stock option grants, they caused the Company to disseminate false and misleading information to indicate that the improper conduct was a mere accounting problem, concealing the greater wrongdoing and took no further action to correct the problems.

44.     The D&O Defendants' misrepresentations about their stock option pricing practices were known to be false or were made in reckless disregard of its truth or falsity, and the concealment could not have been discovered through reasonable diligence by the typical shareholder, prior to commencement of the SEC investigation.

45.     The D&O Defendants' breaches of their fiduciary duties have exposed the Company to a number of harms including: the expense of internal investigation; the expense of SEC investigations; the potential liability under tax laws and federal securities laws; the possibility of having to restate financial results; and liability to stock purchasers.

## DERIVATIVE ACTION AND DEMAND FUTILITY ALLEGATIONS

46.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress the injuries suffered, and to be suffered, by the Company as a direct result of the breach of fiduciary duty, waste of corporate assets, and unjust enrichment alleged herein. The Company is named as a nominal defendant solely in a derivative capacity.

47.     Plaintiff will adequately and fairly represent the interest of the Company in enforcing and prosecuting its rights.

48.     Plaintiff did not make demand on the Board of Directors of the Company to bring this action on behalf of the Company because such a demand would have been a futile, wasteful and useless act for the following reasons:

(a)     Between 1999 and 2001, Defendants Barrows, Deshpande, Ferri, Gerdelman, and Smith were all part of the Board of Directors that approved, ratified or failed to halt the manipulation of stock options, they are interested and demand upon them is futile;

(b)     In 2005, all of the D&O Defendants, after full review of the Company's stock option practices that revealed back-dating and canceling and reissuing of stock options,

ratified or failed to rectify some or all of the back-dated stock option grants at issue here and are named as defendants herein.

(c)     All of the Director Defendants signed off on and submitted to the SEC a restatement of the Company's financials which failed to indicate the full extent of the problem and instead minimized it as a mere accounting irregularity.

(d)     The Compensation Committee was at all relevant times responsible for overseeing the Company's stock option plans.  The Compensation Committee was required to report back to the entire Board on all aspects of compensation prior to approving any one stock option grant.  The members of the Compensation Committee, and the Board by its approval of their recommendations, enabled, or through conscious abdication of duty, permitted the Company to manipulate the stock options issued. By such actions, Defendants breached their fiduciary duties to the Company. The back-dating, and canceling and reissuing, of stock options was in direct violation of the Company's stock option plans;

(e)     The back-dating, and canceling and reissuing as alleged herein was unlawful and not within Defendants' business judgment to acquire, authorize, ratify or facilitate;

(f)     There was no basis or justification for back-dating, and canceling and reissuing the stock options.  It was illegal and/or designed solely to benefit of certain employees in a manner that was inconsistent with the Company's stock option plans and the Company's public disclosures to the detriment of the Company.  Hence, the transactions constituted a waste of corporate assets, and could not have been the product of the proper exercise of business judgment by the Defendants;

(g)     All of the Defendants authorized the filing of shareholder approved stock option plans, which misrepresented that the options carry the stock price of the day of the award.

Any suit by the Defendants to remedy the wrongs complained of herein could also expose them to suit for securities fraud and proxy violations; thus, they are hopelessly conflicted in making any supposedly independent determination of a demand that they cause the Company to bring this action.

(h)    The D&O Defendants signed the Company's Annual Report on Form 10-K/A restating the Company's financials for the period between 2000 and 2004. This said restatement was false and misleading in that it failed to fully disclose the nature and extent of the improper option grants. Further because Defendants breached their fiduciary duties by imposing the costs of these improper option grants on the Company, instead of on the wrongdoers, any suit by the Defendants to remedy the wrongs complained of herein could also expose them to suit for securities fraud; thus, they are hopelessly conflicted in making any supposedly independent determination of a demand that they cause the Company to bring this action;

(i)    All of the D&O Defendants participated in, approved, or through abdication of duty, permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company stockholders and/or acting with negligence and gross negligence disregarded the wrongs complained of herein, and therefore are not disinterested parties;

(j)    On information and belief, the D&O Defendants are protected against liability for breaches of fiduciary duty alleged in the Complaint by directors' and officers' liability insurance policies. As a result, if Defendants were to cause the Company to sue itself or certain officers of Sycamore, there would be no directors' and officers' insurance protection. This is yet another reason why Defendants are hopelessly conflicted in making any independent determination that would cause the Company to bring this action.

