UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| YAKOV WEISLER, IN THE RIGHT OF AND FOR THE BENEFIT OF SYCAMORE NETWORKS, INC., <br><br> Plaintiff, <br><br> v. <br><br> TIMOTHY A. BARROWS, PAUL W. CHISHOLM, GURURAJ DESHPANDE, PAUL J. FERRI, RICHARD J. GAYNOR, JOHN W. GERDELMAN, FRANCES M. JEWELS, DANIEL E. SMITH, <br><br> Defendants, <br><br> - and - <br><br> SYCAMORE NETWORKS, INC., <br><br> Nominal Defendant. | Civil Action No. 06-00362-GMS |

**PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS' MOTION TO TRANSFER VENUE**

CHIMICLES & TIKELLIS LLP
Pamela S. Tikellis (#2172)
Robert J. Kriner, Jr. (#2546)
A. Zachary Naylor (#4439)
Daniel J. Brown (#4688)
One Rodney Square
P.O. Box 1035
Wilmington, DE 19899
(302) 656-2500
*Attorneys for Plaintiff*

WOLF HALDENSTEIN ADLER FREEMAN &
HERZ LLP
Jeffrey G. Smith
Lawrence P. Kolker
Gustavo Bruckner
Martin Restituyo
270 Madison Avenue
New York, NY 10016
(212) 545-4600
*Of Counsel*

LAW OFFICES OF JACOB T. FOGEL
Jacob T. Fogel, Esq
32 Court Street – Suite #602
Brooklyn, NY 11201
*Of Counsel*

Dated: August 11, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT ........................................................................................................ 2

    I.      DEFENDANTS' MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(A) SHOULD BE DENIED ................................................................................ 2

        A.     Standard ................................................................................................ 2

        B.     Convenience And Fairness Weigh In Favor Of Keeping This Action In The District of Delaware ...................................... 3

             1.     Weight Should Be Accorded To Plaintiffs' Choice Of Forum .. 4

             2.     The private interests to be considered ........................................ 4

                  a)     Where the claim arose ....................................................... 5

                  b)     Convenience Of The Parties as demonstrated by their financial condition .............................................................. 5

                  c)     Convenience of the Witnesses ............................……...... 6

                  d)     The Location Of Relevant Documents And Access to Proof. ……………………………………………...…...6

             3.     The public interests to be considered ........................................ 7

CONCLUSION ................................................................................................. 9

# TABLE OF AUTHORITIES

**CASES**                                                                                              **Page(s)**

*Aerotel, Ltd. v. Sprint Corp.*,
   100 F. Supp. 2d 189 (S.D.N.Y. 2000)................................................................7

*In re Amendt*,
   169 Fed. Appx. 93 (3d Cir. 2006) ................................................................3

*C.R. Bard, Inc. v. Guidant Corp.*,
   997 F. Supp. 556 (D. Del. 1998)................................................................4

*Conley v. Gibson*,
   355 U.S. 41 (1957)................................................................4

*Continental Casualty Co. v. American Home Assurance Co.*,
   61 F. Supp. 2d 128 (D. Del. 1999)................................................................1

*Distefano v. Carozzi North America, Inc.*,
   No. 98 CV 7137(SJ), 2002 WL 31640476
   (E.D.N.Y. Nov. 16, 2002)................................................................7

*Duncan v. International Business Machines Corp.*,
   95-cv-1785, 1996 WL 720106
   (S.D.N.Y. Dec. 13, 1996)................................................................7

*Elbeco Inc. v. Estrella de Plato, Corp.*,
   989 F. Supp. 669 (E.D. Pa. 1997) ................................................................6

*In re M.L.-Lee Acquisitions Fund II, L.P.*,
   816 F. Supp. 973 (D. Del. 1993)................................................................2, 4

*Jacobs v. Tenney*,
   316 F. Supp. 151 (D. Del. 1970)................................................................8

*Jumara v. State Farms Ins. Co.*,
   55 F.3d 873 (3d. Cir. 1995)................................................................ *passim*

*Rogal v. Skilstaf, Inc.*,
   05-cv-6073, 2006 U.S. Dist. LEXIS 13477
   (E.D. Pa. June 26, 2006) ................................................................2

*Schreiber v. Eli Lilly & Co.*,
   05-cv-2616, 2006 U.S. Dist. LEXIS 13477
   (E.D. Pa. Mar. 27, 2006)................................................................6

*Shutte v. Armco Steel Corp.*,
    431 F.2d 22 (3d. Cir. 1970)..............................................................................2

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988).........................................2

*Superior Precast, Inc. v. Safeco Ins. Co. of Am.*,
    71 F. Supp.2d 438 (E.D. Pa. 1999) ..................................................................6

*Thales Airborne Systems S.A. v. Universal Avionics Systems Corp.*,
    05-853-SLR, 2006 U.S. Dist. LEXIS 41895
    (D. Del. June 21, 2006)...................................................................................2

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964)........................................................................................1

**STATUTES AND RULES**

28 U.S.C. § 1404(a) ........................................................................................ *passim*

**OTHER AUTHORITIES**

15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and
Procedure* § 3853 (2d ed. 2004) ......................................................................7

## PRELIMINARY STATEMENT

Defendants Timothy A. Barrows, Paul W. Chisholm, Gururaj Deshpande, Paul J. Ferri, Richard J. Gaynor, John W. Gerdelman, Frances M. Jewels, Daniel E. Smith, and Sycamore Networks, Inc., (collectively, "Defendants," or "Movants") fail to demonstrate adequate grounds to transfer this case to the United States District Court for the District of Massachusetts.

This case should be litigated and tried in the District of Delaware for two reasons. *First*, this is the forum that plaintiff properly chose to sue in, and plaintiff's election is entitled to deference. *Second*, transfer of this action to the District of Massachusetts would not be more efficient, but would simply shift some inconvenience to the plaintiff.

The factors to be applied under 28 U.S.C. § 1404(a) do not support transfer of venue to Defendants' preferred forum. Movants fail to establish that a transfer from the District of Delaware to the District of Massachusetts would serve the interests of justice. *See Jumara v. State Farms Ins. Co.*, 55 F.3d 873, 879 (3d. Cir. 1995). Here, the parties and the non-party witnesses are scattered, rather than concentrated in the Movants' proposed forum. There is no significant efficiency to be gained by uprooting this litigation and transplanting it to Massachusetts. Merely shifting the inconvenience between the parties is not enough to shift the balance of convenience in favor of a transfer. *Continental Cas. Co. v. Am. Home Assurance Co.*, 61 F. Supp. 2d 128 (D. Del. 1999). As the Supreme Court has noted, "Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964). In sum, Defendants utterly fail to establish that the Court should override the plaintiff's choice of venue.

**ARGUMENT**

I.   **DEFENDANTS' MOTION TO TRANSFER**
     **VENUE UNDER 28 U.S.C. § 1404(a) SHOULD BE DENIED**

     A.   **The Applicable Standard**

Motions to transfer under 28 U.S.C. § 1404(a) lie within the discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis.[1] *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988). However, "a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d. Cir. 1970).  The burden of establishing the need to transfer rests with the movant to establish that the balance of convenience of the parties and witnesses strongly favors the defendants. *Thales Airborne Sys. S.A. v. Universal Avionics Systems Corp.*, 05-853-SLR, 2006 U.S. Dist. LEXIS 41895 (D. Del. June 21, 2006).  Unless the balance of convenience is strongly in favor of the defendants, the plaintiff's choice of forum should prevail. *Shutte*, 431 F.2d at 25.  Moreover, transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of transfer.  *In re M.L.-Lee Acquisition Fund II, L.P.*, 816 F. Supp. 973, 976 (D. Del. 1993).

The inquiry on a motion to transfer is two-fold in the District of Delaware. *First*, the district court must determine whether the case could have been brought in the proposed transferee district. Where, as here, the answer is in the affirmative, then, *second*, the district court must evaluate a number of private and public interest factors to determine whether transfer is appropriate. *See Rogal v. Skilstaf, Inc.*, 05-cv-6073, 2006 U.S. Dist. LEXIS 44407 (E.D. Pa. June 26, 2006).  The private interests to be considered may include the following: (1) plaintiff's forum

---

[1] There is no dispute that venue in the District of Delaware is proper under 28 U.S.C. §1401.

preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *Jumara,* 55 F.3d at 879.

The public interests to be considered may include: (1) the enforceability of the judgment; (2) practical considerations that could expedite or simplify trial; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the judge with the applicable state law in diversity cases. *Id.*

Movants fail to demonstrate that these factors point strongly to their chosen forum. Instead, these factors demonstrate that the case implicates Delaware, New York, Virginia, Massachusetts, and possibly additional jurisdictions as well. Thus, in this case, Movants have failed to meet their burden of showing that the relevant factors weigh heavily in favor of a transfer to the District of Massachusetts. This Court should retain control of this case and deny Defendants' motion.

### B.     Convenience And Fairness Weigh In Favor Of Keeping This Action In The District Of Delaware

As a threshold matter, the burden of establishing the inconvenience of forum rests with the proponent of the transfer. *In re Amendt,* 169 Fed. Appx. 93 (3d Cir. 2006). Movants have failed to meet their burden on their motion to transfer as none of the below factors weighs strongly in favor of a transfer. In fact, due consideration of all of the relevant factors in this case militate against transfer.

3

### 1. Weight Should Be Accorded To Plaintiff's Choice Of Forum

The plaintiff's choice of forum will govern as long as the plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 562 (D. Del. 1998) (the court refused to transfer venue to California, even though defendant's headquarters were in California, most of the relevant witnesses were in California, the relevant documents were in California, and the parties had been involved in other litigation in California). The weight given to the plaintiff's chosen forum reflects a fundamental policy underlying the Federal Rules that the plaintiff is the master of its own complaint and that its choice of forum, like the particulars of its pleadings, should be treated with liberality. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Even where the plaintiff has not chosen its "'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor transfer." *In re M.L.-Lee Acquisition Fund II, L.P.*, 816 F. Supp. at 976 (the Court refused to transfer the case to Massachusetts where defendant's principal place of business, the relevant documents and a number of the witnesses were in Massachusetts).

It is the District of Delaware, and not the District of Massachusetts, where plaintiff properly initiated this action. Because plaintiff's choice of venue should be given deference, *see id.*, Movants must show that the remaining factors weigh heavily in favor of the District of Massachusetts. As demonstrated below, they have not met this burden.

### 2. The Private Interests To Be Considered

The Third Circuit, in *Jumara*, stated that the following private interests may be considered upon a motion to transfer a case: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the

convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *Jumara,* 55 F.3d at 879. Here, plaintiff has chosen Delaware and Defendants would prefer to litigate in Massachusetts. The remaining "private" factors fail to override plaintiff's choice.

### a)     Where The Claim Arose

In determining the locus of operative facts a court must look to the site of events from which the claims arise. There is more than one site for the events at issue in this case.  While some events relevant to this case took place outside of this jurisdiction (as is true in almost every case involving alleged misconduct of officers and directors of large publicly-traded corporations), many of these events did not occur in Movants' proposed forum either.

These facts alleged by plaintiff took place not only in Massachusetts, as Movants argue, but also in Delaware, Washington, D.C., New York, and possibly other places as well. [2]   Thus, while some important events occurred in Massachusetts, it is not the only site from which the claims of the Complaint arise.  Therefore, the "center of gravity of the litigation" is not heavily tilted in favor of transfer to any other jurisdiction and this factor provides insufficient support to warrant granting the motion to transfer.

### b)     Convenience Of The Parties As Demonstrated By
###         Their Financial Condition

The convenience of the parties does not weigh in favor of transfer where such transfer would merely shift the inconvenience of litigating in a particular forum from one party to the

---

[2] This is because Sycamore is incorporated in Delaware; Defendants filed allegedly fraudulent documents with the SEC in Washington, D.C.; the Company is publicly traded on the NASDAQ; and the U.S. Attorney's office for the Southern District of New York has commenced an investigation into Defendants' stock options practices.

other. *See Superior Precast, Inc.* v. *Safeco Ins. Co. of Am.,* 71 F. Supp. 2d 438 (E.D. Pa. 1999); *see also Elbeco Inc. v. Estrella de Plato, Corp.,* 989 F. Supp. 669 (E.D. Pa. 1997). Since this case involves Delaware and Virginia defendants, as well as Massachusetts defendants, and a New York plaintiff, one side or another will experience inconvenience during depositions and at the time of trial.[3]  Moreover, Defendants do not demonstrate that their financial condition will prevent them from defending themselves in this Court.  Movants' argument that the present venue is more inconvenient than the District of Massachusetts is simply an effort to shift inconveniences to the plaintiff.  *See Elbeco Inc.,* 989 F. Supp. 669 (the court refused to transfer the case to Texas where the transfer would only serve to shift the inconvenience from the defendant to the plaintiff).  Therefore, this factor weighs against transfer from the proper venue in the District of Delaware.

### c)    Convenience of the Witnesses

Under *Jumara,* the Court is to consider the convenience the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in this District. *Jumara,* 55 F.3d at 879.  Here Defendants seek a transfer merely to provide a greater convenience to the witnesses; they have presented no evidence, however, to indicate that any of the witnesses would be unavailable for trial in this district.

### d)    The Location Of Relevant Documents And Access To Proof

Consideration of the location of books and records is "limited to the extent that the files could not be produced in the alternative forum." *Jumara,* 55 F.3d at 879. Where documents can be produced in the alternative forum the location of these documents is irrelevant to the venue analysis. *See Schreiber v. Eli Lilly & Co.,* 05-cv-2616, 2006 U.S. Dist. LEXIS 13477 (E.D. Pa.

---

[3] Defendant Sycamore Networks, Inc., is incorporated in Delaware; defendant John W. Gerdelman is a Virginia resident; and defendants Timothy A. Barrows, Paul W. Chisholm, Gururaj Deshpande, Paul J. Ferri, Richard J. Gaynor, Frances M. Jewels, and Daniel E. Smith are Massachusetts residents.

Mar. 27, 2006). Courts that have considered this factor recently have consistently recognized that the location of physical evidence such as documents is no longer of great (or perhaps any) importance because advances in technology have made it straightforward and inexpensive to copy and ship (or electronically transfer) documents worldwide. *See* 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3853 (2d ed. 2004) ("Many records are easily transported and their location is entitled to little weight, and this is particularly true with the development of xerography and the easy availability of copies.").[4]

While most of the documents relating to the production of Sycamore's corporate records may be physically located in Massachusetts, in this day of electronic discovery, Movants have not shown that retaining this action in this District would hinder or burden their access to these sources of proof. As such Defendants fail to show that this is a basis for transferring the case to the District of Massachusetts.

### 3. The Public Interests To Be Considered

The Third Circuit in *Jumara*, stated that the following public interests may be considered upon a motion to transfer a case:: (1) the enforceability of the judgment; (2) practical considerations that could expedite or simplify trial; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the judge with the applicable state law in diversity cases. *Jumara,* 55 F.3d at 879.

---

[4] *Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000) ("The location of documents factor is neutral '[i]n today's era of photocopying, fax machines and Federal Express.'") (citation omitted); *Distefano v. Carozzi N. Am., Inc.*, No. 98 CV 7137(SJ), 2002 WL 31640476, at *4 (E.D.N.Y. Nov. 16, 2002) ("modern photocopying technology deprives this issue of practical or legal weight"); *Duncan v. International Business Machines Corp.*, 95-cv-1785, 1996 WL 720106, at *6 (S.D.N.Y. Dec. 13, 1996) (denying motion to transfer).

Here, there is no question about the enforceability of judgment, no showing that the case will be tried more simply or quickly in Massachusetts or that the District of Delaware is more congested, nothing about the case of a uniquely local nature, no particular local public policy concern, and no showing that this Court will have any difficulty applying applicable state law. Indeed, since Sycamore is incorporated in Delaware, it is Delaware law, and not Massachusetts law, that will govern most state law issues.