14

(k)     Despite the D&O Defendants' breaches of duty, the Board of Directors did not recommend that any Defendant be relieved of his or her duties as director or officer. By maintaining the *status quo* in light of these breaches of duty, the entire Board failed to exercise proper business judgment and therefore lacks independence.

(l)     Most egregiously, the Board of Directors did not require that any employee disgorge all of their ill-gotten gains from their improper manipulation of their stock option grants and other misconduct, did not require them to return all unexecuted stock options to the Company, and did not require them to disgorge their bonuses and equity-based compensation to the Company, despite their indisputable breaches of fiduciary duties, which worked a direct harm to the Company. Nor did the Board of Directors take any other action, including commencing legal proceedings, to protect the interests of the Company.

## COUNT I

### Against All Defendants For Violations of Section 14(a) of the Exchange Act

49.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

50.     Director Defendants issued, caused to be issued and participated in the issuance of materially false and misleading statements to shareholders which was contained in the Company's Definitive Proxy filed on November 17, 2005, which misrepresented or failed to disclose, *inter alia,* the facts set forth above. By reasons of the conduct alleged herein, each Director Defendant violated Section 14(a) of the Exchange Act. The information would have been material to the Company's shareholders in determining whether to elect directors to manage their company.

51.    Plaintiff, on behalf of the Company, thereby seeks to void the election of Director Defendants based upon the misleading and incomplete proxy materials, and to recover damages caused by Defendants' failure to disclose the improper compensation described herein.

### COUNT II

**Against Defendants Deshpande, Smith, Gaynor and Jewels
For Disgorgement Under Sarbanes-Oxley Act Of 2002**

52.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

53.    Pursuant to Sarbanes-Oxley Act of 2002 § 304, because the Company restated its financials for fiscal years 2000 to 2004, and the first two quarter of 2005, due material noncompliance with GAAP, as a result of false and misleading financial statements, Director Defendants Deshpande and Smith, as the Company's CEO during the restatement period, and Officer Defendants Gaynor and Jewels as CFOs during the restatement period, are required to reimburse the Company for all bonuses or other incentive-based or equity-based compensation received by them from the Company during fiscal years 2000 to 2004, and the first two quarters of 2005.

54.    Director Defendants Deshpande, Smith, Jewels, and Gaynor are also liable to Plaintiff for reasonable costs and attorneys' fees in the prosecution of this derivative action on behalf of the Company.

### COUNT III

**Against All Defendants for Breach of Fiduciary Duty**

55.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

56.    The Defendants owe the Company fiduciary obligations. By reason of their fiduciary relationships, the Defendants owed and continue to owe the Company the highest obligation of good faith, fair dealing, loyalty and due care.

57.    The Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision in that each of the Defendants authorized, or by abdication of duty, permitted the stock options granted to the D&O Defendants to be back-dated. Additionally, Defendants ratified the improper actions and concealed them by ratifying them and/or minimizing their importance as mere accounting errors. These actions were not a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

58.    Furthermore, even after an internal investigation into the Company's stock option practices, and commencement of a formal investigation by the SEC, the D&O Defendants have done nothing to rectify the problem. Instead the Company was forced to absorb the additional expense.  No employees were fired, no stock option grants were rescinded, and no action was taken to recover the money from those that had been unjustly enriched.  This is a breach of the D&O Defendants' fiduciary duty to the Company.

59.    As a direct and proximate result of the D&O Defendants' breaches of their fiduciary duties, Defendants have caused, and will continue to cause, the Company to suffer substantial monetary damages, including $33.8 million in additional expense to the Company, as a result of the wrongdoing described herein, as well as further and even greater damage in the future, including damage to the Company's reputation, business and good will.

60.    The Company has been directly and substantially injured by reason of the D&O Defendants' intentional breach and/or reckless disregard of their fiduciary duties to the

Company. Plaintiff, as a shareholder and representative of the Company, seeks damages and other relief for the Company, in an amount to be proven at trial.