Movants sole argument with respect to these public interests concerns is based on its hope that this, and a similar case filed in the District of Massachusetts, will be combined for Defendant's convenience. Movants rely on *Jacobs v. Tenney*, 316 F. Supp. 151, 169 (D. Del. 1970), to make this argument. In *Jacobs*, the case was transferred out of Delaware because at the time of filing there were already seven pending and consolidated actions in New York. Those are not the facts of this case. Here there are three related cases filed against Defendants, two of which are currently pending in Delaware Courts.[5]

This case was the first case to be brought against Defendants. The Massachusetts case was the last one to be filed.[6] Defendants' effort to change the forum of this case has nothing to do with the public interest, and everything to do with Defendants' desire to move this case to their home base, where they believe they will receive favorable treatment.

Overall, consideration of the private and public interest factors makes it clear that Movants have failed to meet their burden of strongly demonstrating that transfer to the District of

---

[5] In addition to this case there is a case currently pending in the Delaware Court of Chancery, *Desimone v. Barrows, et. al.*, CA2210-N, and one pending in the District Court of Massachusetts, *Vanpraet v. Despande, et. al.*, Civ. A. No. 06-11130-RCL.

[6] This case was filed on May 31, 2006, *Desimone v. Barrows, et. al.*, CA2210-N was filed in the Delaware Court of Chancery on June 9, 2006, and *Vanpraet v. Despande, et. al.*, Civ. A. No. 06-11130-RCL, was filed in the District of Massachusetts on June 28, 2006.

Massachusetts is warranted under 28 U.S.C. § 1404(a). Accordingly, this motion should be denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to transfer this case to the District of Massachusetts should be denied.

Dated: August 11, 2006                           Respectfully submitted,

                                                 **CHIMICLES & TIKELLIS LLP**

                                                 Pamela S. Tikellis (#2172)
                                                 Robert J. Kriner, Jr. (#2546)
                                                 A. Zachary Naylor (#4439)
                                                 Daniel J. Brown (#4688)
                                                 One Rodney Square
                                                 Post Office Box 1035
                                                 Wilmington, DE 19899
                                                 Tel: (302) 656-2500
                                                 Fax: (302) 656-9053

                                                 **WOLF HALDENSTEIN ADLER
                                                 FREEMAN & HERZ LLP**
                                                 Jeffrey G. Smith
                                                 Lawrence P. Kolker
                                                 Gustavo Bruckner
                                                 Martin Restituyo
                                                 270 Madison Avenue
                                                 New York, New York 10016
                                                 Telephone: (212) 545-4600
                                                 Facsimile: (212) 545-4653

                                                 **LAW OFFICES OF JACOB T. FOGEL**
                                                 Jacob T. Fogel, Esq.
                                                 32 Court Street – Suite # 602
                                                 Brooklyn, New York 11201

/447060v3

**PLAINTIFF'S BRIEF IN OPPOSITION**
**TO DEFENDANTS' MOTION TO TRANSFER VENUE**

# Exhibit 1

Westlaw.

Not Reported in F.Supp.2d                                                                                          Page 1
Not Reported in F.Supp.2d, 2002 WL 31640476 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,E.D. New York.
Pino DISTEFANO, Plaintiff,
v.
CAROZZI NORTH AMERICA, INC. Defendant.
**No. 98 CV 7137(SJ).**

Nov. 16, 2002.

New York resident who had been terminated from position in which he worked out of New York office brought suit against his former employer, a Delaware corporation with its principal place of business in Rhode Island, alleging national origin discrimination. On employer's motion to transfer venue for the convenience of parties and witnesses, and in the interest of justice, the District Court, Johnson, J., held that convenience factors did not support transfer of employment discrimination action to District of Rhode Island.

Motion denied.

West Headnotes

**Federal Courts 170B** 🌣106.5

170B Federal Courts
    170BII Venue
        170BII(B) Change of Venue
            170BII(B)1 In General; Venue Laid in Proper Forum
                170Bk106 Determination in Particular Transferable Actions
                    170Bk106.5 k. In General. Most Cited Cases
                        (Formerly 170Bk106)
Convenience factors did not support transfer of employment discrimination action from Eastern District of New York to District of Rhode Island, where employer had its principal place of business; whereas employer could obtain live witnesses in either forum, employee would not be able to subpoena his witnesses to appear in Rhode Island, both parties would face same burden in litigating action far from their homes, situs of employee's injury was in New York, relevant documents could be easily photocopied, and New York district was more familiar with New York employment

discrimination law. 28 U.S.C.A. 1404(a).

Daniel A. Eigerman, New York, New York, for Plaintiff.
Kent, Beatty & Gordon, New York, New York, By: Jack A. Gordon, for Defendant.

*MEMORANDUM AND ORDER*
JOHNSON, J.
**\*1** Plaintiff Pino DiStefano ("Plaintiff" or "DiStefano") brings this action against Defendant Carozzi North America, Inc. ("Defendant" or "Carozzi"), his former employer, alleging discrimination on the basis of national origin in violation of New York Executive Law § 296(1)(a) and New York City Administrative Code Section 8-107(a). Defendant has previously moved to dismiss the action for lack of personal jurisdiction and/or improper venue, or, in the alternative, to transfer the case to the District of Rhode Island. On January 24, 2000, this Court granted Carozzi's motion to dismiss for lack of personal jurisdiction. Plaintiff then appealed this Court's decision to the Second Circuit. On October 18, 2001, the Second Circuit vacated and remanded the action for further proceedings consistent with its finding that New York was the "situs of injury" because Plaintiff experienced the "first effect" of losing his job in New York. *DiStefano v. Carozzi North America, Inc.,* 286 F.3d 81, 85 (2d Cir.2000). Presently before this Court is Carozzi's renewed motion to transfer this case to the District of Rhode Island, pursuant to 28 U.S.C. § 1404(a).[FN1]

> FN1. Defendant initially renewed its motion to dismiss for improper venue, or, in the alternative, to transfer the case to the District of Rhode Island. By letter dated April 10, 2002, Defendant withdrew that portion of the motion seeking dismissal of the action.

*DISCUSSION*

Title 28 of the United States Code delineates procedural requirements of the federal courts. Subsection (a) of Section 1404 permits the court to grant transfer of venue "for the convenience of parties and witnesses, in the interest of justice" to any other district where the case might have been

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31640476 (E.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

brought. 28 U.S.C. § 1404(a) (2002). Congress drafted this statute in order to permit courts to grant transfer upon a lesser showing of inconvenience than required by the doctrine of *forum non conveniens*. *See Norwood v. Kirkpatrick,* 349 U.S. 29, 31, 75 S.Ct. 544, 99 L.Ed. 789 (1955) (permitting transfer of venue for the convenience of the parties and clarifying federal courts' broad discretion to grant transfer under 28 U.S.C. § 1404(a)).

Plaintiff's choice of forum should only be disturbed by a § 1404(a) motion if the plaintiff's choice of forum is "completely and utterly outweighed by the severe inconvenience of the defendant." *Laumann Mfg. Corp. v. Castings USA, Inc.,* 913 F.Supp. 712, 721 (E.D.N.Y.1996). "The courts of this Circuit are loath to disturb a plaintiff's choice of venue absent a showing that the balance of convenience and justice weights heavily in favor of transfer." *See Nat'l Util. Serv., Inc. v. Queens Group, Inc.,* 857 F.Supp. 237, 242 (E.D.N.Y.1994) (internal quotation marks and citations omitted). The criteria used to determine whether transfer of venue is appropriate include: (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the availability of process to compel the attendance of unwilling witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the district court's familiarity with governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interest of justice. *See Schwartz v. Marriott Hotel Servs., Inc.,* 186 F.Supp.2d 245, 248 (E.D.N.Y.1994).

**\*2** In this Court's view, Defendant has not met its burden of convincing the Court to disturb Plaintiff's choice of venue. Although Defendant is headquartered in Rhode Island and this dispute could have been brought in that District initially, Defendant fails to demonstrate a balance of equities that tips in favor of transferring venue.

## I. Convenience of Available Witnesses

Convenience to the witnesses "is the most powerful factor governing the decision to transfer a case." *In re Repetitive Stress Injury Litig.,* 850 F.Supp. 188, 194 (E.D.N.Y.1994). Courts consider the convenience of witnesses in order to minimize the burden such witnesses must face and to secure live testimony at trial. *In re Repetitive Stress Injury Litig.,* 850 F.Supp. at 194. It is not the number of prospective witnesses in each district that determines the appropriateness of

a venue transfer, but rather, "the materiality of their anticipated testimony." *Schwartz,* 186 F.Supp.2d at 249 (E.D.N.Y.1994). Another important factor in the court's determination of a transfer motion is the ability to compel the attendance of witnesses. *Merkur v. Wyndham Int'l, Inc.,* No. 00 civ 5843, 2001 WL 477268 at \*4 (E.D.N.Y. Mar.30, 2001). The Court cannot require "a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business" to appear before it. Fed.R.Civ.P. 45(c)(3)(A)(ii). "[T]o fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their case on deposition, is to create a condition not satisfactory to the court, jury or most litigants." *See Gulf Oil v. Gilbert,* 330 U.S. 501, 511, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *see also In re Repetitive Stress Injury Litig.,* 850 F.Supp. at 194 ("[D]epositions ... even when videotaped, are no substitute for live testimony.") (citing *Ledingham v. Parke-Davis Div.,* 628 F.Supp. 1447, 1451 (E.D.N.Y.1986)).

In the present case, the convenience of witnesses strongly favors litigating this case in the Eastern District of New York. Plaintiff has identified five witnesses whom he expects to call as material witnesses in this case. Of these, three are affiliated with New York customers of Carozzi and reside in New York, one resides in New Jersey, and one resides in Italy. (2002 DiStefano Aff. ¶¶ 7-8, 16.) If the case at bar were transferred, none of Plaintiff's third-party witnesses would be within the subpoena power of the District of Rhode Island because they reside more than one hundred miles away from that court. The lack of subpoena power coupled with the long-distance travel required if the witnesses were to voluntarily appear before the court could impede trial and would impose substantial expense on witnesses and on the plaintiff. If this Court were to grant Defendant's motion to transfer, Plaintiff would be unduly prejudiced by his inability to secure live testimony at trial. Denying transfer will "allow live trials at lesser expense, an important factor in determining whether to transfer a case." *In re Repetitive Stress Injury Litig.,* 850 F.Supp. at 194 (citing *Kreisner v. Hilton Hotel Corp.,* 468 F.Supp. 176, 178 (E.D.N.Y.1979)). Defendant contends that the proposed testimony of DiStefano's New York based witnesses is irrelevant to this litigation because those witnesses intend to testify regarding Plaintiff's sales performance, a subject which Defendant argues is immaterial because Carozzi did not cite "inadequate sales performance" with any New York customer as a reason why he was terminated. (Def.'s

Not Reported in F.Supp.2d                                                                Page 3
Not Reported in F.Supp.2d, 2002 WL 31640476 (E.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Reply at 7.) The Court finds that Defendant has made Plaintiff's job performance an issue in this case, thus this testimony is material. (*See* 1999 Woulfe Aff. ¶ 16 ("I had several discussions with DiStefano regarding unsatisfactory aspects of his work performance."), ¶ 18 ("Because of ongoing problems with DiSefano's work performance, the Board decided, during its meetings in Rhode Island in August 1997, to terminate DiStefano's employment unless he provided an acceptable written report of his business activities to me by August 8, 1997.").)

*3 Conversely, Defendant has identified five individuals it expects to call as material witnesses at trial. Three of the five witnesses are employees or directors of the Defendant corporation. (2002 Woulfe Aff. ¶ 3.) The other two witnesses are a former employee and a former board member of Defendant. (*Id.*) In light of the fact that Carozzi's witnesses are or were employed by them, Defendant would not face a problem securing live testimony at trial in the Eastern District of New York. *See Merkur, 2001 WL 477268 at *4* ("[T]he employees of the parties will as a practical matter be available in any venue by virtue of the employment relationship."); *Dwyer v. General Motors Corp., 853 F.Supp. 690, 694 (S.D.N.Y.1994)* (holding that where defendant's witnesses were experts who would be in their employ, it is unnecessary to compel their testimony at trial). If this Court were to hear this case within the Eastern District of New York, then both parties would be able to present the majority of their witnesses at trial.

## II. Other Factors

The Court finds that, on balance, the secondary factors that should be considered when deciding a motion for transfer of venue also weigh in favor of maintaining jurisdiction in New York.

### A. Relative Means

"Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." *800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F.Supp. 128, 135 (S.D.N.Y.1995); see also Dwyer, 853 F.Supp. at 693-94* (denying transfer where "Plaintiffs are individuals who are suing a large corporation which possesses considerably greater financial assets."); *Goldstein v. Rusco Indus., Inc., 351 F.Supp. 1314, 1318*

*(E.D.N.Y.1972)* (denying transfer where plaintiff was a person of "modest means" and could not "match resources with defendant.") Carozzi asserts that it employs at most five persons, and is not a "large corporation," and thus the "relative means of the parties" should not be a material consideration. (Gordon Aff. Ex. C at 17.) Defendant further asserts that it has operated at a loss and contends that it would be forced to cease operations during trial. (2002 Woulfe Aff. ¶ 6.) Although the difficulties of litigating this case a significant distance from home or business will weigh upon either party, the Court does not find that Defendant's burden would be any more onerous than it would be on Plaintiff, and thus there is no reason to disturb Plaintiff's choice of venue.[FN2]

> FN2. Defendant also contends that DiStefano's prior litigation of a workers' compensation claim in Rhode Island indicates that he would not be burdened by future litigation in Rhode Island. (1999 Woulfe Aff. ¶ 19; Def.'s Reply at 5.) The prior litigation of a workers' compensation claim in Rhode Island is not relevant to Plaintiff's ability to litigate the action at hand.

### B. Locus of Facts

The location of the operative facts underlying a claim is another secondary factor in determining a motion to transfer venue. *Billing v. Commerce One, Inc., 186 F.Supp.2d 375, 377 (E.D.N.Y.2002); ZPC 2000, Inc. v. SCA Group, Inc., 86 F.Supp.2d 274, 279 (S.D.N.Y.2000).* To determine the "locus of operative facts," a court must look to the "site of the events from which the claim arises." *Micro-Assist, Inc. v. Cherry Communications, Inc., 961 F.Supp. 462, 467 (E.D.N.Y.1997)* (quoting *800-Flowers, 860 F.Supp. at 134).* The Carozzi corporate headquarters is located within the District of Rhode Island, and Plaintiff concedes that the alleged "discriminatory decision" that underlies his claims may have been made within the District of Rhode Island. (Pl.'s Mem. at 13.) However, the Second Circuit found that New York is the "situs of injury." *DiStefano, 286 F.3d at 85.* Furthermore, Defendant has made Plaintiff's job performance an issue in this case. Plaintiff performed his job, at least in part, from his office located in Staten Island, within the Eastern District of New York. Accordingly, Defendant has failed to prove that the locus of operative facts is within the District of Rhode Island.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4
Not Reported in F.Supp.2d, 2002 WL 31640476 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

### C. Location of Documents

**\*4** Although the location of relevant documents is entitled to some weight when determining whether a case should be transferred, *see In re Repetitive Stress Injury Litig.,* 850 F.Supp. at 194, modern photocopying technology deprives this issue of practical or legal weight. *See Merkur,* 2001 WL 477268 at \*3; *Duncan v. IBM,* No. 95 Civ. 1785, 1996 WL 720106 at \*6 (S.D.N.Y. Dec.13, 1996). Hence, this Court finds that the location of potentially relevant documents in Rhode Island is not grounds for transfer.