## COUNT IV

### Against All Defendants for Gross Mismanagement

61.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

62.     By their actions alleged herein, the Defendants abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of the Company in a manner consistent with the operations of a publicly held corporation, in that the Defendants concealed evidence of the improper and illegal back-dating of stock options by not informing investors of the full scope of the problem but minimizing the improprieties as mere accounting issues.

63.     As a direct and proximate result of the Defendants' gross mismanagement and breaches of duty alleged herein, the Company has sustained and will continue to sustain significant damages in the millions of dollars. Thus far Defendants' ratification of the improprieties have caused the Company to take on an additional expense of at least $33.8 million.

64.     As a result of the misconduct and breaches of duty alleged herein, the Defendants are liable to the Company.

## COUNT V

### Against Defendants For Waste Of Corporate Assets

65.     Plaintiff incorporates by reference all paragraphs above as if set forth herein.

66.     By engaging in the wrongdoing alleged herein, Defendants wasted corporate assets by, among other things, ratifying and accepting the improperly granted stock option grants

18

and the improperly manipulated stock options at the expense of the Company. By ratifying and approving the improper manipulation and back-dating of stock options Defendants caused the Company to take on at least $33.8 million in additional expenses.

67.     Additionally, Defendants' failure to recover the improperly secured profits has damaged the goodwill and reputation of the Company, and has exposed the company to civil and criminal liability.

68.     As a direct and proximate result of Defendants' wrongful conduct, the Company has suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     Against all of the Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Defendants' breaches of fiduciary duties, gross mismanagement, waste of corporate assets and unjust enrichment;

B.     Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of Defendants' trading activities or their other assets so as to assure that plaintiff on behalf of the Company have an effective remedy;

C.     Awarding to the Company restitution from the D&O Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the D&O Defendants as a result of the conduct alleged herein;

D.     Awarding to the Company pre- and post-judgment interest on any and all monetary judgments and awards by the Court;

D.  Awarding to the Company pre- and post-judgment interest on any and all monetary judgments and awards by the Court;

E.  Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.  Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated:  May 31, 2006

CHIMICLES & TIKELLIS LLP

Pamela S. Tikellis (#2172)
Robert J. Kriner, Jr. (#2546)
A. Zachary Naylor (#4439)
One Rodney Square
Post Office Box 1035
Wilmington, DE  19899
Tel:  (302) 656-2500
Fax: (302) 656-9053

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
Jeffrey G. Smith
Lawrence P. Kolker
Gustavo Bruckner
Martin Restituyo
270 Madison Avenue
New York, New York 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653

**LAW OFFICES OF JACOB T. FOGEL**
Jacob T. Fogel, Esq.
32 Court Street – Suite # 602
Brooklyn, New York 11201

I, Yakov Weisler, declare that I am a shareholder of Sycamore Networks, Inc. common stock and have continuously so owned Sycamore Networks, Inc. common stock since June 25, 2004.

I have reviewed the foregoing Verified Derivative Action Complaint, and authorized its filing. Based upon the investigation of my counsel, the allegations in the Complaint are true to the best of my knowledge, information and belief.

This Verification is made subject to the penalties of perjury under the laws of the United States.

Dated: May 23 2006

Yakov Weisler

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
YAKOV WEISLER, IN THE RIGHT OF AND FOR THE BENEFIT OF SYCAMORE NETWORKS, INC.

## DEFENDANTS
Timothy A. Barrows, See following page for additional defendants.

**(b)** County of Residence of First Listed Plaintiff **Kings County, NY**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
A. Zachary Naylor, Chimicles & Tikellis
One Rodney Square, Wilmington DE 19899

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☒ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights / ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 15 USC §78

Brief description of cause:
Derivative Action under Securities Statutes and Sarbanes Oxley

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____     DOCKET NUMBER _____

DATE 5/31/06

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

<u>Additional Defandants</u>:

Paul W. Chisholm
Gururaj Deshpande
Paul J. Ferri
Richard J. Gaynor
John W. Gerdelman
Frances M. Jewels
Daniel E. Smith

　　　　　and

Sycamore Networks, Inc.,

　　　　Nominal Defendant