### D. District Court's Familiarity with the Law

Courts favor "having the trial of a diversity case in a forum that is at home with the state law that must govern the case." *Ferens v. John Deere Co.,* 494 U.S. 516, 530, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990) (quoting *Gulf Oil,* 330 U.S. at 509). Plaintiff brings some of his claims under New York State law. The Court respectfully observes that it may be more familiar with New York State law than the District Court of Rhode Island. Thus, this factor weighs in favor of retaining jurisdiction over this matter.

### E. Docket Congestion

Finally, the Court finds that the potential claim of trial efficiency is of limited importance. Although docket congestion might favor transfer from the Eastern District of New York to the District of Rhode Island, this factor does not carry Defendant's burden of tipping the balance in favor of transfer. *See Wine Markets Int'l Inc. v. Bass,* 939 F.Supp. 178, 183 (E.D.N.Y.1996) (denying transfer despite a comparative analysis by movant of the higher caseload in the Eastern District than in the proposed transferee district); *Laumann Mfg. Co.,* 913 F.Supp. at 712 (denying transfer despite a showing of docket congestion in the Eastern District of New York).

In this Court's view, Carozzi has not met its burden to convince this Court to disturb Plaintiff's choice of venue. Although the Defendant corporation is located in Rhode Island and this dispute could have been brought in the District of Rhode Island, Carozzi fails to indicate a balance of equities that tips in favor of transferring venue to the District of Rhode Island.

### CONCLUSION

For the foregoing reasons, Defendant's motion for transfer of venue to the District of Rhode Island is hereby DENIED.

E.D.N.Y.,2002.
Distefano v. Carozzi North America, Inc.
Not Reported in F.Supp.2d, 2002 WL 31640476 (E.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 2000 WL 34498248 (Trial Motion, Memorandum and Affidavit) Affidavit of Michelle L. Machado, Esq. (Jan. 01, 2000)
• 2000 WL 34498250 (Trial Motion, Memorandum and Affidavit) Affidavit in Opposition to Motion (Jan. 01, 2000)
• 2000 WL 34498253 (Trial Motion, Memorandum and Affidavit) Affidavit of Linda Woulfe (Jan. 01, 2000)
• 1999 WL 33930031 (Trial Motion, Memorandum and Affidavit) Affidavit of Linda Woulfe (Jul. 01, 1999)
• 1:98cv07137 (Docket) (Nov. 16, 1998)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**PLAINTIFF'S BRIEF IN OPPOSITION**
**TO DEFENDANTS' MOTION TO TRANSFER VENUE**

# Exhibit 2

Not Reported in F.Supp.                                                                                      Page 1
Not Reported in F.Supp., 1996 WL 720106 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

**H**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Eulene P. DUNCAN and David Duncan, Plaintiffs,
v.
INTERNATIONAL BUSINESS MACHINES
CORPORATION and Smith Corona Corporation,
Defendants.
**No. 95 CIV. 1785 MBMMHD.**

Dec. 13, 1996.

*MEMORANDUM & ORDER*
DOLINGER, United States Magistrate Judge:
*1 Plaintiff Eulene Duncan filed suit in March 1995 seeking damages for personal injuries she sustained during the course of her employment as a typist and correspondence clerk. She alleges that she suffers from repetitive stress injuries ("RSI") caused by defendants' keyboards, which she claims were defectively designed. Mrs. Duncan asserts claims of negligence, failure to warn, and strict products liability. In addition, her husband, David Duncan, asserts a claim for loss of consortium. Together plaintiffs request $1.5 million dollars in compensatory damages and $10 million in punitive damages.

Defendant IBM has moved to transfer this case, pursuant to 28 U.S.C. § 1404(a), to the Northern District of Texas, where plaintiffs reside and work. Plaintiffs oppose the motion.[FN1]

> FN1. Defendant Smith Corona filed for bankruptcy protection on July 5, 1995 and thus all actions against it are automatically stayed pending resolution of the bankruptcy proceedings.

After reviewing both sides' submissions, we deny defendant's motion. IBM has not presented sufficient grounds to overcome the presumption favoring plaintiff's choice of forum.

*FACTS*

This is one of a growing number of cases brought by individuals alleging repetitive stress injuries from occupational use of computer keyboards, typewriters, and similar equipment. Plaintiff Eulene Duncan works as a typist and correspondence clerk for the Immigration and Naturalization Service, U.S. Department of Justice, in Dallas, Texas. (*See* Complaint at ¶ 4). She alleges that substantial typing on her IBM keyboard during the course of her employment caused her to suffer numbness, tingling and pain in her arms, neck and torso. (*See* Compl. at ¶ ¶ 2-6; Affidavit of Steven J. Phillips, sworn to Nov. 2, 1995 ("Phillips Aff."), at ¶ 5). A local physician has diagnosed her as suffering from epicondylitis of the right upper extremity, and has been treating her for the condition. (*See* Compl. at ¶ 7; Phillips Aff. at ¶ 5).

Defendant IBM is a New York corporation with its principal place of business in New York. (*See* Compl. at ¶ 1; Phillips Aff. at ¶ 9). In 1983, IBM established its "VDT Ergonomics Project Office" in White Plains, New York for the purpose of gathering and disseminating information on ergonomics and the health and safety of visual display terminals. (*See* Phillips Aff. at ¶ 17; Deposition of Paul Snayd at 82-83[FN2]). The Project Office coordinated and participated in the development of educational and training materials discussing RSI as well as other health issues. (*See* Phillips Aff. at ¶ ¶ 18, 25-28). Among the Project Office's publications were a brochure entitled "Health and Safety Aspects of Visual Displays" (*see* Phillips Aff. at ¶ 25 & Exh. 8; Snayd Dep. at 213-14) and a videotape entitled "Health and Comfort Using Visual Displays." (*See* Phillips Aff. at ¶ 27 & Exh. 10; *see also* Exh. 11 for additional educational and training materials published by the Project Office). Several IBM officials responsible for researching keyboard-related injuries and setting health and safety policy reside or work in New York. These include the Director of Corporate Health, Manager of Safety and Industrial Hygiene, Manager of IBM Process Safety Technology, Manager of the VDT Ergonomics Project Office, Director of Human Factors/Ergonomics, and Director of Occupational Health Services. (*See* Phillips Aff. at ¶ ¶ 12, 23, 29, 32, 35, 37).

> FN2. The Deposition of Paul Snayd is located as Exhibit 3 to the Phillips Affidavit.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 2
Not Reported in F.Supp., 1996 WL 720106 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

*2 In response to plaintiff's claims, IBM asserts that Ms. Duncan's injuries, if any, were caused not by its equipment, but by other factors, such as plaintiff's work environment, work habits, activities outside of work, or other medical conditions.

### ANALYSIS

A federal district court may transfer an action "to any other district or division where it might have been brought" when transfer is "for the convenience of parties and witnesses" or is "in the interest of justice." See 28 U.S.C. § 1404(a). It is undisputed that this action might have been brought in the Northern District of Texas. Jurisdiction of this action is proper based on diversity of citizenship of the parties, and the amount in controversy exceeds $50,000. See 28 U.S.C. § 1332(a)(1). The defendants are amenable to personal jurisdiction in Texas and venue is proper as a "substantial part of the events giving rise to the claim" occurred in that district. See 28 U.S.C. § 1391(a)(2). The threshold statutory requirement for transfer is thus satisfied. Therefore, we turn to the issue of whether such transfer is warranted.

As a general rule, "motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." In re Cayuhoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992). In ruling on a motion to transfer, courts should consider both the interests of the litigants and the public interest. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).

The interests of the litigants include "the plaintiffs' initial choice of forum, the convenience of the parties and the witnesses, the relative ease of access to sources of proof, the availability of compulsory process for the attendance of witnesses, the location of relevant documents and other tangible evidence ... and all other practical problems that make trial of a case easy, expeditious and inexpensive." S-Fer Int'l, Inc. v. Paladion Partners, Ltd., 906 F. Supp. 211, 212 (S.D.N.Y. 1995) (quoting Gulf Oil, 330 U.S. at 508). See also IDT Worldwide Inc. v. Supreme Int'l Corp., 1995 WL 702359, at *2 (S.D.N.Y. Nov. 28, 1995).

The public interest includes such matters as exacerbation of court congestion, any local interest in having the controversy decided at home, and the desirability of trying a diversity case in the state whose law will govern the action. See, e.g., Gulf Oil,

330 U.S. at 508-09; S-Fer Int'l, 906 F. Supp. at 213. The party seeking the transfer bears the burden of demonstrating that the relevant factors weigh in favor of a change in venue. Id.

### 1. Plaintiff's Choice of Forum

A plaintiffs' choice of forum should not be disturbed unless "the balance of the factors tips heavily in favor of a transfer." S-Fer Int'l, 906 F. Supp. at 213 (citing Dwyer v. General Motors Corp., 853 F. Supp. 690 (S.D.N.Y. 1994); Nat'l Util. Serv., Inc. v. Queens Group, 857 F. Supp. 237 (S.D.N.Y. 1994)). See also IDT Worldwide, Inc., 1995 WL 702359, at *1 (quoting Prudential Ins. Co. v. BMC Indus., Inc., 626 F. Supp. 652, 654 (S.D.N.Y. 1985)). Defendant argues that this principle should be disregarded here. I disagree.

*3 The plaintiffs, Texas residents, have chosen to file their suit in the Southern District of New York. IBM asserts that plaintiffs' choice of forum should be granted "little weight" because there is "no material connection" between the Southern District of New York and the facts and issues in the case. See Anadigics, Inc. v. Raytheon Co., 903 F.Supp. 615, 617 (S.D.N.Y. 1995) (quoting Bordiga v. Directors Guild of America, 159 F.R.D. 457, 462 (S.D.N.Y. 1995) (presumption favoring plaintiff's choice of forum does not apply where there is "no material connection" between the chosen forum and the facts or issues of the case)). Defendants also note that, in April 1994, the Hon. Denis Hurley transferred a number of RSI cases similar to this one to the home districts of the plaintiffs involved. See In re Eastern Dist. RSI Litig., 850 F. Supp. 188 (E.D.N.Y. 1994). Judge Hurley held that, in the cases before him, the claims had no connection to New York and that the plaintiffs' choice of forum was therefore entitled to little deference. Id. at 194.

In our view, the defendant's argument must fail, as the present case reflects a clear and material connection to New York. The most significant issue to be presented at trial will likely be causation. Although proving causation will involve some exploration of Ms. Duncan's use of the keyboards and her medical history -- events that occurred in Texas -- it will also involve evidence regarding keyboard design and the manufacturer's awareness of the health risks inherent in keyboard use. The witnesses and documents relating to IBM's design and testing of its equipment, as well as its research findings on health, ergonomics, and keyboard-related injuries, are

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 720106 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 3

located in New York. This is sufficient to establish a material connection.

For example, IBM's "VDT Ergonomics Project Office" was established in New York to assemble and distribute information on health and safety aspects of visual display terminals. (*See* Phillips Aff. at ¶ 17; Snayd Dep. at 82-83). The Project Office was considered "the control point for IBM VDT activities." (*See* Report from VDU Task Force ¶ 11, located at Exh. 4 to Phillips Aff.). Similarly, IBM's directors of corporate and occupational health as well as several ergonomics and process safety managers reside or work in New York. (Phillips Aff. at ¶ 12). Moreover IBM internal reports and company publications concerning health and safety when using keyboards were prepared in New York and are kept at IBM's New York offices. (*See, e.g.,* Phillips Aff. Exhs. 8, 10-12).

In short, plaintiffs have established a substantive nexus between their claims and New York. Accordingly, their choice of forum merits presumptive deference. *See Sunshine Cellular v. Vanguard Cellular Sys., Inc.,* 810 F. Supp. 486, 500 (S.D.N.Y. 1992) ("Even when the plaintiff is not a resident of the chosen forum, his choice is still entitled to significant weight"); *GPA Inc. v. Liggett Group., Inc.,* 1994 WL 537017, at * 3 (S.D.N.Y. Oct. 4, 1994).

**\*4** The question to which we therefore turn is whether defendant has offered sufficient evidence to overcome the presumption in favor of plaintiffs' choice of forum. In answering this question, we address the remaining factors individually.

### 2. Locus of Operative Facts

IBM insists that Texas is the sole locus of operative facts since that is where the injury arose and where plaintiff receives medical treatment. IBM alleges that plaintiff's work habits, circumstances of employment, activities outside of work, and medical history may have caused her injuries. Therefore, a trial will require testimony about the details of plaintiff's work and lifestyle. Specifically, defendant will want to present evidence about plaintiff's work schedule and job responsibilities, her posture when using the keyboard, her activities outside of work, such as sports or similar physical exertions, her medical history, including related diseases and any predisposition plaintiff may have had toward developing RSI. The witnesses and documents that

can provide this information are located in Texas, thereby making Texas, according to IBM, the locus of operative facts.

Plaintiffs contend that the bulk of relevant evidence is located in New York. IBM designed and tested its keyboards and conducted much of its ergonomic and medical research on keyboard-related injuries in New York. IBM's specialists on RSI are located in New York. These specialists performed their research studies in New York and authored relevant reports in this state. Thus the plaintiffs assert that the vast majority of proof concerning causation will revolve around corporate records, documents, and witnesses situated here.

We find that the operative facts in this case are located in both districts. Both plaintiff's work and medical history and evidence regarding product development and design are central to determining causation. To the extent that the core issue of causation implicates both districts, transfer would merely shift the case from one to another without achieving any net benefit for the parties. This factor therefore does not weigh in favor of transfer. *See, e.g., S-Fer Int'l,* 906 F. Supp. at 215.

### 3. Convenience of the Witnesses and Ability to Compel Attendance

The convenience of witnesses is considered a particularly compelling factor guiding the decision to transfer a case. *In re Eastern District RSI Litigation,* 850 F. Supp. at 194. In this case, key witnesses are located both in New York and in Texas.

Plaintiffs have identified by name seven individuals who they believe are critical liability witnesses and who will be unavailable by subpoena if the case is transferred. (*See* Phillips Aff. at ¶ 12). Each of these individuals is an IBM employee knowledgeable about IBM's ergonomic research and education of customers. A trial in New York would enable the plaintiffs to secure live testimony from these witnesses.

Because plaintiffs are from Texas, however, witnesses familiar with plaintiff's employment and injury presumably reside in that state. These include plaintiff's supervisors, co-workers, and physicians, whose testimony may be significant to IBM's affirmative defenses. IBM states that if the case is not transferred, it will be unable to compel these witnesses to testify live. Defendant contends that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                Page 4
Not Reported in F.Supp., 1996 WL 720106 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

these witnesses will testify about maintenance of the keyboard that plaintiff used, the plaintiff's physical position vis-a-vis the keyboard, the frequency of her use of the keyboard, her activities outside of work, her medical history, and the extent of her damages. Defendant further argues that live testimony is necessary. Obviously a transfer to Texas would secure those witnesses' live testimony at trial.

**\*5** It must be noted, however, that any inconvenience to these witnesses would arise only in the event that they are compelled to testify in person. Each party has witnesses who may not be amenable to compulsory trial process and who will not come to testify live in the absence of such process. Witnesses who live outside the boundaries of the court's subpoena power will not be obliged to attend and therefore will not be inconvenienced.

Furthermore, the court is not moved by IBM's assertion that "[e]ven if certain witnesses were willing to testify, the cost of producing them in New York would be excessive and unduly burdensome." (IBM's Memorandum of Law In Support of Its Motion for Transfer at 13). This assertion is true for both sides, and IBM is surely in a better position than plaintiffs to bear the costs of transporting any willing witnesses.

No matter which forum ultimately hosts this litigation, there will be some witnesses beyond the reach of the court's subpoena power. Since this potential obstacle exists in both districts, there is no justification for overturning plaintiffs' venue preference.

Moreover, we note that any prejudice to IBM in this respect is likely to be minimal. Defendant can videotape depositions of out-of-state witnesses and thereby secure an accurate substitute for live appearances at trial. Moreover, insofar as videotaped depositions are more expensive than a court reporter, IBM is better able to bear the relevant costs than are plaintiffs.

In this regard it bears noting that the federal courts have shown consistent sensitivity to evolving technology that may facilitate efficient litigation practices. *See, e.g., Weiss v. Waves,* 132 F.R.D. 152, 153-55 (M.D. Pa. 1990) (allowing use at trial of videotaped cross-examination of witness); *cf.* H.R. Doc. No. 201, 104th Cong., 2d Sess. at pp. 3-4, 6, 9-21 (explaining amendments to Fed. R. Civ. P. 5 & 43 permitting electronic filing of court papers and use of contemporaneous video transmission of live

testimony to courtroom from other locations). Present videotaping techniques can provide jurors high-quality pictures and sound, and thus go far to replicating the experience of viewing a witness live in the courtroom.[FN3]

> FN3. Given these developments, we put little weight on the Supreme Court's comment in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947), that live testimony is substantially preferable. *Id.* at 511. *Gulf Oil* was decided in 1947, long before videotaped depositions were possible, and the Court was addressing only the use of deposition transcripts or tape recordings as possible substitutes. Video technology permits the trier of fact to observe the witness's demeanor as well as listen for oral clues to the individual's credibility, and thus goes far to addressing perceived weaknesses in reliance solely on transcripts.

The only significant potential drawback of relying on videotaped testimony is that counsel cannot revise their examination to take account of unexpected developments at trial; but given the breadth of civil pre-trial discovery, the danger of such surprise is largely attenuated. Moreover, in case of surprise, the party may be able to take advantage of revised Rule 43 to obtain authorization for follow-up examination of an out-of-state witness by electronic transmission. In any event, we are offered no reason to believe that defendant in this case would confront such a problem in using videotaped depositions.

Finally, it is important to note that plaintiffs have long been engaged in the discovery process and have procured substantial discovery from IBM. (Phillips Aff. at ¶ 11). Defendant, on the other hand, has yet to begin taking its depositions. (IBM's Reply Memorandum of Law at 9). We view it as unjust to force plaintiffs to redo their depositions for the purpose of videotaping them, rather than having defendant videotape the depositions that it will be doing for the first time.

### 4. *Access to Sources of Proof*

**\*6** To prove causation, plaintiffs intend to rely heavily on documentary evidence from IBM managers and health experts, such as IBM-sponsored scientific research indicating that extensive keyboard use poses risks to the user's health. These documents

Not Reported in F.Supp.                                                     Page 5
Not Reported in F.Supp., 1996 WL 720106 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

and reports are located in IBM's New York offices. Similarly, to establish its affirmative defenses, defendant intends to rely on documentary evidence such as Mrs. Duncan's medical records, insurance records, and employment records. These records are located in Texas.

The modern use of copying machines, faxes, expedited mail delivery and other devices to reproduce and transport documentation leads us to conclude that this factor does not favor one forum over another. Defendant bears the burden of proving that a transfer is justified, and it has not shown that the evidence located in Texas exceeds, in volume or in importance, the evidence located in New York.[FN4] Moreover, and more crucially, the physical transportation of the relevant documents is not burdensome, particularly in the absence of any indication that they are unusually voluminous. *See, e.g., Sunshine Cellular,* 810 F. Supp. at 500 (citing *Stinnes Interoil v. Apex Oil Co.,* 604 F. Supp. 978, 983 (S.D.N.Y. 1985)).

> FN4. Defendant also argues that the case should be transferred to Texas in order to allow jurors to view the physical layout of plaintiff's work area. The court, however, does not see the necessity of visiting plaintiff's work site, as jurors can easily be informed of its layout through the use of photographs or videotape.

### 5. Convenience of the Parties

Plaintiffs have voluntarily elected to litigate this case in the Southern District of New York. While litigating in Texas might be more convenient and less expensive, plaintiffs have chosen otherwise. Presumably plaintiffs therefore also are willing to accept the cost and inconvenience of litigating in a distant district. *See Elam v. Ryder Automotive Operations, Inc.,* 1994 WL 705290, at *7 (W.D.N.Y. Nov. 1, 1994)* ("[O]n a defendant's motion to transfer venue, the defendant may not complain about the plaintiff's inconvenience. If the plaintiff is willing to suffer inconvenience and expense by suing in a particular forum, this is the plaintiff's concern, not defendant's" (cites omitted)).[FN5]

> FN5. Although convenience of counsel is not an appropriate consideration, plaintiffs may also select an inconvenient forum in order to obtain their choice of counsel. *See*

*Young v. Armstrong World Indus., Inc.,* 601 F. Supp. 399, 402 (N.D. Tex. 1984); *Austin v. Johns-Manville Corp.,* 524 F. Supp. 1166, 1169 (E.D. Pa. 1981).

Because plaintiffs have waived the convenience of their home forum by filing in this district, and because New York is IBM's principal place of business, New York appears to be a convenient forum for both parties. Defendant has not convinced the court that Texas would be considerably more convenient for the parties.[FN6]

> FN6. Plaintiffs' contention that they would not be able to secure representation of counsel in Texas (*see* Phillips Aff. at ¶ 3) seems to this court to be unfounded. There is no scarcity of able lawyers in Texas and little reason to fear that plaintiffs could not find counsel there. Admittedly, however, plaintiffs' present counsel is both skilled and well-versed in this area of the law. Moreover, if plaintiffs were required to hire Texas counsel, this would inevitably delay the proceedings.

### 6. Local Interests

Both states have an interest in this litigation. New York has an interest in regulating manufacturers, such as IBM, located within the state. Texas, for its part, has an interest in protecting and compensating its injured residents. Either state, therefore, could reasonably be called upon to expend its judicial resources on this action.

### 7. Judicial Resources

There is a possibility that this case would progress more quickly in the Northern District of Texas as the courts in that district are slightly less congested. For instance, the median interval from filing of a case in the Southern District of New York to trial is 27 months, *see* Admin. Office of Fed. Courts, Report of the Director: *Judicial Business of the United States Courts 1995,* Table C-10 at 186, whereas the corresponding interval in the Northern District of Texas is 17 months. *Id.* at 187.

*7 However, there are other factors that operate to erode this ten-month difference. First, the current motion involves a single RSI case, many more of which are clustered in the Southern and Eastern

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 720106 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)
Page 6

Districts of New York. Allowing similar cases to be tried in the same court may preserve judicial resources and allow for expedited discovery. *See Jacobs v. Happiness Exp., Inc.,* 1996 WL 537825, at * 1 (E.D.N.Y. Sept. 16, 1996); *Mandala v. Coughlin,* 920 F. Supp 342, 356 (E.D.N.Y. 1996). Furthermore, a transfer would unavoidably engender delay. Hence this factor does not weigh significantly in favor of a transfer.

### 8. *Choice of Law*

Federal courts generally favor adjudication of a controversy by the court sitting in the state whose law will govern the issues in the case. Although New York choice-of-law rules indicate that Texas law probably should apply, this factor alone is insufficient to tip the balance in favor of transfer.

When a case is transferred pursuant to § 1404(a), the transferee forum must apply the law, including the choice-of-law rules, that the transferor forum would have applied. *Ferens v. John Deere Co.,* 494 U.S. 516, 523 (1990). New York is the forum for this litigation and hence its law determines the applicable choice-of-law rules. For tort claims, New York law requires courts to apply the law of the state with the greatest interest in the outcome of the litigation. *Schultz v. Boy Scouts of America, Inc.,* 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 95 (1985). *See also Brink's Ltd. v. South African Airways,* 93 F.3d 1022, 1031 (2d Cir. 1996)(citing cases)). The key factors to be considered in determining which state has the greatest interest are "almost exclusively, the parties' domiciles and the locus of the tort." *Schultz,* 65 N.Y.2d at 197, 491 N.Y.S.2d at 95; *Hadar v. Concordia Yacht Builders Inc.,* 886 F. Supp. 1082, 1093 (S.D.N.Y. 1995); *Wheeler v. Standard Tool & Mfg. Co.,* 359 F. Supp. 298, 301 (S.D.N.Y. 1973) (under New York law, strict liability cases are governed by the law of the place of the injury), *aff'd,* 497 F.2d 897 (2d Cir. 1974).

Under this analysis, defendant has a reasonable argument that Texas's substantive law should apply, as plaintiffs are Texas residents, the injury occurred in Texas, and Texas has a clear interest in compensating its residents for harms they suffer. *But see Carlenstolpe v. Merck & Co.,* 638 F. Supp. 901, 910 (S.D.N.Y. 1986) (applying law of the state in which the products were manufactured because that state has a significant interest in governing the liability of manufacturers within its borders), *appeal denied,* 819 F.2d 33 (2d Cir. 1987).

However, this factor is not so weighty as to tip the balance heavily in defendant's favor. *See Dwyer,* 853 F. Supp. at 694 (finding application of another forum's law to be "of little consequence" in determining motion to transfer products liability action). A New York court is capable of applying the law of a sister state, *see, e.g., S-Fer Int'l, Inc.,* 906 F. Supp. at 215-16, particularly where, as here, the other state's law is not fundamentally different from New York's law. A brief perusal of Texas law on negligence and products liability suggests that it is typical and quite similar to New York's law on these subjects. *See, e.g., Caterpillar, Inc. v. Shears,* 911 S.W.2d 379, 381-82 (Tex. 1995) (espousing the theory of strict products liability expressed in § 402A of the Restatement (Second) of Torts). Because Texas law has not been shown to present any exceptional issues that would hinder this court from correctly applying it, there is little reason to question the forum court's familiarity with the governing law. *See GPA Inc.,* 1994 WL 537017, at *3 (choice of law is only one of many factors and is to be accorded little weight where proceedings do not involve complex issues of another state's law).

### CONCLUSION

**\*8** Viewing the totality of the private and public interests involved here, this court is not persuaded that the balance tips in favor of transfer to Texas. IBM has failed to demonstrate that a trial in the Northern District of Texas would be substantially more convenient and better serve the interests of justice than a trial in the Southern District of New York.

SO ORDERED.

S.D.N.Y.,1996.
Duncan v. International Bus. Machines
Not Reported in F.Supp., 1996 WL 720106 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:95cv01785 (Docket) (Mar. 15, 1995)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit 3

Service: Get by LEXSEE®
Citation: 2006 U.S. Dist. LEXIS 44407

*2006 U.S. Dist. LEXIS 44407, \**

OWEN J. ROGAL, D.D.S., P.C. d/b/a THE PAIN CENTER vs. SKILSTAF, INC. OWEN J. ROGAL, D.D.S., P.C. d/b/a THE PAIN CENTER vs. SKILSTAF, INC.

CIVIL ACTION NO. 05-6073, CIVIL ACTION NO. 05-6074

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2006 U.S. Dist. LEXIS 44407

June 26, 2006, Decided

**CORE TERMS:** forum selection clause, fora, convenience, public interest, venue, inconvenience, transferred, litigate, principal place of business, administrative remedies, group health plan, public policies, chiropractic, unavailable, preceding, ambiguity, diversity, simplify, expedite, assigned, exclusive jurisdiction, decision to deny, reside, staff

**COUNSEL:** [\*1]  For OWEN J. ROGAL, D.D.S., P.C., doing business as THE PAIN CENTER, Plaintiff: ROBERT E. COLE, PHILADELPHIA, PA.

For SKILSTAF, INC., Defendant: BETH A. FRIEL, JENNE L. BAKKER, MONTGOMERY, MC CRACKEN, WALKER & RHOADS, PHILADELPHIA, PA.

**JUDGES:** J. CURTIS JOYNER, J.

**OPINIONBY:** J. CURTIS JOYNER

**OPINION: MEMORANDUM AND ORDER**

**JOYNER, J.**

These cases have been brought before the Court on motions of the defendant, Skilstaf, Inc. to Transfer Venue and to Dismiss the plaintiff's complaints for failure to exhaust administrative remedies pursuant to Fed.R.Civ.P. 12(b)(6). As we shall grant the motions to transfer venue, we do not reach the motions to dismiss.

**Factual Background**

These cases, which originated in the Court of Common Pleas of Philadelphia County, arise out of the plaintiff's rendering of chiropractic treatment to Dennis and Dianne Berry. In October, 2005, plaintiff filed two separate actions against Skilstaf, Inc., the employee leasing company which provided the group health plan under which the Berrys were covered for medical benefits as the result of the care which he gave to each of them, asserting common law claims [\*2] for breach of contract, bad faith and deceit or fraud. n1 Defendant removed the cases to this Court on the grounds that, as plaintiff was seeking to recover benefits due under an employee benefits plan, his claims were pre-empted by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et. seq. ("ERISA"). Skilstaf now moves for the dismissal of this case in its entirety on the grounds that the plaintiff has failed to exhaust the administrative remedies available to him under the plan documents and/or to transfer venue of this action to the United States District Court for the Middle District of Alabama.

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 44407

Case 1:06-cv-00362-GMS   Document 32-2   Filed 08/11/2006   Page 15 of 18

Page 2 of 5

- - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n1 Both Dennis and Dianne Berry executed assignment of benefits forms thereby vesting Plaintiff with the right to bring suit for payment of their medical bills in his own name. (See Plaintiffs' Exhibit "B" to Plaintiffs' Complaints).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

**Discussion**

By the motions to transfer venue, Defendant invokes 28 U.S.C. § 1404(a), which provides:

> For **[*3]** the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The purpose of § 1404(a) has been said to be "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense, not to shift the inconvenience from one party to the other." Dominy v. CSX Transporation, Inc., Civ. A. No. 05-487, 2006 U.S. Dist. LEXIS 9422 at *5-*6 (E.D.Pa. March 9, 2006), quoting Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S. Ct. 805, 11 L.Ed.2d 945 (1962) and Superior Precast, Inc. v. Safeco Insurance Company of America, 71 F. Supp. 2d 438, 446 (E.D.Pa. 1999). Generally speaking, district courts have broad discretion in deciding whether to transfer a case under § 1404(a), although a motion to transfer a case is not to be granted liberally. Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L. Ed. 2d 22 (1988); Banket v. GC America, Inc., Civ. A. No. 05-576, 2005 U.S. Dist. LEXIS 23550 **[*4]** at *9 (E.D.Pa. Oct. 11, 2005). Indeed, "[i]t is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request and that choice should not be lightly disturbed." **Shutte v. Armco, 431 F.2d 22, 25 (3d Cir. 1970)**.

The burden of establishing the inconvenience of the forum rests with the proponent of transfer. In re Amendt, No. 05-2458, 169 Fed. Appx. 93, 2006 U.S. App. LEXIS 3944 at *7 (3d Cir. Feb. 16, 2006); Banket, at *9-*10. However, the moving party is not required to show truly compelling circumstances for change of venue, but rather that all relevant things considered, the case would be better off transferred to another district. Dominy, supra., citing In re United States, 273 F.3d 380, 388 (3d Cir. 2001).

In determining whether to transfer a case, the court must first determine whether the action "might have been brought" in the proposed transferee district. Banket, at *10, citing Van Dusen, 376 U.S. at 616, 84 S. Ct. at 809. Assuming that this requirement has been satisfied, the court must then assess a number **[*5]** of private and public interest factors in addition to those enumerated in § 1404(a) (convenience of the parties and witnesses and the interests of justice). Jumara v. State Farm Insurance Company, 55 F.3d 873, 879 (3d Cir. 1995). Specifically, the private interests have included: (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's choice of forum; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial conditions; (5) the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records. Amendt, at *8, citing Jumara, at 879-80. The public interests have included: (1) the

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 44407

Case 1:06-cv-00362-GMS    Document 32-2    Filed 08/11/2006    Page 16 of 18

Page 3 of 5

enforceability of the judgment; (2) practical considerations that could expedite or simplify trial; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) in a diversity case, the familiarity of the two courts with state law. Id.

Within [*6] this framework, a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum. Jumara, at 880. Because questions of venue and the enforcement of forum selection clauses are essentially procedural rather than substantive, federal law is used to determine the effect of a forum selection clause. Wall Street Aubrey Golf, LLC v. Aubrey, No. 05-5027, 2006 U.S. App. LEXIS 13817 at *4 (3d Cir. June 5, 2006), citing Jumara at 877. Transfer is not available, however, when a forum selection clause specifies a non-federal forum; in that case, the district court would have no choice but to dismiss the action so it could be filed in the appropriate forum so long as dismissal would be in the interests of justice. Salovaara v. Jackson National Life Insurance Company, 246 F.3d 289, 298 (3d Cir. 2001). Forum selection clauses are presumptively valid and thus entitled to great and controlling weight in all but the most exceptional case. Wall Street, at *5; Moneygram Payment Systems, Inc. v. Consorcio Oriental, S.A., No. 01-4386, 65 Fed. Appx. 844, 847-848, 2003 U.S. App. LEXIS 9875 at *9 (3d Cir. [*7] May 21, 2003). Thus, the party opposing enforcement of a forum selection clause has a "heavy burden of showing not only that the balance of convenience is strongly in favor of a different forum but also that resolution in the selected forum will be so manifestly and gravely inconvenient to it that it will be effectively deprived of a meaningful day in court." Monegram, 65 Fed. Appx. At 848, quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 19, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972).

In applying the preceding principles to the matter at bar, we note at the outset that this matter could well have been brought in the Middle District of Alabama given that Skilstaf is an Alabama corporation with its headquarters and principal place of business in Alexander City, Alabama. See, 28 U.S.C. § 1391(b), (c). Consequently, an assessment of the various private and public interest factors is in order.

In so first evaluating the private interest factors, we note that the plaintiff quite naturally chose this Court as he is also located in the City of Philadelphia. Not surprisingly, the defendant wishes this matter moved to the Middle District [*8] of Alabama, which is considerably closer to its corporate headquarters and principal place of business in Alexander City, Alabama. We further find that the claims at issue in this action arose in both fora, as Dr. Rogal rendered chiropractic and other medical services to the Berrys in his office in Philadelphia but the decision to deny his claims for payment of benefits was made at Skilstaf's offices in Alabama. Presumably, Skilstaf as a corporation has a larger staff and greater financial resources than does Plaintiff and would therefore suffer less physical and financial inconvenience than would Dr. Rogal if forced to litigate this action in this District than would the plaintiff were he forced to litigate his claims in the Middle District of Alabama. As we cannot envision that Plaintiff would have many other witnesses aside from himself and perhaps one or two members of his office staff and the Berrys, who permanently reside in Texas n2, we conclude that the factor concerning convenience of the witnesses and location of the books and records weighs fairly equally for both parties given that the defendant's witnesses and documentary evidence as to how the plan is administered and [*9] how the decision to deny benefits was made are situated in Alabama. There is nothing to suggest that any of the witnesses would actually be unavailable for trial in one of the fora.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 According to the Plaintiff, however, at the time the Berrys received treatments from him in 2004 and 2005, they were residing in Clarksboro, NJ.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

As to the public interest factors, we believe that Dr. Rogal would find it simpler and easier to enforce a judgment against the defendant if it were issued by the U.S. District Court for the Middle District of Alabama as that is where Skilstaf is located, although it would hardly be an onerous burden to transfer a judgment issued from this Court to that District if necessary. While common sense dictates that this Court has an interest in protecting the interests of citizens such as Dr. Rogal who reside within this district, the same may be said of the interest which the Middle District of Alabama has with regard to Skilstaf. As this case is predicated upon a federal statute and not diversity, **[*10]** we believe that the U.S. District Court in the Middle District of Alabama is equally familiar with and capable of resolving this action under ERISA as is this one.

Furthermore, as the Judicial Caseload Profile Statistics suggest, the judges in this District had an average of 793 filings in 2005 in contrast to the 521 average filings experienced by judges in Alabama's Middle District. Nevertheless, it took the judges in Alabama an average of three additional months to dispose of their civil cases than it did the judges in the Eastern District of Pennsylvania. As there do not appear to be any particular practical considerations that could expedite or simplify trial or public policies unique to either fora, we conclude that the private and public interest factors equally favor both districts.

However, in evaluating the parties' choices of forum, we must consider the forum selection clause found in Section 14(B)(7) of the Skilstaf Group Health Plan. That clause reads as follows:

> If any party wishes to contest a final claim review or appeal decision of the Plan Administrator involving total benefits, claims, losses, and damages in an amount of $ 10,000 or less, then all parties **[*11]** to such dispute agree and consent that the matter shall be submitted to the small claims court in Alexander City, Alabama, also known as the Alexander City Division of the District Court for Tallapoosa County, Alabama. The parties agree and consent to the exclusive jurisdiction for any other claim, or any claim as described above that cannot be heard in such court as described above, involving an appeal or final claim review upon the conclusion of the plan's claim review procedure, in the U.S. Federal District Court for the District encompassing Alexander City, Alabama.

Thus, given the absence of any evidence on this record that the above forum selection clause is the result of any fraud, influence, or overweening bargaining power, we find that it is valid and enforceable and that it provides compelling evidence that the parties to this action intended to litigate matters such as this one exclusively in the Middle District of Alabama. See, Jumara, 55 F.3d at 880, quoting M/S Bremen v. Zapata, 407 U.S. at 12-13, 92 S. Ct. at 1914-1915. n3 All other factors being equal then, we therefore find that the defendants' motions should be granted **[*12]** and that this matter is properly transferred to the U.S. District Court for the Middle District of Alabama.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Plaintiff asserts that because neither he nor Dennis or Dianne Berry were parties to the writing, the forum selection clause should not be read to confer exclusive jurisdiction on the U.S. District Court for the Middle District of Alabama. While it is true that where parties enter

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 44407

Case 1:06-cv-00362-GMS   Document 32-2   Filed 08/11/2006   Page 18 of 18

Page 5 of 5

into a contract and merely consent to jurisdiction in a particular forum, they do not preclude the jurisdiction of other forums, Plaintiff fails to acknowledge that there is a recognized distinction between exclusive and permissive forum selection clauses. See, e.g., Koresko v. Nationwide Insurance Co., 403 F.Supp. 2d 394, 401 (E.D.Pa. 2005), Polsky v. Hall City Centre Associates, Ltd. Partnership, Civ. A. No. 88-9086, 1989 U.S. Dist. LEXIS 4942 (E.D.Pa. May 4, 1989). As we find no ambiguity in the clause at issue here, nor does Plaintiff claim that any such ambiguity exists, we find that it does indeed contemplate that jurisdiction would exclusively lie in the Middle District of Alabama.

We further find no necessity for the plaintiff or the Berrys to have been signatories to the group health plan to give effect to the forum selection clause contained therein. To be sure, the Skilstaf Group Health Plan is an employee welfare benefit plan as defined by and within the meaning of 29 U.S.C. § 1002(1)-it is not a bilateral written contract which would typically require execution by all parties as a pre-requisite to becoming effective. As the Berrys have assigned their right to benefits under the plan to the plaintiff, he effectively now stands in their shoes. See, Pascack Valley Hospital, Inc. v. Local 464A UFCW Reimbursement Plan, 388 F.3d 393, 401, n.7 (3d Cir. 2004)("Almost every circuit to have considered the question has held that a health care provider can assert a claim under § 502(a) where a beneficiary or participant has assigned to the provider that individual's right to benefits under the plan.").

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*13]**

An order follows.

## ORDER

AND NOW, this 26th day of June, 2006, upon consideration of the Defendants' Motions to Transfer Venue and Plaintiff's Responses thereto, it is hereby ORDERED that the Motions are GRANTED for the reasons set forth in the preceding Memorandum Opinion and these cases are TRANSFERRED to the United States District Court for the Middle District of Alabama.

BY THE COURT:

s/ J. CURTIS JOYNER, J.

Service: **Get by LEXSEE®**
Citation: **2006 U.S. Dist. LEXIS 44407**
View: Full
Date/Time: Tuesday, August 8, 2006 - 3:20 PM EDT

 LexisNexis®   About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

**PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS' MOTION TO TRANSFER VENUE**

# Exhibit 4

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 13477

Service: Get by LEXSEE®
Citation: 2006 U.S. Dist. LEXIS 13477

2006 U.S. Dist. LEXIS 13477, *

ALAN SCHREIBER, et al., Plaintiffs, v. ELI LILLY AND COMPANY, et al., Defendants.

CIVIL ACTION NO. 05-CV-2616

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2006 U.S. Dist. LEXIS 13477

March 27, 2006, Decided

**CORE TERMS:** patent, first-filed, motion to dismiss, keoxifene, convenience, disease, statute of limitations, osteoporosis, raloxifene, autoimmune, patent infringement, inventions, compound, laches, state law, inventorship, venue, immune-mediated, discovery, inventor, notice, weigh, bone, confidential information, confidence, rheumatoid arthritis, summary judgment, first-to-file, transferred, unavailable

**COUNSEL:** **[*1]** For ALAN SCHREIBER, DR., ZABECOR PHARMACEUTICAL COMPANY, LLC, Plaintiffs: MARK LIPOWICZ, DUANE MORRIS, LLP, PHILADELPHIA, PA; MICHAEL M. MUSTOKOFF, DUANE MORRIS LLP, PHILA, PA.

For ELI LILLY AND COMPANY, Defendant: LISA M. SALAZAR, MCCARTER AND ENGLISH, LLP, PHILADELPHIA, PA.

For THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, Defendant: JOSEPH LUCCI, STEVEN D. MASLOWSKI, WOODCOCK WASHBURN LLP, PHILADELPHIA, PA.

**JUDGES:** LEGROME D. DAVIS, J.

**OPINIONBY:** LEGROME D. DAVIS

**OPINION:** MEMORANDUM

LEGROME D. DAVIS, J.

Presently before the Court is Defendant Eli Lilly and Company's ("Lilly") Motion to Dismiss or Transfer Claims Brought in Plaintiffs' Amended Complaint (Doc. No. 13), Defendant University of Pennsylvania's Opposition thereto (Doc. No. 22), Plaintiffs' Opposition thereto (Doc. No. 27), Defendant Lilly's Reply (Doc. No. 30) and Plaintiffs' Sur-Reply (Doc. No. 33). For the following reasons, this Court denies Defendant Lilly's Motion to Dismiss.

I. PROCEDURAL BACKGROUND AND FACTUAL HISTORY

Plaintiffs Dr. Alan Schreiber and ZaBeCor Pharmaceutical Company commenced this action against Defendant Lilly on June 2, 2005, alleging patent infringement, conversion, unjust enrichment, **[*2]** breach of contract, misappropriation of trade secrets, fraud and fraudulent inducement. Plaintiffs also request a declaratory judgment of inventorship and seek an accounting of Defendant Lilly's monetary gain. On June 17, 2005, plaintiffs amended the complaint to add the University of Pennsylvania ("Penn") as a defendant. n1 On August 23, 2005, Defendant Lilly filed the instant motion to dismiss.

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 13477

Case 1:06-cv-00362-GMS   Document 32-3   Filed 08/11/2006   Page 3 of 22

Page 2 of 14

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n1 Plaintiff has stated that Penn is to be subsequently re-aligned as a party-plaintiff. Am. Compl. at 1.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

In the early 1980s, Defendant Lilly developed a chemical compound named keoxifene. n2 After clinical trials failed to demonstrate that keoxifene was an effective treatment for breast cancer, Lilly considered keoxifene a "dead drug." Am. Compl. P 1. In early 1987, Dr. Schreiber, a biomedical researcher at Penn, obtained a sample of keoxifene from Lilly. Id. P 24. Dr. Schreiber discovered that keoxifene could be used to treat and prevent autoimmune and immune-mediated diseases. Id. P 26. In April 1987, Dr. **[*3]** Schreiber applied for a patent pertaining to the use of keoxifene for the treatment and prevention of rheumatoid arthritis and other autoimmune diseases. Id. P 27. In 1991, United States Patent No. 5,075,321 ("the '321 patent") was issued and assigned to Penn. Id. PP 7, 27. Penn licensed its rights in the '321 patent exclusively to CorBec Pharmaceutical Company, Inc. ("CorBec"). Id. PP 8, 29; see also Penn's Answer PP 8, 29. CorBec's rights have been sublicensed to ZaBeCor, including the right to bring patent infringement and other litigation. Am. Compl. PP 8, 30; see also Penn's Answer PP 8, 30.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n2 This chemical compound is also called raloxifene. Def. Lilly's Mot. at 4.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Plaintiffs allege that in 1987 and 1994, Dr. Schreiber disclosed to Lilly, in confidence, his keoxifene inventions and related confidential information, including the use of keoxifene for the prevention and treatment of autoimmune and immune-mediated diseases such as rheumatoid arthritis and osteoporosis. Am. Compl. PP 3, **[*4]** 36. Lilly and Dr. Schreiber agreed to maintain the confidentiality of their discussions for use only in mutually agreeable research or further ventures between the parties. Id. PP 34, 43. After proposals for continued collaboration failed, Dr. Schreiber and Lilly ended their negotiations and terminated their relationship. Id. PP 52-54.

Unbeknownst to plaintiffs, Lilly allegedly used the information obtained from Dr. Schreiber to file a patent application claiming a method of inhibiting bone loss using raloxifene (keoxifene) and similar compounds. Id. P 45. The patent application issued as U.S. Patent No. 5,393,763 ("the '763 patent") on February 28, 1995. Id.; Def. Lilly's Mot. at Ex. 2, '763 Patent. Plaintiffs also allege that, based on the information obtained, Lilly filed three additional patent applications. Am. Compl. PP 55-57. One of the additional patent applications, which was later issued as U.S. Patent No. 5,478,847 ("the '847 patent"), was for the use of benzothiophenes, a class of compounds that includes raloxifene, to inhibit bone loss. Id. P 55. The other two patent applications were for a method of inhibiting bone loss using raloxifene or similar **[*5]** compounds. Id. PP 56, 57. These patent applications were later issued as U.S. Patent Nos. 5,457,117 ("the '117 patent") and 5,534,527 ("the '527 patent"). Id. Lilly did not disclose the '321 patent in connection with any of the applications or identify Dr. Schreiber as an inventor in any of the patent applications. Id. PP 46-47, 58-59.

The United States Food and Drug Administration ("FDA") approved raloxifene (keoxifene),

under the brand name EVISTA tm, for prevention of osteoporosis in 1997 and treatment of osteoporosis in 1999. Id. PP 61, 62. EVISTA tm has become one of Lilly's leading drugs. Id. P 63.

## II. DISCUSSION

This action arises from Defendant Lilly's alleged infringement of the '321 patent and alleged misappropriation of inventions and trade secrets related to keoxifene. Defendant Lilly seeks dismissal of this action, arguing that (1) this action should be dismissed pursuant to the "first-to-file" rule because the first properly filed action is pending in Indiana, (2) the Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because the Amended Complaint fails to state **[*6]** a claim on which relief can be granted, and (3) in the alternative, the action should be transferred to Indiana pursuant to 28 U.S.C. § 1404(a).

A. "First-to-File" Priority Rule n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Since the issue of which action should have priority under the first-to-file rule "raises the issue of national uniformity in patent cases, and invokes the special obligation of the Federal Circuit to avoid creating opportunities for dispositive differences among the regional circuits," this Court shall apply Federal Circuit law to this issue. Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 937 (Fed. Cir. 1993) (declining to apply Seventh Circuit law to an issue involving the "first-to-file" rule).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The "first-to-file" rule, which favors the forum of the first-filed action, is a well-recognized doctrine of federal comity. See Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 937 (Fed. Cir. 1993), abrogated on other grounds by Wilton v. Seven Falls Co., 515 U.S. 277, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995); **[*7]** EEOC v. University of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988). As a general rule, the first-filed suit has priority over subsequently filed suits. "Exceptions, however, are not rare, and are made when justice or expediency requires." Genentech, 998 F.2d at 937. If "sound reason [exists] that would make it unjust or inefficient to continue the first-filed suit," the district court has discretion to temper the preference for the first-filed suit. Id. at 938.

1. First-Filed Action

In the instant matter, the parties dispute which action is the first-filed action. Plaintiffs filed this action against Defendant Lilly in the Eastern District of Pennsylvania on June 2, 2005. Fifteen days later, on June 17, 2005, plaintiffs amended their complaint to add Penn as a defendant. On June 9, 2005, after plaintiffs filed this case but before Penn was added as a defendant, Defendant Lilly filed a declaratory judgment action against Dr. Schreiber, ZaBeCor and Penn in Indiana.

Defendant Lilly argues that the first properly filed action is pending in Indiana. Def. Lilly's Mot. at 12-15. Defendant contends that the original complaint in this **[*8]** matter was defective in that it failed to name Penn, the entity having the true interest in the disputed intellectual property, as a party. Id. at 12. Since the action in Indiana was filed before the original complaint in this matter was amended, Defendant Lilly believes the declaratory judgment action in Indiana should be considered the "first-filed" case and that the instant action should be dismissed because it is the "second-filed" case. Id. at 13.

"The first-filed rule turns on which court first obtains possession of the subject of the dispute, not the parties of the dispute." RJF Holdings III, Inc. v. Refractec, Inc., No.Civ. 03-1600, 2003 U.S. Dist. LEXIS 22144, at *6 (E.D. Pa Nov. 24, 2003) (quoting Advanta Corp. v. Visa U.S.A., No.Civ. 96-7940, 1997 U.S. Dist. LEXIS 2007, at *6-7 (E.D. Pa. Feb. 19, 1997)); see also Whelan v. United Pac. Indus., No.Civ. 02-2519, 2002 U.S. Dist. LEXIS 21827, at *7-8 (E.D. Pa. Nov. 1, 2002) (deferring to a first-filed case even though the patent owners were not included as parties in the first-filed case); Schering Corp. v. Amgen Inc., 969 F. Supp. 258, 267 (D. De. 1997) [*9] (finding that the addition of a new party is irrelevant to the question of which court had first acquired subject matter jurisdiction and noting that "relation back" analysis is unnecessary). n4 This Court was first to obtain possession of the subject of the dispute.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Some district courts analyze whether an amendment to add a new party "relates back" to the date of the original pleading when determining whether the case is "first-filed." See National Foam, Inc. v. Williams Fire & Hazard Control, Inc., No.Civ. 97-3105, 1997 U.S. Dist. LEXIS 16734, at *13-14 (E.D. Pa. Oct. 29, 1997) (deferring to the first-filed case even though a defendant was not named in the initial complaint because the amended complaint related back to the date of the original pleading pursuant to Fed.R.Civ.Proc. 15(c)(3)); Optima Inc. v. Republic Indus., Inc., 1995 U.S. Dist. LEXIS 2213, No. 94-3919, 1995 WL 72430, at *1-2 (E.D. La. Feb. 21, 1995) (finding that the amendment to add a defendant related back to the date of the original complaint).

This Court agrees with the holdings in RJF, Advanta, Whelan and Schering that relation back analysis is unnecessary. However, even if relation back analysis was required, the first-filed case would still be in the Eastern District of Pennsylvania as the addition of Penn as a defendant would relate back to the date of the original complaint. Fed. R. Civ. Proc. 15(c)(3); see also National Foam, 1997 U.S. Dist. LEXIS 16734, 1997 WL 700496, at *15-16 (noting that notice may be imputed to proposed new parties when the original and added parties are so closely related that it is fair to presume the added parties learned of the institution of the action shortly after it was commenced).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*10]

Even though plaintiffs' original complaint failed to name the patent owner as a party to the action, "such an easily correctable oversight does not prevent this Court from deferring to the first-filed suit." Whelan, 2002 U.S. Dist. LEXIS 21827, 2002 WL 31513432, at *2; see also National Foam, Inc. v. Williams Fire & Hazard Control, Inc., 1997 U.S. Dist. LEXIS 16734, No.CIV.A. 97-3105, 1997 WL 700496, at *5 (E.D. Pa. Oct. 29, 1997) (deferring to the first-filed case even though plaintiff failed to name all appropriate defendants). Plaintiffs' amendment of their complaint does not alter the fact that this matter was filed before the action in Indiana was filed. This matter is the "first-filed" action.

2. First-to-File Rule Exceptions

As a general rule, the first-filed suit has priority. "Exceptions, however, are not rare, and are made when justice or expediency requires." Genentech, 998 F.2d at 937. If "sound reason [exists] that would make it unjust or inefficient to continue the first-filed suit," the district court has discretion to temper the preference for the first-filed suit. Id. at 938. Factors that may overcome the presumptive right of the first litigant to choose [*11] the forum include "the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations

relating to the real party in interest." Id. Defendant Lilly argues that since the original action "was filed defectively in an effort to secure a tactical advantage, n5 was not served, and should logically have been brought elsewhere anyway," the Court has discretion to recognize the Indiana action as the "first-filed" action. Def. Lilly's Mot. at 13. This Court declines to do so. n6

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n5 Defendant Lilly has not provided any evidence in support of this contention.

n6 The Court analyzes a number of the Genetech factors when it addresses Defendant Lilly's transfer of venue arguments.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

B. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

1. Legal Standard n7

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n7 When analyzing a purely procedural question not pertaining to patent law, "such as whether a Rule 12(b)(6) motion was properly granted," the rule of the regional circuit is applied. Phonometrics, Inc. v. Hospitality Franchise Systems, Inc., 203 F.3d 790, 793 (Fed. Cir. 2000).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*12]

Dismissal for failure to state a claim is appropriate when it clearly appears that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); Robb v. City of Philadelphia, 733 F.2d 286, 290 (3d Cir. 1984). In deciding a motion to dismiss pursuant to Rule 12(b)(6), all facts alleged in the complaint must be accepted as true. Malia v. General Electric Co., 23 F.3d 828, 830 (3d Cir. 1994). A claim may be dismissed when the facts alleged and the reasonable inferences therefrom are legally insufficient to support the relief sought. See Pennsylvania ex rel. Zimmerman v. PepsiCo., Inc., 836 F.2d 173, 179-80 (3d Cir. 1988).

2. Material Appended to Defendant Lilly's Motion to Dismiss

As a general matter, matters extraneous to the pleadings may not be considered. In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997). However, a document "integral to or explicitly relied upon in the complaint" may be considered without converting the motion to dismiss into one for summary [*13] judgment. n8 Id. (quoting Shaw v. Digital Equipment Corp., 82 F.3d 1194, 1220 (3d Cir. 1996)); see also In re Rockefeller Center Properties, Inc. Securities Litigation, 184 F.3d 280, 287 (3d Cir. 1999). "A court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guarantee Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir.



1993). The Third Circuit notes that the rationale behind these exceptions is that the primary problem raised by looking to documents outside the complaint-lack of notice to the plaintiff-is dissipated where the plaintiff has actual notice and has relied upon these documents in framing the complaint. In re Rockefeller Center, 184 F.3d at 287.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n8 In its reply, Defendant Lilly suggests that this Court treat its motion to dismiss as a motion for summary judgment. Def. Lilly's Reply at 3 n.2. When a district court converts a motion to dismiss into a motion for summary judgment, it must provide the parties reasonable opportunity to present all material relevant to a summary judgment motion. In re Rockefeller Ctr. Props. Sec. Litig., 184 F.3d 280, 287-88 (3d Cir. 1999). Plaintiffs have not had sufficient notice or an opportunity to present all relevant materials. Therefore, this Court will not convert Defendant Lilly's motion to dismiss into a motion for summary judgment.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - **[*14]**

Defendant Lilly appended thirty documents to its motion to dismiss. See Def. Lilly's Mot. Plaintiffs note that seven of the attached documents, two of Lilly's patents, two letters and three patent reissuance applications, were referenced in the Amended Complaint. n9 Pls' Opp. at 12 n.7. Plaintiffs do not dispute the authenticity of these seven documents. Since these documents are undisputedly authentic, plaintiffs' claims are based on these documents, and the documents are explicitly relied upon in the complaint, this Court shall consider these seven documents when deciding the motion to dismiss.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n9 These documents are appended in the following exhibits: Exhibit 2: Lilly U.S. Patent No. 5,393,763; Exhibit 3: Lilly U.S. Patent No. 4,418,068; Exhibit 5: November 11, 1993 letter from Lilly to Dr. Schreiber; Exhibit 13: April 2, 1987 letter from Penn to Lilly; Exhibit 25: patent reissuance application for the '763 patent; Exhibit 26: patent reissuance application for the '117 patent; Exhibit 27: patent reissuance application for the '847 patent.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - **[*15]**

Plaintiffs argue that the "overwhelming majority" of documents appended to Defendant Lilly's motion to dismiss are not referenced in the Complaint and are not the basis for any of plaintiffs' claims. Pls' Opp. at 12 n7. In large part, this Court agrees. Specifically, this Court finds that Exhibits 6-12, 14, 16, 20 and 21, which contain articles, abstracts, brochures, a press release and an excerpt from the Merck Manual of Diagnosis and Therapy, Exhibits 4 and 22, which contain communications between the parties, Exhibits 17-19, which contain patent prosecution histories, Exhibits 23-24 and 30, which relate to the Lilly v. Barr case pending in Indiana, and Exhibits 28 and 29, which contain SEC forms for Inkine Pharmaceutical Company, Inc., are not integral to or explicitly relied upon in the complaint. Therefore, the documents contained in these exhibits will not be considered.

In addition to the exhibits plaintiffs admitted were referenced in the complaint, this Court will consider Exhibit 1, which contains the FDA-approved labeling for EVISTA tm, as plaintiffs' claims are, in part, based upon this document. This Court shall also consider Exhibit 15, which contains the 1987 **[*16]** Confidentiality Agreement, as plaintiffs' claims are based upon this document and the document is explicitly relied upon in the Amended Complaint. See Am. Compl. P 34. For both of these documents, the primary problem raised by

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 13477    Page 7 of 14

Case 1:06-cv-00362-GMS    Document 32-3    Filed 08/11/2006    Page 8 of 22

considering documents outside the complaint-lack of notice to the plaintiff-is not present.

3. Dr. Schreiber's Work, Communications and Patent

Defendant Lilly argues that the entire Amended Complaint should be dismissed because Dr. Schreiber's work, communications and patent relate to the treatment of autoimmune disease, not post-menopausal osteoporosis. Def's Mot. at 15. Specifically, Defendant Lilly believes that the patent infringement claim and the inventorship claims should be dismissed.

a. Patent Infringement Claim

Defendant Lilly argues that no colorable claim for infringement can be advanced because post-menopausal osteoporosis is not an autoimmune disease within the scope of the properly construed claims of the Schreiber '321 patent. Id. at 16-17. The Federal Circuit has held that, in order to survive a motion to dismiss, "a patentee need only plead facts sufficient to place the alleged infringer on notice." Phonometrics, Inc. v. Hospitality Franchise Systems, Inc., 203 F.3d 790, 794 (Fed. Cir. 2000) [*17] (finding that a complaint that alleged ownership of the patent, named each individual defendant, cited the allegedly infringed patent, described the means by which the defendants allegedly infringed and pointed to the specific sections of patent law invoked contained enough detail to survive a motion to dismiss). The patent infringement claim in the Amended Complaint alleges that ZaBeCor has the exclusive worldwide right and license of the '321 patent and that Defendant Lilly has infringed the '321 patent by its manufacture, promotion, offering for sale, and sale of EVISTA tm . Am. Compl. PP 79-83. Plaintiffs have pled sufficient facts to put Defendant Lilly on notice of their patent infringement claims. Therefore, the patent infringement claim survives Defendant Lilly's motion to dismiss. n10

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n10 Defendant Lilly also argues that "construction of the patent claims is a question of law for the Court." Def. Lilly's Mot. at 16. While this is undeniably true, the proper time for this Court to address claim construction is not in a motion to dismiss. See Markman v. Westview Instruments, Inc., 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*18]

b. Inventorship claims

Plaintiffs allege that Dr. Schreiber is the sole inventor (or co-inventor) and sole owner (or co-owner) of Defendant Lilly's '763, '847, '117 and '527 patents. Am. Compl. PP 84-89. Defendant Lilly contends that the only methods of treating diseases with keoxifene even arguably invented by Dr. Schreiber are the methods of treating autoimmune diseases claimed in his patent. Def. Lilly's Mot. at 17. Defendant Lilly contends that since Dr. Schreiber's patent is fundamentally different from Lilly's patented inventions, which are directed to the treatment of post-menopausal osteoporosis, there can no legitimate claim of inventorship or co-inventorship. Id. at 17-18.

The Amended Complaint, however, alleges that in 1987, Dr. Schreiber, believing that he was communicating with Lilly under a confidentiality agreement, disclosed inventions and confidential information, "including use of keoxifene (raloxifene) for the prevention and treatment of autoimmune and immune-mediated diseases, including rheumatoid arthritis and osteoporosis, among others." Am. Compl PP 34-36. It also alleges that after the 1987 communications, Defendant Lilly focused on the confidential [*19] information disclosed, "including the Dr. Schreiber-discovered inhibitory effect of keoxifene (raloxifene) on bone

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 13477

Case 1:06-cv-00362-GMS   Document 32-3   Filed 08/11/2006   Page 9 of 22

Page 8 of 14

loss and osteoporosis." Id. P 39. According to the Amended Complaint, on January 12, 1994, using the inventions and information disclosed in confidence by Dr. Schreiber, Defendant Lilly filed a patent application claiming a method of bone inhibiting loss using raloxifene and similar compounds. Id. P 45 (referring to the patent application for the '763 patent). The Amended Complaint then concludes that the patent application for the '763 patent was derived in whole or in part from the information disclosed by Dr. Schreiber to Defendant Lilly. Id. P 46.

The Amended Complaint makes similar allegations with regard to the '847 patent, the '117 patent and the '527 patent. Id. PP 55-60. Dr. Schreiber visited Lilly scientists on February 2, 1994. Id. P 49. At this meeting, Dr. Schreiber and Defendant Lilly allegedly discussed Dr. Schreiber's inventions and confidential information relating to raloxifene, including the fact that raloxifene could be used to treat autoimmune and immune-mediated diseases such as rheumatoid arthritis and osteoporosis. Id. An [*20] attorney who was present at these meetings prosecuted Defendant Lilly's patents at issue. Id. P 60. The Amended Complaint alleges that the '847 patent, the '117 patent and the '527 patent were based on inventions and information Dr. Schreiber disclosed to Defendant Lilly in confidence. Id. PP 55-57.

Accepting all of the allegations contained in the Amended Complaint as true, this Court finds that the facts alleged adequately aver that Dr. Schreiber is the sole inventor (or co-inventor) and sole owner (or co-owner) of Defendant Lilly's '763, '847, '117 and '527 patents. Plaintiffs have adequately pled a claim for inventorship of the '763, '847, '117 and '527 patents.

4. Trade Secret and Associated State Law Claims

Defendant Lilly argues that the trade secret and associated state law claims should be dismissed because Dr. Schreiber's information was free of any confidentiality restriction by virtue of the acts of Dr. Schreiber and Penn. Def's Mot. at 18. Defendant Lilly contends that the information disclosed by Dr. Schreiber was published in 1987 and included in the text of the '321 patent, which was published in 1991. Id. Since the information has been published, Defendant [*21] Lilly believes that the confidentiality restrictions have been lifted. Id.

Plaintiff argues that Defendant Lilly's argument is premised on the "misleading suggestion that the Schreiber patent and/or publications describe all of the research that Dr. Schreiber performed using keoxifene and all of the information shared with Lilly." Pl's Opp. at 15. The allegations in the Amended Complaint, taken as true for the purpose of this motion to dismiss, provide support for plaintiffs' argument. The Amended Complaint alleges that Dr. Schreiber disclosed confidential information relating to the use of keoxifene for "autoimmune diseases and immune-mediated diseases and specifically for the treatment of osteoporosis." Am. Compl. P 48; see also id. PP 35-36, 49-50. Plaintiffs claims are sufficient to survive a motion to dismiss.

5. Patent Infringement Damage Claim

Defendant Lilly argues that the patent infringement damage claim should be dismissed on the grounds of laches because plaintiffs unreasonably delayed asserting the claim. n11 Def's Mot. at 18-19. Dismissal of a claim on the ground of laches requires that there be (1) unreasonable and unexcused delay in bringing the claim and [*22] (2) material prejudice to the defendant as a result of the delay. A.C. Aukerman Co. v. R.L. Chaides Construction Co., 960 F.2d 1020, 1028 (Fed. Cir. 1992). The strictures of Rule 12(b)(6) "are not readily applicable to a determination of laches," as the defense of laches usually requires factual development beyond the content of the complaint. Advanced Cardiovascular Systems, Inc. v. SciMed Life Systems, Inc., 988 F.2d 1157, 1161 (Fed. Cir. 1993). The mere passage of time does not constitute laches. Id. Based on the information currently before the Court, it is not evident that plaintiffs' delay in bringing the claim was unreasonable or unexcused or that material prejudice resulted to Defendant Lilly. In order to determine whether plaintiffs' claim

Case 1:06-cv-00362-GMS   Document 32-3   Filed 08/11/2006   Page 10 of 22

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 13477                    Page 9 of 14

is barred by laches, this Court needs more information than is contained in the Amended Complaint and Defendant Lilly's admitted exhibits.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

N11 Defendant argues that the unreasonable delay attributable to Penn's failure to assert any claim of infringement notwithstanding its knowledge of Defendant Lilly's activities should be imputed to ZaBeCor as the exclusive licensee of the Schreiber '321 patent. Def. Lilly's Mot. at 19.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*23]

6. Statute of Limitations for State Law and Common Law Claims

Defendant Lilly argues that the state law and common law claims are barred by the statute of limitations. Def. Lilly's Mot. at 20. Specifically, Defendant Lilly contends that the conversion (Count III), fraud/constructive fraud (County VII), fraudulent inducement (Count VIII) and accounting (Count IX) claims have a statute of limitation of two years pursuant to 42 Pa.C.S.A. § 5524, that the unjust enrichment (Count IV) and breach of contract (Count V) claims have a statute of limitations of four years pursuant to 42 Pa.C.S.A. § 5525, and that the trade secret misappropriation claim based upon the Indiana Uniform Trade Secrets Act (Count VI) has a statute of limitations of three years. Id. Plaintiffs disagree with most of the statute of limitations cited by Defendant Lilly. Pl's Opp. at 16. Specifically, plaintiffs argue that the breach of contract claims have a ten year statute of limitations pursuant to Ind. Code 34-11-2-11 and that the rest of the claims, with the exception of Count VI, are covered by Indiana's six year statute of [*24] limitations, Ind. Code § 34-11-2-7. Id. In its reply, Defendant Lilly argues that, even if Indiana statutes of limitations apply, the state claims are still time-barred. n12 Def. Lilly's Reply at 2-3.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n12 Neither party fully addressed the statute of limitations issue. For these claims, state law determines the applicable statute of limitations. See Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). The statute of limitations issue raises a choice-of-law question. A federal district court adjudicating state law claims must apply the choice-of-law rules of the forum state, in this case Pennsylvania. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941). The operative choice-of-law rule in Pennsylvania is found in Pennsylvania's borrowing statute, 42 Pa.C.S.A. § 5521, which provides that "the period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim." 42 Pa.C.S.A. § 5521(b).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*25]

A motion to dismiss premised on statute of limitations grounds may only be granted if it is apparent from the face of the complaint that the cause of action was not brought within the limitations period. Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978). In the Amended Complaint, plaintiffs allege that Dr. Schreiber first learned about Lilly's litigation with Barr "about late 2002 or early 2003." Am. Compl. P 76. Thereafter, he learned that EVISTA tm was the same compound on which his discoveries were based and that the information disclosed in confidence to Defendant Lilly had been exploited by Lilly. Id. PP 77–

Case 1:06-cv-00362-GMS    Document 32-3    Filed 08/11/2006    Page 11 of 22

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 13477    Page 10 of 14

78. Plaintiffs do not provide the specific time frame in which Dr. Schreiber, ZaBeCor or Penn learned of Defendant Lilly's actions. Viewed in the light most favorable to plaintiffs, the allegations in the Amended Complaint, on their face, demonstrate only that at some point after early 2003, Dr. Schreiber learned about Defendant Lilly's actions that give rise to plaintiffs' claims. This point could have been after June 2, 2003. Since the shortest possible statute of limitations is two years and plaintiffs filed their complaint on **[*26]** June 2, 2005, the allegations in the Amended Complaint are insufficient for this Court to determine whether the state law and common law claims were brought within the limitations period. n13

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n13 This Court does not believe that plaintiffs should be rewarded for providing only minimal information about the timing of their discovery of Defendant Lilly's actions. However, this Court believes that minimal discovery will enable the parties to determine whether the state claims are time-barred on statute of limitations grounds.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

C. Transfer of Venue n14

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n14 Transfer of venue under 28 U.S.C. § 1404(a) is governed by the law of the appropriate regional circuit. Storage Tech. Corp. v. Cisco Sys., Inc., 329 F.3d 823, 836 (Fed. Cir. 2003).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

In the alternative, Defendant Lilly requests transfer of venue to **[*27]** the Southern District of Indiana pursuant to 28 U.S.C. 1404(a). n15 Def's Mot. at 20-25. Section 1404(a) provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The burden of proving that transfer is appropriate is placed on the party moving for transfer, in this case Defendant Lilly. Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970); see also Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (citing Shutte). The Third Circuit has identified non-exhaustive list of public and private interest factors to determine whether the moving party has met its burden. Jumara, 55 F.3d at 879-80. Within this framework, a plaintiff's choice of forum demands paramount consideration and should not be lightly disturbed. Shutte, 431 F.2d at 24.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n15 Neither party disputes that venue is proper in the Eastern District of Pennsylvania.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*28]**

1. Private Interest Factors

The private interest factors help interpret the "convenience" language of section 1404(a). These private interest factors include: whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of

witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). Jumara, 55 F.3d at 879. Defendant Lilly identifies three private interest factors that allegedly favor transfer to Indiana: the convenience of the witnesses; the ease of access to sources of proof and evidence in Indiana; and the fact that Indiana is the hub of activity for virtually all of the events underlying plaintiffs' claims. Def. Lilly's Mot. at 21-23. Plaintiffs argue that the convenience of the witnesses and the convenience of the parties both weigh against transfer to Indiana. Pls' Opp. at 19-20.

a. Convenience of the Witnesses

Defendant Lilly avers that "at least a dozen individuals who currently reside in [*29] Indiana" have potentially relevant information about plaintiffs' allegations. Id. at 22. Eight of Defendant Lilly's potential witnesses are current employees of Defendant Lilly and four are former employees. Def. Lilly's Mot., Leeds Decl. P 7. In addition, the three inventors named on Lilly's patents all reside in Indiana. Id. Witnesses who are employed by a party carry no weight in the Jumara convenience analysis so this Court will not consider the eight potential witnesses employed by Defendant Lilly. See Affymetrix Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 203 (D. Del. 1998). Defendant Lilly notes that the witnesses, presumably the four former employees and the three inventors, "are unlikely to be compelled by subpoena to travel to Pennsylvania to testify before this Court." Def. Lilly's Mot. at 22. While this statement suggests that these witnesses are unavailable or unwilling to testify should the case remain in the Eastern District of Pennsylvania, Defendant Lilly has not provided any witness affidavits that support this contention. See Jumara, 55 F.3d at 879 (looking to the convenience of witnesses, but only to the extent that "witnesses [*30] may actually be unavailable for trial in one of the fora"); Lomanno v. Black, 285 F. Supp. 2d 637, 646-47 (E.D. Pa. 2003) (citing witnesses' affidavits averring that the forum would be inconvenient).

Plaintiffs argue that some of plaintiffs' witnesses reside in this District. Pls' Opp. at 18-19. Specifically, plaintiffs argue that former members of Penn who will confirm the confidential communications with Lilly, former research assistants who will confirm Dr. Schreiber's research and discoveries and what was conveyed in confidence to Lilly, and the lawyers who prosecuted the relevant patent application are potential witnesses residing in this District. Id. Plaintiffs claims that its "crucial witnesses are entirely independent of Plaintiffs." Id. Defendant Lilly believes that plaintiffs' list of witnesses in this District consists of only two people: Dr. Schreiber and one employee from the Penn technology transfer office who was involved in the communications underlying the Amended Complaint. Def. Lilly's Reply at 5-6.

Plaintiffs have not provided any sworn testimony regarding the number of witnesses residing in this District so this Court is unable to determine [*31] the potential number of witnesses residing in Pennsylvania. While Defendant Lilly provided a list of witnesses, seven of which are non-employees who reside in Indiana, it did not provide sworn testimony that these witnesses were unavailable or unwilling to testify in this District. Given the evidence submitted, this Court cannot find that this factor weighs in either party's favor.

b. Ease of Access to Sources of Proof and Evidence

Defendant Lilly argues that at least 500,000 pages of relevant documents are located in Indiana. Def. Lilly's Mot. at 22. Consideration of the location of books and records is "limited to the extent that the files could not be produced in the alternative forum." Jumara, 55 F.3d at 879. Defendant does not allege that the relevant documents cannot be produced in the Eastern District of Pennsylvania. As a result, the location of these documents is irrelevant to the venue analysis.

c. Hub of Activity

Defendant Lilly argues that Indiana is the hub of activity for virtually all of the events giving rise to plaintiffs' claims. Def. Lilly's Mot. at 21-23. Defendant Lilly argues that the "center of gravity" for plaintiffs' patent infringement [*32] claim is in Indiana and that plaintiffs' inventorship, state and common law claims are based upon a series of meetings, communications, discussions and agreements with Lilly. Id. at 21-22. Penn argues that the claims arose in Pennsylvania, noting research at Penn that led to the inventions at issue and communications sent from, or sent to, parties that reside in this District. n16 Penn's Opp. at 5, 8-9. The Court believes that this factor weighs in favor of Defendant Lilly.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n16 Plaintiffs do not address Defendant Lilly's contention that the claims arose in Indiana. In fact, plaintiffs argue that Indiana law should apply to the state and common law claims. See Pls' Opp. at 16.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

d. Convenience of the Parties

Plaintiffs argue that the convenience of the parties as indicated by their relative physical and financial condition weighs in favor of letting the case remain in the Eastern District of Pennsylvania. Pls' Opp. at 19-20; see also Jumara, 55 F.3d at 879. Plaintiffs note that the Lilly [*33] is a multi-billion dollar corporation with interests and activities spanning the globe. Pls' Opp. at 19. Financially, Defendant Lilly is capable of shouldering the inconvenience of litigating in Pennsylvania. Plaintiffs, on the other hand, have limited resources. Id. Dr. Schreiber and ZaBeCor, both of which are domiciled in the Eastern District of Pennsylvania, argue that it would be a significant hardship if they were compelled to litigate their claims in Indiana. Id. at 1, 19-20. Penn is a Pennsylvania not-for-profit educational institution and would similarly be inconvenienced by litigation in Indiana. Penn's Opp. at 1. This factor weighs in favor of the current venue.

2. Public Interest Factors

The public interest factors help interpret the "interest of justice" language of section 1404(a). These public interest factors include: enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the [*34] applicable state law in diversity cases. Jumara, 55 F.3d at 879-80. Defendant Lilly identifies two public interest factors that support a transfer to Indiana: judicial economy and the applicability of Indiana law. Def. Lilly's Mot. at 23-25; Def. Lilly's Reply at 8.

Defendant Lilly argues that the Lilly v. Barr case ("the Barr litigation") currently pending in the Southern District of Indiana involves many of the same legal and factual issues presented by Plaintiffs' Amended Complaint. n17 Def. Lilly's Mot. at 23. Defendant Lilly argues that since the Indiana court has already acquired considerable familiarity with the issues, judicial economy will be best served if this case is transferred to Indiana. Id. at 23. The Barr litigation involves seven Lilly patents and has been pending for three years in Indiana. Defendant Lilly does not contend that the instant case should be consolidated with the Barr litigation. Def. Lilly's Reply at 8. However, according to Defendant Lilly, the Barr litigation and the instant case both require construction of the claims of the '763, '847 and '117 patents. Def. Lilly's Mot. at 23-24. Defendant Lilly also claims [*35] that the Schreiber '321 patent is


"central to both cases." Def. Lilly's Reply at 8. Plaintiffs believe that Lilly overstates the legal and factual relationship between the instant matter and the Barr litigation. Pls' Sur-Reply at 7. Plaintiffs contend that there is no legally relevant overlap between the '763, '847 and '117 patents. Pls' Opp. at 23.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n17 The Barr litigation was instigated when Barr sought FDA permission to sell a generic version of EVISTA tm . Def. Lilly's Mot. at 11. In the Barr litigation, Barr has asserted that seven of Lilly's patents, including the '763, '847 and '117 patents, are invalid. Id. One of Barr's arguments that those patents are invalid is based upon its assertion that the Schreiber '321 patent anticipates the subject matter claimed in the '763, '847 and '117 patents. Id. The plaintiffs in the instant matter are not involved in the Barr litigation.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

This Court does not believe that the legal and factual issues overlap to such an extent that transfer on this [*36] basis is justified. See Smithkline Beecham Corp. v. Geneva Pharms., Inc., 2000 U.S. Dist. LEXIS 1818, No. 99-2926, 2000 WL 217642, at *2 (E.D. Pa. Feb. 11, 2000) (denying a motion to transfer when the case involved two patents not at issue in the Illinois case and discovery had already been completed in the Illinois case); Max Planck Gesellschaft Zur Foederung Der Wissenschaften, E.V. v. General Elec. Co., 858 F. Supp. 380, 382 (S.D.N.Y. 1994) (finding that familiarity of a court with a specific patent should not be given weight).

Defendant Lilly also argues that the case should be transferred to Indiana because Indiana law applies and the Southern District of Indiana routinely applies Indiana law. Def. Lilly's Reply at 8. Assuming *arguendo* that Indiana law applies, there is nothing to indicate that this Court would have difficulty applying Indiana law to this case. See De Lage Landen Fin. Servs. v. Cardservice Int'l, Inc., 2000 U.S. Dist. LEXIS 15505, No.Civ.A. 00-2355, 2000 WL 1593978, at *2 (E.D. Pa Oct. 25, 2000) ("federal judges routinely apply the law of various jurisdictions").

3. Balance of the Factors

Upon consideration of the parties' arguments, [*37] this Court is not persuaded that a transfer to the Southern District of Indiana is appropriate. Defendant Lilly has not made a convincing showing that the balance of factors outweighs the paramount consideration given to plaintiffs' choice of forum. Accordingly, this case will not be transferred.

III. CONCLUSION

Accordingly, Defendant Lilly's Motion to Dismiss or Transfer Claims is DENIED. An appropriate order follows.

Service: **Get by LEXSEE®**
Citation: **2006 U.S. Dist. LEXIS 13477**
View: **Full**
Date/Time: Thursday, August 10, 2006 - 9:28 AM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs

Case 1:06-cv-00362-GMS    Document 32-3    Filed 08/11/2006    Page 15 of 22

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 13477                Page 14 of 14

⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

 LexisNexis®

About LexisNexis  | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

**PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS' MOTION TO TRANSFER VENUE**

# Exhibit 5

Service: **Get by LEXSEE®**
Citation: **2006 U.S. Dist. LEXIS 41895**

*2006 U.S. Dist. LEXIS 41895, \**

THALES AIRBORNE SYSTEMS S.A. and THALES AVIONICS S.A., Plaintiffs, v. UNIVERSAL
AVIONICS SYSTEMS CORPORATION, Defendant.

Civ. No. 05-853-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2006 U.S. Dist. LEXIS 41895

June 21, 2006, Decided

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiffs, French corporations, filed a complaint for patent
infringement against defendant Arizona corporation. The Arizona corporation filed an
action in the District of New Jersey against one of the French corporations asserting
noninfringement and invalidity of four patents. The French corporations then filed a motion
to enjoin the New Jersey proceedings, and the Arizona corporation filed a 28 U.S.C.S. §
1404(a) motion to transfer.

**OVERVIEW:** Weighing the parties' arguments against the appropriate balancing test, the
court found that the asserted advantages of moving the case to the District of New Jersey
were insufficient to warrant a transfer. Much argument was made over the ties between
the French corporations and a New Jersey-based corporation. Although the French
corporations shared similar names with the New Jersey corporation and all three
corporations had the same corporate parent, neither the corporate parent nor the New
Jersey corporation were parties to the instant action. The Arizona corporation had not
shown that the New Jersey corporation had any connection to the present action, let alone
a strong enough connection such that the French corporations' choice of forum should be
ignored. Beyond the factors regarding the forum preferences of the parties, most of the
balancing factors did not favor either jurisdiction. In light of the court's decision to deny
the Arizona corporation's motion to transfer, among other things, the French corporations'
motion to enjoin the New Jersey declaratory judgment action was granted to the extent it
involved two patents at issue in the instant litigation.

**OUTCOME:** The Arizona corporation's motion to transfer was denied, and the French
corporations' motion to enjoin the New Jersey action was granted to the extent it involved
two patents at issue in the instant litigation.

**CORE TERMS:** patent, choice of forum, enjoin, first-filed, motion to transfer, declaratory
judgment action, patent infringement, convenience, patents-in-suit, technology, deference,
fora, turf, physical presence, balance of convenience, declaratory judgment, inconvenient,
co-pending, regional, replied, principal place of business, personal jurisdiction, remaining
issues, enforceability, transferred, ties

## LexisNexis(R) Headnotes ✦ Hide Headnotes

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers 

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 41895

Case 1:06-cv-00362-GMS   Document 32-3   Filed 08/11/2006   Page 18 of 22

Page 2 of 7

HN1⬇ Under 28 U.S.C.S. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intends through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. More Like This Headnote

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers 📖

HN2⬇ The burden of establishing the need to transfer rests with the movant to establish that the balance of convenience of the parties and witnesses strongly favors the defendants. Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail. More Like This Headnote

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers 📖

HN3⬇ The deference afforded a plaintiff's choice of forum will apply as long as the plaintiff has selected the forum for some legitimate reason. Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its home turf or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer. More Like This Headnote

Civil Procedure > Venue > Federal Venue Transfers > General Overview 📖

HN4⬇ The analysis for transfer is very broad. Although emphasizing that there is no definitive formula or list of factors to consider, a court has identified potential factors characterized as either private or public interests. The private interests include (1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). The public interests include (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. More Like This Headnote

Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions 📖

HN5⬇ A United States district court which first obtains jurisdiction of the parties and issues may enjoin proceedings involving the same issues and parties begun thereafter in another United States district court. While invocation of this "first-filed" rule is the norm, exceptions are not rare, and district courts are given discretion in retaining jurisdiction when justice or expediency requires. More Like This Headnote

Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions 📖

Patent Law > Remedies > Equitable Relief > Injunctions 📖

HN6 ⯊ While the Federal Circuit has a strong preference for adhering to the first-filed rule, its application seems limited to actions involving the same patents. More Like This Headnote

**COUNSEL:** **[*1]** For Thales Airborne Systems S.A., Thales Avionics S.A., Plaintiffs: John G. Day, Steven J. Balick, Tiffany Geyer Lydon, Ashby & Geddes, Wilmington, DE.

For Universal Avionics Systems Corporation, Defendant: Frederick L. Cottrell, III, Alyssa M. Schwartz, Richards, Layton & Finger, Wilmington, DE.; John G. Day, Ashby & Geddes, Wilmington, DE.

For Universal Avionics Systems Corporation, Counter Claimant: Frederick L. Cottrell, III, Richards, Layton & Finger, Wilmington, DE.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION: MEMORANDUM ORDER**

At Wilmington this 21st day of June, 2006, having considered plaintiffs' motion to enjoin, defendant's motion to transfer, and the papers submitted in connection therewith;

IT IS ORDERED that defendant's motion to transfer (D.I. 9) is denied, for the reasons that follow:

1. **Introduction.** On December 12, 2005, at 8:34 am, plaintiffs Thales Airborne Systems S.A. and Thales Avionics S.A. filed a complaint for patent infringement against defendant Universal Avionics Systems Corporation. (D.I. 1) That same day, at 9:46 am, defendant filed a declaratory judgment action in the District of New Jersey against **[*2]** Thales S.A. asserting noninfringement and invalidity of four patents. n1 This action only involves U.S. Patent No. 5,488,563 ("the '563 patent") and U.S. Patent No. 5,638,282 ("the '282 patent"), whereas the New Jersey action also involves U.S. Patent Nos. 5,414,631 ("the '631 patent") and 6,088,654 ("the '654 patent"). Plaintiffs filed a motion to enjoin the New Jersey proceedings. (D.I. 5, 6) Defendant then filed an answer and this cross motion to transfer to the District of New Jersey. (D.I. 7, 9, 10) Defendant filed its opposition to plaintiffs' motion to enjoin, to which plaintiffs have replied. (D.I. 10, 14) Plaintiffs also filed their opposition to the motion to transfer (D.I. 14), to which defendant has replied. (D.I. 19)

2. **Background.** Plaintiff Thales Airborne Systems S.A. is a French corporation and owns the rights to the patents-in-suit. (D.I. 6, Ex. A) Plaintiff Thales Avionics S.A. is also a French corporation and has been granted licenses and the right to enforce the patents-in-suit. (Id.) Thales S.A. ("Thales"), a French corporation, is the parent corporation of both plaintiffs. (Id.) Thales Avionics, Inc., a Delaware corporation with its principal place **[*3]** of business in New Jersey, is a wholly-owned subsidiary of Thales, but is not a party to either the Delaware or New Jersey action. n2 (D.I. 14 at 10)

3. Defendant Universal Avionics Systems Corporation is an Arizona corporation with its principal place of business in Arizona. Defendant and plaintiffs are competitors in the avionics equipment market, including terrain awareness and warning systems ("TAWS"). In May 2005, Thales sent a letter to defendant alleging that its manufacturing and sale of its TAWS products infringed the patents-in-suit. (D.I. 6 at 2) Subsequently, both parties engaged in negotiations regarding the patents-in-suit and entered into a standstill agreement prohibiting either party from initiating litigation through December 9, 2005. (Id.)

5. **Standard of Review.** [HN1] Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration [*4] of convenience and the interests of justice. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988); Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp.2d 192, 208 (D. Del. 1998).

6. [HN2] The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981) (citing **Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970)**. "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". ADE Corp. v. KLA-Tencor Corp., 138 F. Supp.2d 565, 567 (D. Del. 2001); **Shutte, 431 F.2d at 25**.

7. [HN3] The deference afforded a plaintiff's choice of forum will apply as long as the plaintiff has selected the forum for some legitimate reason. C.R. Bard, Inc. v. Guidant Corp., 997 F. Supp. 556, 562 (D. Del 1998); Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc., 2001 U.S. Dist. LEXIS 20803, 2001 WL 1617186 (D. Del. Nov. 28, 2001); Continental Cas. Co. v. American Home Assurance Co., 61 F. Supp.2d 128, 131 (D. Del. 1999). [*5] Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its "'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." In re M.L.-Lee Acquisition Fund II, L.P., 816 F. Supp. 973, 976 (D. Del. 1993).

8. The Third Circuit Court of Appeals has indicated that [HN4] the analysis for transfer is very broad. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). Although emphasizing that "there is no definitive formula or list of factors to consider," id., the Court has identified potential factors it characterized as either private or public interests. The private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses [*6] but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." Id. (citations omitted).

9. The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." Id. (citations omitted).

10. **Discussion.** Defendant asserts that its choice of forum should be given greater deference than plaintiffs' choice of forum because plaintiffs did not file suit on their "home turf." (D.I. 10 at 16) Defendant also points out that none of the parties are incorporated in Delaware, nor does any party have a physical presence in Delaware. (Id.) Defendant suggests that litigation in New Jersey would be more convenient and less expensive because [*7] of plaintiffs' "substantial ties" to New Jersey through the headquarters of Thales Avionics, Inc. (D.I. 19 at 3) Lastly, defendant contends that "the interest of justice"

requires the case be transferred because "the Delaware action could not dispose of all remaining issues between the parties." n3 (Id. at 4)

11. Plaintiffs contend that, as French corporations, Delaware is their "home turf," so their choice of forum should be given full deference. (D.I. 14 at 19) Additionally, plaintiffs argue that Delaware has an interest in the litigation because defendant's allegedly infringing products are sold in the State. Plaintiffs repeatedly question the benefits of a New Jersey forum because none of the parties are incorporated or maintain a physical presence in New Jersey. (D.I. 14 at 21 n.12) Lastly, there is a suggestion in the record that plaintiffs may challenge personal jurisdiction in New Jersey, which could affect the efficiency of litigation in New Jersey, as well as the enforceability of any judgment from a New Jersey court. (Id. at 20)

12. Weighing the parties' arguments against the Jumara balancing test, the court finds that the asserted advantages of moving the **[*8]** case to the District of New Jersey are insufficient to warrant a transfer. Much argument is made over the ties between plaintiffs and New Jersey-based Thales Avionics, Inc. Although plaintiffs share similar names with Thales Avionics, Inc. and all three corporations have the same corporate parent, neither Thales Avionics, Inc., nor Thales, are parties to this action. Defendant has not shown that Thales Avionics, Inc. has any connection to this patent infringement action, let alone a strong enough connection such that plaintiffs' choice of forum should be ignored.

13. Beyond the factors regarding the forum preferences of the parties, most of the Jumara factors do not favor either jurisdiction. For a patent infringement suit between an Arizona corporation and two French corporations, New Jersey and Delaware seem equally inconvenient for all parties. While defendant correctly points out that no party has a physical presence in Delaware, the same is true of New Jersey. Both parties argue that the other side's choice of forum makes little sense, but only plaintiffs maintain the ability to challenge jurisdiction in one of the forums in question. Transfer of this action is only appropriate **[*9]** to a jurisdiction where the action "might have been brought," and long delays could result were plaintiffs to challenge personal jurisdiction in the New Jersey declaratory judgment action.

14. Defendant contends that "the interest of justice" requires the case be transferred because additional issues exist in the pending New Jersey action that are not addressed in this Delaware action. Defendant is free to raise the additional patents in the action at bar in order to resolve them in one proceeding.

15. **Conclusion.** For the reasons stated, defendant's motion to transfer (D.I. 9) is denied.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The New Jersey action was later amended to include both Thales Airborne Systems S.A. and Thales Avionics S.A. as defendants.

n2 The parties disagree about the significance of Thales Avionics, Inc. to both motions. See infra PP 10-12.

n3 The "remaining issues" being the '631 and '654 patents.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 41895    Page 22 of 22

Case 1:06-cv-00262-GMS    Document 22-3    Filed 08/11/2006    Page 6 of 7

IT IS FURTHER ORDERED that plaintiffs' motion to enjoin (D.I. 5) is granted in part and denied in part, for the **[\*10]** reasons that follow:

1. **Standard of Review.** It has long been settled that[HN5] "a United States district court which first obtains jurisdiction of the parties and issues may . . . enjoin proceedings involving the same issues and parties begun thereafter in another United States district court." Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 927 (3d Cir. 1941). While invocation of this "first-filed" rule is the norm, exceptions are not rare, and district courts are given discretion in retaining jurisdiction "when justice or expediency requires." Genentech, Inc. v. Eli Lilly and Co., 998 F.2d 931, 937 (Fed. Cir. 1993); EEOC v. University of Pennsylvania, 850 F.2d 969, 972 (3d Cir. 1988).

2. Although courts hearing patent cases must apply "the procedural law of the regional circuit in matters that are not unique to patent law, . . . the regional circuit practice need not control when the question is important to national uniformity in patent practice." Laboratory Corporation of America Holdings v. Chiron Corp., 384 F.3d 1326, 1330 (Fed. Cir. 2004). The Federal Circuit has held that "injunctions arbitrating between **[\*11]** co-pending patent declaratory judgment and infringement cases in different district courts are reviewed under the law of the Federal Circuit." Id. at 1331. In this context, co-pending patent infringement and declaratory judgment actions are those involving "the same patents and the same parties." Id. at 1328.

3. **Discussion.** The parties spend much of their briefs arguing over whether the first-filed rule applies to actions filed within hours of one another, while comparatively little argument is made over whether the first-filed rule applies when the second action involves additional patents. In APV North America, Inc. v. Sig Simonazzi North America, Inc., 295 F. Supp.2d 393, 398 (D. Del. 2002), the court refused to use the first-filed rule to dismiss a case because the second case involved "different patents and different technologies." Although all four of the patents asserted in the New Jersey declaratory judgment action involve TAWS technology, the '631 and '654 patents arguably involve different aspects of this broad category of technology than do the '563 and '282 patents asserted at bar. (D.I. 19 at 7)

4. Plaintiffs cite **[\*12]** several cases for the proposition that only the same general subject matter between the two actions is needed if additional claims are raised in a subsequently-filed action. (D.I. 14 at 15) None of the cases cited are Federal Circuit patent cases, however, and[HN6] while the Federal Circuit has a strong preference for adhering to the first-filed rule, its application seems limited to actions "involving the same patents." Laboratory Corporation, 384 F.3d at 1328.

5. **Conclusion.** In light of the above discussion and the court's decision to deny defendant's motion to transfer this action to the District of New Jersey, plaintiffs' motion to enjoin the New Jersey declaratory judgment action is granted to the extent it involves the '563 and '282 patents at issue in the instant litigation.

Sue L. Robinson

United States District Judge

Service:  **Get by LEXSEE®**
Citation:  **2006 U.S. Dist. LEXIS 41895**
View:  Full
Date/Time:  Tuesday, August 8, 2006 - 3:23 PM EDT

## CERTIFICATE OF SERVICE

I, A. Zachary Naylor, do hereby certify that on this 11th day of August, 2006, I caused copies of the Plaintiff's Brief in Opposition to Defendants' Motion to Transfer Venue and Exhibits thereto to be served on the following

**By Electronic Notification:**
William O. Lamotte, III
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

**By Electronic Mailing:**

Anthony W. Clark (#2051)
tclark@skadden.com
Robert A. Weber (#4013)
rweber@skadden.com
SKADDON, ARPS, SLATE, MEAGHER
& FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899

James R. Carroll
jcarroll@skadden.com
Michael S. Hines
mhines@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
One Beacon Street
Boston, MA 02108

John D. Donovan, Jr.
john.donovan@ropesgray.com
Kelly Begg Lawrence
kelly.lawrence@ropesgray.com
ROPES & GRAY LLP
One International Place
Boston, MA 02110

Michael S. Gardener
mgardener@mintz.com
Michael F. Connolly
mconnolly@mintz.com
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY & POPEO, P.C.
One Financial Center
Boston, MA 02111

A. Zachary Naylor (# 4439)