UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

YAKOV WEISLER,

                        Plaintiff,

               v.

TIMOTHY A. BARROWS, et al.,

                        Defendants,

               and

SYCAMORE NETWORKS, INC.,

                        Nominal Defendant.

:
:    Civil Action
:    No. 06-00362-GMS
:
:
:
:
:
:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS

Anthony W. Clark (#2051)
Robert A. Weber (#4013)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Of counsel:
James R. Carroll
Michael S. Hines
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 573-4800

Counsel for Nominal Defendant Sycamore
Networks, Inc. and Defendants Gururaj Deshpande,
Daniel E. Smith and Richard J. Gaynor

Dated: August 25, 2006

John D. Donovan, Jr.
Kelly Begg Lawrence
ROPES & GRAY LLP
One International Place
Boston, Massachusetts 02110
(617) 951-7000

Counsel for Defendants
Timothy A. Barrows,
Paul W. Chisholm, Paul J. Ferri
and John W. Gerdelman

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

SUMMARY OF THE ARGUMENT .............................................................................. 4

STATEMENT OF FACTS ............................................................................................ 6

ARGUMENT .............................................................................................................. 8

I.     PLAINTIFF DID NOT MAKE PRE-SUIT DEMAND
AND DOES NOT ALLEGE WITH PARTICULARITY
FACTS SUFFICIENT TO DEMONSTRATE DEMAND FUTILITY ................. 8

     A.     Under Delaware Law, Plaintiff Is Required To Allege With
Particularized Facts Why His Failure To Make Demand Is Excused .......... 8

     B.     Demand Is Not Excused Because Plaintiff Fails To
Allege With Particularity Facts Creating A Reasonable Doubt
As To The Independence And Disinterestedness Of The Board .............. 10

          1.     Conclusory allegations that the
Director Defendants engaged in the
misconduct are inadequate to excuse demand ............................. 11

          2.     Conclusory claims of inadequate
supervision and a failure to rectify the
alleged conduct are insufficient to excuse demand ...................... 13

          3.     Sycamore Networks' Certificate
of Incorporation exculpates directors
from liability for breaches of fiduciary duty ................................. 15

     C.     Demand Is Not Excused For The Allegation That The
Director Defendants Failed To "Rectify" Any Alleged Misconduct ......... 17

          1.     Plaintiff fails to allege particularized
facts establishing a reasonable doubt that a
majority of the Board was disinterested or independent .............. 18

          2.     Plaintiff fails to allege particularized
facts sufficient to demonstrate that the
alleged "decision" to not pursue remedial
action was not a valid exercise of business judgment ................... 19

II.  PLAINTIFF DOES NOT HAVE STANDING TO CHALLENGE
     ALLEGED MISCONDUCT OCCURRING BETWEEN 1999 AND
     2001 BECAUSE HE WAS NOT A SHAREHOLDER AT THAT TIME ........... 20

III. THE COMPLAINT SHOULD BE DISMISSED
     BECAUSE ALL COUNTS FAIL TO STATE A CLAIM ................................. 21

     A.   Plaintiff's Section 14(a) Claim Should Be
          Dismissed Because The Allegations Are Not
          Plead With The Particularity Demanded By The PSLRA ....................... 22

     B.   Plaintiff's Sarbanes-Oxley Claim Should Be Dismissed
          Because Section 304 Does Not Provide A Private Right Of Action ......... 24

     C.   Counts III, IV and V Should Be Dismissed Because The
          Allegations Are Wholly Conclusory And Sycamore Networks'
          Certificate Of Incorporation Exculpates The Director Defendants ........... 25

          1.   Plaintiff's Conclusory Allegations
               Are Insufficient To State A Claim ................................................ 25

          2.   The Exculpatory Provision Of Sycamore Networks'
               Certificate Of Incorporation Bars Plaintiff's Breach
               Of Fiduciary Duty Claims As To The Director Defendants ......... 26

IV.  COUNTS III, IV AND V OF THE
     COMPLAINT SHOULD BE DISMISSED FOR THE
     INDEPENDENT REASON THAT THEY ARE TIME BARRED ..................... 27

          1.   Plaintiff's claims are barred because they were
               not brought within three years of the alleged misconduct ............. 28

          2.   Plaintiff's conclusory allegations do
               not -- because they  cannot -- demonstrate
               that the statute of limitations was tolled ....................................... 29

     CONCLUSION ........................................................................................... 30

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

Aronson v. Lewis,
    473 A.2d 805 (Del. 1984) ................................................................. *passim*

In re BHC Commc'ns, Inc. S'holder Litig.,
    789 A.2d 1 (Del. Ch. 2001) ...................................................... 26

In re Baxter Int'l, Inc. S'holders Litig.,
    654 A.2d 1268 (Del. Ch. 1995) ................................................ 16

Beam v. Stewart,
    833 A.2d 961 (Del. Ch. 2003) ................................................. 19

Beam v. Stewart,
    845 A.2d 1040 (Del. 2004).........................................................9, 10, 18

In re Bisys Group Inc. Derivative Action,
    396 F. Supp. 2d 463 (S.D.N.Y. 2005) ....................................... 24

Boeing Co. v. Schrontz,
    Civ. A. No. 11273, 1992 WL 81228 (Del. Ch. April 20, 1992).......................... 29, 30

Brehm v. Eisner,
    746 A.2d 244 (Del. 2000) .................................................... 8, 9

In re Caremark Int'l, Inc. Derivative Litig.,
    698 A.2d 959 (Del. Ch. 1996)................................................. 14

Caruana v. Saligman,
    Civ. A. No. 11135, 1990 WL 212304 (Del. Ch. Dec. 21, 1990).............................. 13

CertainTeed Corp. v. Celotex Corp.,
    No. Civ. A. 471, 2005 WL 217032 (Del. Ch. Jan. 24, 2005)............................. 27, 28

De Jesus v. Sears, Roebuck & Co.,
    87 F.3d 65 (2d Cir. 1996)..................................................... 22

In re Dean Witter P'ship Litig.,
    No. CIV. A. 14816, 1998 WL 442456 (Del. Ch. July 17, 1998) ..................27, 28, 29

In re Dean Witter P'ship Litig.,
    725 A.2d 441 (Del. 1999) .................................................... 27

In re Digimarc Corp. Derivative Litig.,
    Civ. No. 05-1324-HA (LEAD), 2006 WL 2345497 (D. Or. Aug. 11, 2006) ............ 24

In re Digital Island Sec. Litig.,
    223 F. Supp. 2d 546 (D. Del. 2002) .................................................................... 21, 22

Gen. Elec. Co. v. Cathcart,
    980 F.2d 927 (3d Cir. 1992) .............................................................................. 22, 23

In re Gen. Motors (Hughes) S'holder Litig.,
    897 A.2d 162 (Del. 2006) ......................................................................................... 26

Guttman v. Huang,
    823 A.2d 492 (Del. Ch. 2003) ........................................................................... 12, 15

Haber v. Bell,
    465 A.2d 353 (Del. Ch. 1983) ................................................................................ 12

Halpern v. Barran,
    313 A.2d 139 (Del. Ch. 1973) ....................................................................28, 29, 30

Kahn v. Seaboard Corp.,
    625 A.2d 269 (Del. Ch. 1993) ................................................................................ 27

Kamen v. Kemper Fin. Serv.,
    500 U.S. 90 (1991) .................................................................................................... 8

Kogan v. Robinson,
    432 F. Supp. 2d 1075 (S.D. Cal. 2006) .................................................................. 24

Levine v. Smith,
    591 A.2d 194 (Del. 1991) ......................................................................................... 9

Lewis v. Graves,
    701 F.2d 245 (2d Cir. 1983) ................................................................................... 15

Malpiede v. Townson,
    780 A.2d 1075 (Del. 2001) ............................................................................... 16, 26

McMillan v. Intercargo Corp.,
    768 A.2d 492 (Del. Ch. 2000) ................................................................................ 26

Neer v. Pelino,
    389 F. Supp. 2d 648 (E.D. Pa. 2005) ................................................................ 24, 25

<u>Pogostin v. Rice</u>,
   480 A.2d 619 (Del. 1984) ...................................................................................... 13

<u>Rales v. Blasband</u>,
   634 A.2d 927 (Del. 1993) .................................................................. *passim*

<u>Rattner v. Bidzos</u>,
   Civ. A. No. 19700, 2003 WL 22284323 (Del. Ch. Oct. 7, 2003) ............................. 14

<u>Schreiber v. R.G. Bryan</u>,
   396 A.2d 512 (Del. Ch. 1978) ......................................................................... 20, 21

<u>Seminaris v. Landa</u>,
   662 A.2d 1350 (Del. Ch. 1995) ............................................................................ 14

<u>In re U.S. West, Inc. Sec. Litig.</u>,
   201 F. Supp. 2d 302 (D. Del. 2002) ..................................................................... 23

<u>In re U.S. West, Inc. Sec. Litig.</u>,
   65 Fed. App'x 856 (3d Cir. 2003) ......................................................................... 23

<u>White v. Panic</u>,
   783 A.2d 543 (Del. 2001) ...................................................................................... 8

<u>In re Whitehall Jewellers, Inc. S'holder Derivative Litig.</u>,
   No. 05 C 1050, 2006 WL 468012 (N.D. Ill. Feb. 27, 2006) ..................................... 24

**STATUTES**                                                              **PAGE(S)**

15 U.S.C. §§ 78a <u>et</u> <u>seq</u>. ................................................................................... 1

15 U.S.C. § 7243 ........................................................................................... 24

15 U.S.C. § 78n ............................................................................................. 22

15 U.S.C. § 78u-4(b)(1-3) ............................................................................. 2, 23

8 Del. Code § 102(b)(7) ................................................................................. 16

8 Del. Code § 327 ......................................................................................... 20

10 Del. Code § 8106 ..................................................................................... 28

**<u>OTHER AUTHORITIES</u>**                                                      **<u>PAGE(S)</u>**

17 C.F.R. § 240.14a-9 ................................................................................ 22

Fed. R. Civ. P. 12(b)(6) ....................................................................... 3, 9, 21

Fed. R. Civ. P. 23.1 ....................................................................... *passim*

## NATURE AND STAGE OF THE PROCEEDINGS

On May 31, 2006 -- and without first making the requisite pre-suit demand on nominal defendant Sycamore Networks, Inc.'s ("Sycamore Networks" or the "Company") Board of Directors (the "Board") -- plaintiff Yakov Weisler ("Plaintiff") filed this derivative action. The complaint ("Complaint" cited as "Compl.") asserts claims against all six members of the Board, Sycamore Networks' current Chief Financial Officer and one former officer for alleged breaches of fiduciary duties (Counts III, IV and V), as well as for violations of Section 14(a) of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78a et seq.) (the "Exchange Act") (Count I), all premised upon conclusory allegations of participation in and/or knowledge of transactions during 1999 to 2001 in which Company granted stock options were "back-dated."[1]  In addition, and in the same conclusory fashion, Count II of the Complaint asserts a claim against two directors and the two current and former chief financial officers for alleged violations of Section 304 of the Sarbanes-Oxley Act of 2002.

Where, as here, a derivative plaintiff fails to make pre-suit demand, the complaint must satisfy Fed. R. Civ. P. 23.1 and allege, with particularity, why pre-suit demand was futile.  Rule 23.1 requires plaintiffs seeking to avoid the pre-suit demand requirement to allege particularized facts that create a reasonable doubt that either (i) a

---

[1]    The Complaint describes backdating of stock options as a process whereby Company issued stock options are deliberately dated prior to the date that the stock option was actually granted. (Compl. ¶ 4.)  Backdating increases the value of the option because the fair market value of Company stock on the earlier date is lower than the fair market value of Company stock on the date the option was granted.  (Id.)  The Complaint also alleges that defendants deliberately cancelled certain stock option grants, and then reissued those options at a lower exercise price.  (Id. ¶ 2.)

majority of the board was disinterested or independent or (ii) a board decision was the product of a valid exercise of business judgment. This Complaint does neither.

      The Complaint's allegations of demand futility are all premised upon the same conclusory contention that the Board approved of or participated in the alleged misconduct, and therefore demand would be futile because the Board would not vote to sue themselves. The Complaint's allegations, however, fall far short of demonstrating that a majority of the six-member Board (four of whom are outside directors) face a *substantial likelihood* of personal liability. Indeed, outside of Plaintiff simply naming all directors as defendants, there is not a single particularized fact suggesting that any director -- let alone a majority of the Board -- participated in, knew of or should have known of any alleged misconduct. Conspicuously absent from the Complaint is even one allegation (conclusory or otherwise) that any Board member received portions of the alleged backdated options or otherwise personally benefited from the alleged misconduct. That omission alone refutes Plaintiff's conclusory allegations and, accordingly, the Complaint fails as a matter of law and should be dismissed.

      Separate and apart from Plaintiff's dispositive failure to allege demand futility with particularity, the Complaint also should be dismissed for failure to state a claim. Plaintiff does not -- and cannot -- plead factual allegations in accordance with the heightened pleading standards of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(1-3) (the "PSLRA") that Sycamore Networks' November 17, 2005 proxy statement was false and misleading (Count I). Count II fails to state a claim because Section 304 of the Sarbanes-Oxley Act does not create a private right of action for a corporation or an individual.

Plaintiff's fiduciary duty claims (Counts III-V) should be dismissed for three additional, independently sufficient reasons.  <u>First</u>, Counts III-V are impermissibly premised upon wholly conclusory allegations of breaches of fiduciary duty in connection with alleged backdated options, but not a single fact is alleged to support any of those claims.  <u>Second</u>, Counts III-V should be dismissed because the exculpatory provision of Sycamore Networks' Certificate Of Incorporation releases its directors from personal liability for the kinds of breaches of fiduciary duty alleged here.  The lack of any factual allegations to support a claim of bad faith or a knowing violation of law renders the exculpatory provision dispositive of those claims as a matter of law.  <u>Third</u>, Counts III-V are time barred by the applicable three-year statute of limitations.

The Complaint is brought on behalf of Sycamore Networks against all six members of the Board -- Timothy A. Barrows, Paul W. Chisholm, Gururaj Deshpande, Paul J. Ferri, John W. Gerdelman and Daniel E. Smith (the "Director Defendants").  The Complaint also names as defendants Sycamore Networks' current Chief Financial Officer Richard J. Gaynor (collectively with Sycamore Networks and the Director Defendants, "Defendants") and former Chief Financial Officer Frances M. Jewels.  Defendants now move under Fed. R. Civ. P. 12(b)(6) and 23.1 to dismiss the Complaint.  This is their opening brief in support of that motion.

## SUMMARY OF THE ARGUMENT

1.     The Complaint should be dismissed with prejudice because Plaintiff did not make a pre-suit demand, and the Complaint fails to allege with the requisite particularity facts demonstrating that demand would be futile.  (See Fed. R. Civ. P. 23.1.)

       a.     The Complaint does not allege particularized facts sufficient to raise a reasonable doubt that a majority of the Board was independent and disinterested.

              i.     There are no particularized allegations that a majority of the Board faces a *substantial likelihood* of personal liability; and

              ii.     The exculpatory provision of Sycamore Networks' Certificate of Incorporation releases its directors from personal liability for the kinds of breaches of fiduciary duty alleged here.

       b.     The Complaint does not allege particularized facts sufficient to demonstrate that any Board decision was not a valid exercise of business judgment.

2.     Plaintiff was not a shareholder between 1999 and 2001, and therefore lacks standing to pursue litigation on behalf of Sycamore Networks challenging alleged misconduct that occurred during that time.  (See id.)

3.      The Complaint should be dismissed because it fails to state a claim.

a.      Plaintiff's Section 14(a) claim (Count I) fails because the Complaint does not plead with the requisite particularity that Sycamore Networks' proxy statement was false or misleading.

b.      Plaintiff's Sarbanes-Oxley claim (Count II) fails because Section 304 does not create a private right of action.

c.      Plaintiff's fiduciary duty claims (Count III-V) fail because they are wholly conclusory and lack any specific facts to sufficiently state a claim.

d.      Plaintiff's fiduciary duty claims (Counts III-V) fail because Sycamore Networks' Certificate of Incorporation exculpates the Director Defendants for the type of conduct alleged here.

4.      Plaintiff's fiduciary duty claims (Counts III-V) fail for the additional reason that they are time barred by the applicable three-year statute of limitations.

**STATEMENT OF FACTS**

Plaintiff alleges that he has been a Sycamore Networks stockholder since June 25, 2004.  (Compl. ¶ 10.)  Nominal defendant Sycamore Networks, a Delaware corporation headquartered in Massachusetts, is a provider of optical networking products for telecommunications service providers.  (Id. ¶ 12.)  On June 7, 2005, Sycamore Networks announced that it was conducting an internal investigation (at the direction of the Audit Committee of the Board) into the accounting for certain stock options granted during 1999 to 2001 (the "Investigation") and, accordingly, it would delay the filing of its Form 10-Q for the quarterly period ended April 30, 2005.  (Id. ¶ 29.)  On August 26, 2005, Sycamore Networks announced that the Audit Committee had completed the Investigation.  (Id. ¶ 30.)  The Company further announced that the Investigation identified certain stock options granted during 1999 to 2001 that were incorrectly accounted for and, as a result, the Board recommended that the Company's financial statements should be restated for fiscal years 2000 through 2004.  (Id. ¶¶ 29-30.)

On September 12, 2005, Sycamore Networks filed with the Securities and Exchange Commission (the "SEC") an amended annual report on Form 10-K/A for the fiscal year ended July 31, 2004, which restated the Company's consolidated financial statements for fiscal years ended July 31, 2000 through July 31, 2004 (the "Restatement"). (Id. ¶ 31.)  The Restatement publicly announced, among other things, that the Investigation identified certain stock options granted during 1999 to 2001 that were erroneously accounted for under Generally Accepted Accounting Principles ("GAAP"). (Id.)  The Restatement further announced that the Investigation found that certain stock options were deliberately modified:

> The options identified consisted of (i) six new employee stock option grants in which the employment start date records were deliberately modified and six existing stock option grants that were deliberately cancelled and reissued, in both cases, to provide a lower exercise price for these options, (ii) options granted under the April 14, 2000 broad based stock option grant program, where from a review of supporting records it appeared that the number of options granted likely was not ultimately determined until April 26, 2000, (iii) three stock option grants that continued to vest following a change in grantees' employment status without the Company recording an appropriate corresponding stock compensation charge, and (iv) one stock option grant that was improperly accounted for due to an inadvertent recording error.

(Id. (quoting the Restatement at 51).)

On May 31, 2006, Plaintiff filed this derivative action against Sycamore Networks' four outside directors (Messrs. Barrows, Chisholm, Ferri and Gerdelman), its two inside directors/officers (Messrs. Deshpande and Smith) and its current Chief Financial Officer (Mr. Gaynor). (Compl. ¶¶ 14-19, 21.) The Complaint also names as a defendant former Sycamore Networks' officer Ms. Jewels. (Id. ¶ 25.)

**ARGUMENT**

**I.     PLAINTIFF DID NOT MAKE PRE-SUIT DEMAND
         AND DOES NOT ALLEGE WITH PARTICULARITY
         FACTS SUFFICIENT TO DEMONSTRATE DEMAND FUTILITY.**

      **A.     Under Delaware Law, Plaintiff Is Required To Allege With
         Particularized Facts Why His Failure To Make Demand Is Excused.**

A "cardinal precept" of Delaware corporate law is that "directors, rather than shareholders, manage the business and affairs of the corporation." Aronson v. Lewis, 473 A.2d 805, 811 (Del. 1984), overruled on other grounds sub nom. Brehm v. Eisner, 746 A.2d 244, 253 (Del. 2000).[2] See also Kamen, 500 U.S. at 101 ("[t]he demand requirement implements 'the basic principle of corporate governance that the decisions of a corporation -- including the decision to initiate litigation -- should be made by the board of directors . . . .'") (citation omitted).  As a result, a derivative suit to enforce corporate rights may not be brought unless the shareholder-plaintiff demonstrates that (i) the board wrongfully refused to bring suit or (ii) a demand on the board would have been futile and is therefore excused.  White v. Panic, 783 A.2d 543, 550 (Del. 2001) (dismissing derivative complaint with prejudice where plaintiff failed to allege with particularity why demand was futile).

      Where, as here, the shareholder fails to make demand on the board, he must "allege with particularity . . . the reasons . . . for not making the effort" (i.e., why

---

[2]    Because Sycamore Networks is a Delaware corporation (Compl. ¶ 12), Delaware law governs Plaintiff's claims.  See Kamen v. Kemper Fin. Serv., 500 U.S. 90, 108-09 (1991) (holding that demand analysis in derivative actions conducted under substantive law of state of incorporation).

demand would have been futile).  Fed. R. Civ. P. 23.1 (emphasis added).[3]  To establish

demand futility in a case such as this, where the Complaint challenges a course of

conduct rather than a specific decision of the Board, a plaintiff must plead "particularized

factual allegations  . . . [that] create a reasonable doubt that, as of the time the complaint

is filed, the board of directors could have properly exercised its independent and

disinterested business judgment in responding to a demand."  Rales v. Blasband, 634

A.2d 927, 934 (Del. 1993).[4]

       Pursuant to Delaware law, "directors are entitled to a presumption that

they were faithful to their fiduciary duties."  Beam v. Stewart, 845 A.2d 1040, 1048 (Del.

2004).  "In the context of pre-suit demand, the burden is upon the plaintiff . . . to

---

[3]    The pleading requirements of Rule 23.1 are "an exception to the general notice pleading standard" and "more onerous than that required to withstand a Rule 12(b)(6) motion to dismiss."  Levine v. Smith, 591 A.2d 194, 207, 210 (Del. 1991) (affirming dismissal of derivative action pursuant to Rule 23.1 due to plaintiff's failure to plead demand futility with sufficient particularity), overruled on other grounds sub nom. Brehm, 746 A.2d 244.  Indeed, "Rule 23.1 is not satisfied by conclusory statements or mere notice pleading . . .. What the pleader must set forth are particularized factual statements that are essential to the claim."  Brehm v. Eisner, 746 A.2d 244, 254 (Del. 2000).  While the Court should draw all reasonable inferences from the well pleaded facts in plaintiff's favor, "[c]onclusory allegations are not considered as expressly pleaded facts or factual inferences."  Beam v. Stewart, 845 A.2d 1040, 1048 (Del. 2004) (quotation omitted) (affirming dismissal of derivative action on grounds that plaintiff failed to demonstrate that majority of board was not independent).

[4]    Plaintiff may attempt to argue that the Board made a "decision" to refrain from bringing suit against the alleged wrongdoers or cancel improperly priced options, and therefore the portion of Count III that alleges a breach of fiduciary duty in that regard (Compl. ¶ 58) should be analyzed pursuant to the standard articulated in Aronson.  See Aronson, 473 A.2d at 814 (when a plaintiff challenges a specific decision of the Board, plaintiff must allege particularized facts that, if true, create a "reasonable doubt" that either (i) a majority of "the directors are disinterested and independent," or (ii) "the challenged transaction was otherwise the product of a valid exercise of business judgment.").  Because Plaintiff does not make any allegations that the Board has considered whether to take any remedial action, but declined to do so, Defendants contend that the Aronson test has no application in this case.  Defendants nevertheless discuss this approach infra, Part I.C.

overcome that presumption." Id. at 1048-49.  To overcome this presumption, Plaintiff

must plead particularized facts, specific to each director, to demonstrate that at least three

of the six-member Board (four of whom are outside directors) could not have

independently responded to a demand, had one been made.  Id. at 1049-50.

>    **B.    Demand Is Not Excused Because Plaintiff Fails
>             To Allege With Particularity Facts Creating A Reasonable
>             Doubt As To The Independence And Disinterestedness Of The Board.**

To establish demand futility, Plaintiff must allege particularized facts

sufficient to demonstrate that a majority of the Board could not have properly considered

a demand because, as to those claims, they were not independent and disinterested.  Rales,

634 A.2d at 934.  To establish director "interest," the well-pleaded facts must

demonstrate that a majority of the Director Defendants face a "substantial likelihood" of

personal liability.  Id. at 936 (citing Aronson, 473 A.2d at 815).  The "mere threat" of

personal liability is insufficient to excuse demand.  Aronson, 473 A.2d at 815.[5]

The Complaint contains 12 sub-paragraphs of generalized, conclusory

allegations to support Plaintiff's contention that pre-suit demand was futile.  (See Compl.

¶¶ 48 (a)-(l).)  All 12 sub-paragraphs are nothing more than variations of the same

circular theme: the Director Defendants engaged in the alleged misconduct, are therefore

interested and could not have considered a demand.  Apart from conclusory assertions

however, there are is not a single particularized allegation to substantiate that any of the

Director Defendants -- much less a majority of the Board -- participated in, or knew of,

---

[5]    To show a lack of independence, Plaintiff's allegations must create a reasonable
doubt as to whether a director is "so 'beholden' to an interested director . . . that his or her
'discretion would be sterilized.'"  Beam, 845 A.2d at 1050 (quoting Rales, 634 A.2d at
936).  The Complaint does not contain any allegations of a lack of director independence.
(See Compl. ¶¶ 48 (a)-(l).)

any wrongdoing and consequently face a "substantial likelihood" of personal liability for any of the five Counts in the Complaint. Rales, 634 A.2d at 934. Accordingly, demand is not excused and the Complaint should be dismissed.

> **1.    Conclusory allegations that the Director Defendants engaged in the misconduct are inadequate to excuse demand.**

Most of the Complaint's demand futility allegations contend that demand is excused because the Director Defendants "approved," "ratified," or "facilitated" purportedly "unlawful" and "illegal" conduct during the period between 1999 and 2001. (Compl. ¶¶ 48 (a)-(c), (e)-(i).) Because that kind of contention, if accepted, would virtually disable every Delaware board of directors from ever considering whether a lawsuit of this type is in the best interests of the corporation, such allegations are insufficient to excuse demand as a matter of law. Instead, to meet his burden Plaintiff must allege particularized facts that demonstrate a *substantial likelihood* that the Director Defendants face personal liability that will prevent them from considering a demand.

Plaintiff does not -- and cannot -- satisfy that burden. Instead, Plaintiff offers only a series of conclusory allegations, none of which (individually or collectively) suggest that a majority of the Board -- or even one Director -- participated in, knew of, or should have known of the alleged misconduct. In conclusory fashion, the Complaint alleges that:

- "[f]rom 1999 to 2001, defendants authorized, modified, or failed to halt the back-dating" (Compl. ¶ 5);

- "[b]etween 1999 and 2001, the Company, through the actions of its Board of Directors and its Compensation Committee, granted back-dated stock options" (id. ¶ 36); and

- "[b]etween 1999 and 2001, . . . the Board of Directors []
  approved, ratified or failed to halt the manipulation of stock
  options" (id. ¶ 48(a)).

Other than those conclusory assertions, Plaintiff does not identify even
one single, specific fact that establishes that the Board participated in the alleged conduct,
or that information came to the attention of any director that would have alerted the
Board to the alleged misconduct prior to the Investigation.  Indeed, in ¶ 7 the Complaint
alleges that the Board did not learn of the alleged backdating until the Investigation in
2005.  How could the Board have participated in such conduct several years earlier?

The Complaint lacks particularized allegations regarding any Director
Defendant involvement in the granting of stock options, what any Director Defendant
knew during 1999 to 2001 or how they came to learn such information.  In short,
Plaintiff's conclusory assertions of Board participation in unlawful activity, without any
supporting particularized factual allegations, are insufficient as a matter of law to excuse
demand.  Guttman v. Huang, 823 A.2d 492, 498 (Del. Ch. 2003) (complaint failed to
allege demand futility because it was "entirely devoid of particularized allegations of fact
demonstrating that the outside directors had actual or constructive notice of the
accounting improprieties"); Haber v. Bell, 465 A.2d 353, 359 (Del. Ch. 1983) (holding
that allegations that all directors named in suit "participated in, expressly approved and/or
acquiesced in, and are personally liable for, the wrongs complained herein" insufficient to
excuse demand).

Similarly inadequate are Plaintiff's allegations that the Director
Defendants would not sue themselves because it would expose them to suits for securities
fraud.  (Compl. ¶¶ 48(g)-(h).)  As an initial matter, there are no pending securities fraud

suits, and such allegations are purely speculative. Moreover, Plaintiff's conclusory allegations do not even come close to establishing that a majority of the Director Defendants face a *substantial likelihood* of personal liability from such hypothetical suits. Indeed, those allegations are nothing more than Plaintiff naming each member of the Board as a defendant and alleging that because he has sued all of them they are conflicted and interested, and therefore demand is futile. That, of course, is insufficient. Pogostin v. Rice, 480 A.2d 619, 625 (Del. 1984) ("bootstrap allegations of futility, based on claims of directorial participation in and liability for the wrongs alleged, coupled with a reluctance by directors to sue themselves, were laid to rest in Aronson").[6]

### 2. Conclusory claims of inadequate supervision and a failure to rectify the alleged conduct are insufficient to excuse demand.

Plaintiff's conclusory allegations that the Director Defendants breached fiduciary duties of "care, loyalty, reasonable inquiry, oversight, good faith and supervision" for (i) the occurrence of the alleged misconduct (Compl. ¶ 57) and (ii) failing to "rectify the problem" subsequent to the Investigation (id. ¶ 58) also are not plead with particularity. Yet again, Plaintiff's conclusory allegations are inadequate to demonstrate that a majority of the Director Defendants face a *substantial likelihood* of personal liability.

_____

[6]    Similarly deficient is Plaintiff's allegation that the Director Defendants might lose their insurance coverage if they brought suit because there is no coverage when the company sues "itself or certain officers." (Compl. ¶ 48 (j).) This argument is nothing more than a variation "on the 'directors suing themselves' and 'participating in the wrongs' refrain." Caruana v. Saligman, Civ. A. No. 11135, 1990 WL 212304, at *4 (Del. Ch. Dec. 21, 1990) (demand not excused when "liability insurance has a typical exclusion from coverage of claims brought by [company] against its directors . . . .") (Compendium Of Unreported Authorities Cited In Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss (cited as "Comp.") Tab B).

The Complaint conclusorily (and impermissibly) asserts that the Director Defendants "permitted" the alleged conduct "through abdication of duty." (Compl. ¶¶ 48 (d), (i).) Those allegations fall far short of demonstrating that a majority of the Director Defendants face a substantial likelihood of personal liability for a sustained failure of oversight.[7]

At best, these claims of breach of fiduciary duty allege, albeit conclusorily, a generalized failure to exercise proper oversight and/or supervision. But a claim of "inaction," without more, is not sustainable. See In re Caremark Int'l, Inc. Derivative Litig., 698 A.2d 959, 968-69 (Del. Ch. 1996); see also Rattner v. Bidzos, Civ. A. No. 19700, 2003 WL 22284323, at *12 (Del. Ch. Oct. 7, 2003) (dismissing derivative action under Rule 23.1 for failure to plead demand futility with sufficient particularity) (Comp. Tab F). Such a claim, for "good policy reasons," is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." Caremark, 698 A.2d at 967. Rather, a claim predicated upon a failure to act appropriately is not stated absent allegations of fact that, if true, would demonstrate a "sustained or systematic failure" of the board to exercise oversight. Id. at 971. Plaintiff here does not even attempt to satisfy this high standard. The Complaint does not contain a single allegation

---

[7]     Plaintiff's allegation that the Director Defendants "signed off on and submitted to the SEC" the Restatement which "minimized" the alleged conduct as a "mere accounting irregularity" is insufficient for at least two reasons. First, that allegation is belied by Plaintiff's own allegations that quote from the Restatement, fully disclosing that the requisite restatement was caused, in part, by "six new employee stock option grants in which the employment start date records were deliberately modified and six existing stock option grants that were deliberately cancelled and reissued . . . ." (Compl. ¶ 31). Second, the Complaint does not contain particularized facts supporting a determination that the Director Defendants face a substantial likelihood of personal liability. See Seminaris v. Landa, 662 A.2d 1350, 1354 (Del. Ch. 1995) (signing misleading 10-K and registration statement insufficient to excuse demand).

14

that there was a sustained or systematic failure by any of the Director Defendants to exercise oversight. Indeed, the Complaint lacks any allegations whatsoever concerning the policy and procedure for granting stock options, much less any defendant's role in that process. See Guttman, 823 A.2d at 507 (rejecting argument that claims of lack of internal controls excused demand where complaint did not contain "well-pled factual allegations -- as opposed to wholly conclusory statements -- that the [] independent directors committed any culpable failure of oversight").

Plaintiff's assertions that the Board failed to "rectify" the alleged misconduct also miss the mark and do not excuse demand. (Id. ¶¶ 48 (b), (k), (l).) If that type of allegation was sufficient -- and it is not -- demand would always be excused. See Lewis v. Graves, 701 F.2d 245, 249 (2d Cir. 1983) (affirming dismissal of shareholder derivative action for failure to allege demand futility and holding that "[j]ust as it does not suffice simply to name all of the directors as defendants and charge them with having approved the alleged wrongdoings, bald charges of mere failure to take corrective action are simply inadequate to demonstrate futility") (emphasis added).

### 3. Sycamore Networks' Certificate of Incorporation exculpates directors from liability for breaches of fiduciary duty.

In addition to the absence of any particularized allegations demonstrating that the Director Defendants breached any fiduciary duty, Sycamore Networks' Certificate of Incorporation expressly exculpates the directors under these circumstances from any liability for such breaches of the duty of care, thereby eliminating a "substantial

15

likelihood" of personal liability for the majority of the Board.[8]  See In re Baxter Int'l, Inc. S'holders Litig., 654 A.2d 1268, 1270 (Del. Ch. 1995) (dismissing derivative action for failure to plead demand futility with requisite particularity and holding that "[w]hen the certificate of incorporation exempts directors from liability, the risk of liability does not disable them from considering a demand fairly unless particularized pleading permits the court to conclude that there is a substantial likelihood that their conduct falls outside the exemption").

> Sycamore Networks' exculpatory provision states, in pertinent part:
>
> > Except to the extent that the General Corporation Law of Delaware prohibits the elimination or limitation of liability of directors for breaches of fiduciary duty, no director of the Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for any breach of fiduciary duty as a director, notwithstanding any provision of law imposing such liability.

(Certificate Art. Seventh.)

> Delaware law expressly recognizes that such an exculpatory provision shields directors from claims for monetary damages except for claims of breach of their duty of loyalty, or involving intentional misconduct, a knowing violation of law, or an improper personal benefit.  See 8 Del. Code § 102(b)(7).  As described in more detail above, the Complaint contains no well-pleaded factual allegations that would support a non-exculpated claim.  Plaintiff does not allege, that any Director Defendant received any

---

[8]    See Amended And Restated Certificate of Incorporation, restated October 27, 1999 and amended January 26, 2000 and December 14, 2000, attached as Exhibit A (cited as "Certificate").  The exculpatory provision is permitted under 8 Del. Code § 102(b)(7).  The Court may take judicial notice of Sycamore Networks' Certificate of Incorporation.  Malpiede v. Townson, 780 A.2d 1075, 1090 (Del. 2001) (dismissing shareholder suit for breach of duty of care where corporate charter expressly limited director defendants' personal liability).

backdated stock options, or otherwise personally benefited from the alleged misconduct. Moreover, outside of hopeless conclusory allegations, Plaintiff does not plead that the Director Defendants engaged in intentional misconduct or knowingly violated any law. Accordingly, because a *substantial likelihood* of personal liability for a majority of the Board has not been plead with particularity, demand is not excused, and the Complaint should be dismissed.

### C.    Demand Is Not Excused For The Allegation That The Director Defendants Failed To "Rectify" Any Alleged Misconduct.

Under Delaware law, to establish demand futility when a specific decision of the board is challenged (as opposed to a course of conduct), the plaintiff must allege particularized facts that, if true, create a "reasonable doubt" that either (i) a majority of "the directors are disinterested and independent," or (ii) "the challenged transaction was otherwise the product of a valid exercise of business judgment."  Aronson, 473 A.2d at 814.

Plaintiff may attempt to argue that Count III alleges, in part, that the Board made a decision to not take any remedial action for the alleged misconduct and, therefore, the demand futility inquiry should be made pursuant to the Aronson standard (and not the Rales standard).  (Compl. ¶ 58.)  Such an analysis is not appropriate because the Complaint does not allege particularized facts that the Board has considered whether to take any action, but declined to do so.  Indeed, an "essential predicate for the Aronson test is the fact that a decision of the board of directors is being challenged in the derivative action. . . . Where there is no conscious decision by directors to act or refrain

17

from acting, the business judgment rule has no application." Rales, 634 A.2d at 933

(emphasis added).[9]

    Even if the Court were to apply the Aronson standard to the Complaint's

allegations concerning an alleged failure to rectify, the result is the same: the Complaint

does not contain particularized facts to excuse demand.

> **1. Plaintiff fails to allege particularized facts**
> **establishing a reasonable doubt that a majority**
> **of the Board was disinterested or independent.**

    Plaintiff does not satisfy the first prong of the Aronson test: whether there

is reasonable doubt that most of "the directors are disinterested and independent."

Aronson, 473 A.2d at 814. "[T]he directors are entitled to a presumption that they were

faithful to their fiduciary duties; . . . the burden is upon the plaintiff in a derivative action

to overcome that presumption." Beam, 845 A.2d at 1048-49. As described above (see

supra Part I.B), the Complaint here fails to overcome that presumption because it does

not allege any particularized facts sufficient to demonstrate interestedness or a lack of

independence on the part of any of the six Board members.

---

[9]     Plaintiff may also attempt to argue that the Board made a "decision" to backdate
stock options and, therefore, the demand futility inquiry concerning his purported "waste"
claim (Count V) should be analyzed pursuant to the standard articulated in Aronson.
That argument fails, however, because, as demonstrated above, Plaintiff does not allege
particularized facts that support the contention that the Director Defendants made a
"decision" to backdate options. Indeed, there are no particularized facts demonstrating
that any of the Director Defendants even knew of the alleged option backdating. To the
contrary, the Complaint alleges that Defendants discovered the alleged backdating during
the Investigation in 2005. (Compl. ¶ 7.)

**2.    Plaintiff fails to allege particularized facts sufficient to demonstrate that the alleged "decision" to not pursue remedial action was not a valid exercise of business judgment.**

The Complaint also does not allege facts sufficient to excuse demand under the second prong of the <u>Aronson</u> test: whether there is reasonable doubt that "the challenged transaction was otherwise the product of a valid exercise of business judgment." <u>Aronson</u>, 473 A.2d at 814.  As an initial matter, Plaintiff has not plead particularized facts that the Board even made a decision as to whether to pursue any remedial action concerning the alleged misconduct.  There are no allegations as to what actions the Board considered taking, when they considered such actions or what was the final determination of those discussions.[10]  Instead, the Complaint conclusorily asserts, without any particularized facts whatsoever, that the Board "did not require that any employee disgorge all of their ill-gotten gains . . . did not require them to return all unexecuted stock options" (Compl. ¶ 48 (l)), and "no employees were fired, no stock option grants were rescinded, and no action was taken to recover the money from those that had been unjustly enriched" (<u>id.</u> ¶ 58).

---

[10]    Plaintiff's inability to allege those necessary facts is not surprising since he failed to make the requisite pre-suit demand.  (Compl. ¶ 48.)  Notwithstanding Delaware courts' repeated admonitions to conduct a pre-suit investigation in order to assist in drafting a particularized pleading, the Complaint here confirms that Plaintiff did little, if any, investigation.  Sufficiently pleading demand futility under Delaware law requires more than "precious little investigation beyond perusal of the morning newspapers." <u>Beam v. Stewart</u>, 833 A.2d 961, 982 (Del. Ch. 2003).  Indeed, Delaware courts acknowledge that pleading with particularity is a difficult standard to meet because plaintiffs have certain "tools at hand" to conduct an investigation, and are encouraged to avail themselves of those facts prior to filing suit. <u>See Rales</u>, at 935 n.10 ("Although derivative plaintiffs may believe it is difficult to meet the particularization requirement of <u>Aronson</u> . . . they have many avenues available to them to obtain information bearing on the subject of their claims").

Moreover, even if the Complaint adequately alleged that the Board made a conscious decision to refrain from taking any remedial action -- and it does not -- Plaintiff fails to allege with particularity that such decision was not a valid exercise of business judgment. Indeed, there are no facts as to what the Investigation revealed, who engaged in the alleged misconduct or who benefited from the alleged backdated stock options. Put simply, there is not a single allegation (conclusory or otherwise) demonstrating that the alleged decision to not take certain remedial measures (even if such a decision had been made) was anything other than the product of the proper exercise of business judgment.

## II.    PLAINTIFF DOES NOT HAVE STANDING TO CHALLENGE ALLEGED MISCONDUCT OCCURRING BETWEEN 1999 AND 2001 BECAUSE HE WAS NOT A SHAREHOLDER AT THAT TIME.

In addition to the requirement of pleading demand futility with particularity, before a shareholder-plaintiff may institute a suit on behalf of a corporation, Rule 23.1 requires that "the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law." Fed. R. Civ. P. 23.1. See also 8 Del. Code, § 327 ("In any derivative suit instituted by a stockholder of a corporation, it shall be averred in the complaint that the plaintiff was a stockholder at the time of the transaction of which [he] complains . . . .").

The policy behind this requirement is to "prevent the purchasing of stock to be used for the purpose of filing a derivative action attacking transactions occurring prior to such purchase." Schreiber v. R.G. Bryan, 396 A.2d 512, 516 (Del. Ch. 1978) (granting summary dismissal of derivative claims on the grounds that plaintiff was not a shareholder at the time of the occurrence of the underlying transaction). In making this

20

determination, the Court should decide "when the specific acts of alleged wrongdoing occur[red], and not when there effect is felt."  Id.

In this case, Plaintiff alleges, among other things, that between 1999 and 2001, Defendants "granted back-dated stock options" and "improper[ly] manipulat[ed] . . . stock options."[11]  (Compl. ¶¶ 2, 5, 36-37.)  Moreover, Counts III and V of the Complaint purport to seek relief on behalf of Sycamore Networks for "permitt[ing] the stock options granted . . . to be back-dated" and "wast[ing] corporate assets" for such alleged activity.  (Id. ¶¶ 57, 66.)  Nevertheless, Plaintiff also alleges that he did not purchase Sycamore Networks securities until June 25, 2004 -- three years after the misconduct is alleged to have occurred.  (Id. ¶ 10.)  Accordingly, to the extent Plaintiff seeks to bring suit on behalf of Sycamore Networks to recover damages from any defendant for misconduct that allegedly occurred between 1999 and 2001 (as in Counts III and V), Plaintiff lacks standing to pursue those claims.

III.    THE COMPLAINT SHOULD BE DISMISSED
        BECAUSE ALL COUNTS FAILS TO STATE A CLAIM.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Complaint also should be dismissed for failure to state a claim.[12]  The Complaint

---

[11]    Although Plaintiff conclusory alleges that all defendants engaged in this conduct during 1999 to 2001 (see, e.g., Compl. ¶ 37 ("[a]s a result of the improper manipulation of stock options by the D&O Defendants"), the Complaint elsewhere alleges that Messrs. Chisholm and Gaynor were not employed by Sycamore Networks during that time and, accordingly, could not have engaged in the alleged misconduct.  (Id. ¶¶ 17, 21.))

[12]    "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted when, accepting all well-pleaded factual allegations as true, the plaintiff is not entitled to relief as a matter of law."  In re Digital Island Sec. Litig., 223 F. Supp. 2d 546, 550 (D. Del. 2002).  The court does not, however, have to accept bald assertions or legal conclusions.  Id.  Therefore, "[a] complaint which consists of conclusory allegations

*(cont'd)*

21

contains five counts, but provides no factual allegations to even remotely support those

claims.  Instead, the Complaint makes only unsubstantiated, boilerplate allegations that

are insufficient and, consequently, fail as a matter of law.

> **A.     Plaintiff's Section 14(a) Claim Should Be**
> **Dismissed Because The Allegations Are Not Plead**
> **With The Particularity Demanded By The PSLRA.**

In conclusory fashion, Count I of the Complaint alleges that Sycamore

Networks' November 17, 2005 proxy statement was false and misleading because it

"misrepresented or failed to disclose, inter alia, the facts set forth above."  (Compl. ¶ 50.)

But that conclusory allegation is insufficient under the heightened pleading requirements

of the PSLRA and, accordingly, Count I fails as a matter of law.

Section 14(a) of the Exchange Act makes it unlawful to "solicit . . . any

proxy or consent or authorization" in contravention of the SEC rules and regulations.  15

U.S.C. § 78n.[13]  To state a claim for a violation of Section 14(a), Plaintiff must allege that

"(1) a proxy statement contained a material misrepresentation or omission which (2)

_____

*(cont'd from previous page)*
unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)."  Id.
(quoting De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996).

[13]     Although the Complaint does not identify any SEC rule or regulation defendants
allegedly violated -- which alone is fatal to their claim -- Plaintiff is likely alleging a
violation of Rule 14a-9, which provides:

> False or Misleading Statements.  (a) No solicitation subject to this
> regulation shall be made by means of any proxy statement, form of
> proxy, notice of meeting or other communication, written or oral,
> containing any statement which, at the time and in light of the
> circumstances under which it is made, is false or misleading with
> respect to any material fact, or which omits to state any material fact
> necessary in order to make the statements therein not false or
> misleading . . . .

17 C.F.R. § 240.14a-9.

caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an 'essential link in the accomplishment of the transaction.'" Gen. Elec. Co. v. Cathcart, 980 F.2d 927, 932 (3d Cir. 1992).

A complaint alleging a violation of Section 14(a) must also meet the statutorily heightened pleading requirements of the PSLRA. In particular, the PSLRA requires that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation . . . is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1) (emphasis added). See also In re U.S. West, Inc. Sec. Litig., 201 F. Supp. 2d 302, 305 (D. Del. 2002) (dismissing Section 14(a) claim for failure to satisfy pleading requirements of the PSLRA), aff'd, 65 Fed. App'x 856 (3d Cir. 2003).

Plaintiff's allegations fall far short of meeting this standard. As described in detail above, the Complaint is entirely conclusory, and does not contain a single particularized fact to support any of its allegations. That alone is dispositive. In addition, the lone assertion that the proxy statement was false or misleading because it "misrepresented or failed to disclose, inter alia, the facts set forth above" (Compl. ¶ 50), does not sufficiently specify the statement which is alleged to be false and misleading or why that statement is misleading. Nor could it. As the Complaint concedes, Sycamore Networks disclosed the reasons for the Restatement and the findings of the Investigation two months prior to the issuance of the proxy statement. (Id. ¶¶ 30-31.)

23

**B.     Plaintiff's Sarbanes-Oxley Claim Should Be Dismissed
        Because Section 304 Does Not Provide A Private Right Of Action.**

Count II of the Complaint purports to assert a claim against Messrs.
Deshpande, Smith and Gaynor, and Ms. Jewels for disgorgement of all bonuses and other
incentive compensation received by them during fiscal years 2000-2004.  (Compl. ¶¶ 52-
54.)  As a private party, however, Plaintiff does not have standing to assert a Section 304
claim, either on his own behalf or on behalf of Sycamore Networks.[14]

Every court that has considered the issue has held that Section 304 does
not create a private right of action.  In re Digimarc Corp. Derivative Litig., Civ. No. 05-
1324-HA (LEAD), 2006 WL 2345497, at *2-5 (D. Or. Aug. 11, 2006) (dismissing
derivative action for lack of subject matter jurisdiction and holding that plaintiff lacks
standing because "there is no private cause action for violation of Section 304") (Comp.
Tab E); Kogan v. Robinson, 432 F. Supp. 2d 1075, 1077-81 (S.D. Cal. 2006) (dismissing
derivative action and holding that plaintiff does not have standing to pursue a Section 304
claim on behalf of corporation because Section 304 does not provide an express or
implied private right of action); In re Whitehall Jewellers, Inc. S'holder Derivative Litig.,
No. 05 C 1050, 2006 WL 468012, at *7-8 (N.D. Ill. Feb. 27, 2006) (holding that "§ 304
does not give rise to a private right of action") (Comp. Tab G); In re Bisys Group Inc.
Derivative Action, 396 F. Supp. 2d 463, 464 (S.D.N.Y. 2005) (dismissing derivative
action for lack of subject matter jurisdiction and holding that "there is no private right of
action under Section 304 of Sarbanes-Oxley"); Neer v. Pelino, 389 F. Supp. 2d 648, 652,

---

[14]     Section 304 provides for forfeiture by chief executive officers and chief financial
officers of bonuses and profits realized from the sale of securities of the issuer during the
12-month period following the public issuance or filing of financial statements that are
later restated due to "misconduct."  15 U.S.C. § 7243.

657 (E.D. Pa. 2005) (dismissing derivative action for lack of subject matter jurisdiction and holding that Section 304 does not provide an express or implied private right of action).  Accordingly, Count II fails as a matter of law and should be dismissed.

      **C.**      **Counts III, IV and V Should Be Dismissed Because The Allegations Are Wholly Conclusory And Sycamore Networks' Certificate Of Incorporation Exculpates The Director Defendants.**

              **1.**      **Plaintiff's Conclusory Allegations Are Insufficient To State A Claim.**

      Counts III, IV and V should be dismissed because Plaintiff's conclusory allegations fail to state a claim.  Plaintiff provides no factual allegations to even remotely support those claims.  Instead, the Complaint makes only unsubstantiated, conclusory allegations that are insufficient, and consequently, fail as a matter of law.  As the chart below demonstrates, Plaintiff's conclusory assertions provide no factual allegations that even colorably support any claim:

| Conclusory Assertion In Complaint | Why That Assertion Is Wholly Without Merit |
|---|---|
| Defendants "authorized, or by abdication of duty, permitted the stock options granted to the D&O Defendants to be back-dated."  (Compl. ¶ 57.) | How did the Defendants "authorize[] or by abdication of duty, permit[] the stock options to be back-dated?"  What did the Defendants do or not do that provides a basis for this claim? |
| Defendants "by their actions . . . abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of the Company . . . ." (Id. ¶ 62) | Which Defendants "abandoned and abdicated their responsibilities?"  By what "actions" and when? |
| "Defendants wasted corporate assets by . . . ratifying and accepting the improperly granted stock option grants and the improperly manipulated stock options at the expense of the Company." (Id. ¶ 66) | Which Defendants "wasted corporate assets?"  How and when did the Defendants "waste[ ] corporate assets?"  What decisions were made that constituted "waste?" |

25

Unsupported, conclusory allegations like those here are insufficient to state a claim. In re Gen. Motors (Hughes) S'holder Litig., 897 A.2d 162, 168 (Del. 2006) (affirming dismissal of plaintiff's claims for failure to state a claim because the allegations in the complaint did not support the conclusory statements contained therein). Accordingly, Counts III, IV and V should be dismissed.

### 2. The Exculpatory Provision Of Sycamore Networks' Certificate Of Incorporation Bars Plaintiff's Breach Of Fiduciary Duty Claims As To The Director Defendants.

Counts III-V fail to state a claim against the Director Defendants for the independent reason that they are barred by the exculpatory provision in Sycamore Networks' Certificate of Incorporation.[15] Where, as here, the alleged misconduct is covered by an exculpatory provision, and the "facts alleged in the complaint do not state a cognizable claim that the directors acted in their own personal interests rather than in the best interests of the stockholders," the claim should be dismissed. Malpiede, 780 A.2d at 1085 (dismissing suit for breach of duty of care where charter expressly limited director defendants' personal liability). See also McMillan v. Intercargo Corp., 768 A.2d 492, 507 (Del. Ch. 2000) (action failed to state claim for breach of duty of loyalty where allegations of bad faith or intentional misconduct were conclusory and corporation had exculpatory charter provision ).[16]

---

[15]    See supra Part I.B.3.

[16]    See also In re BHC Commc'ns, Inc. S'holder Litig., 789 A.2d 1, 10-11 (Del. Ch. 2001) (dismissing claims, based on exculpatory charter provision, where board allegedly failed to maximize stockholder value but "[t]here [were] no facts alleged from which [the Court] could infer that such 'failure' resulted from anything other than a breach of the duty of care").

In the absence of any factual allegations allowing a reasonable inference of bad faith -- and there are none -- Counts III-V fail to state a claim and fail as a matter of law.

## IV.    COUNTS III, IV AND V OF THE COMPLAINT SHOULD BE DISMISSED FOR THE INDEPENDENT REASON THAT THEY ARE TIME BARRED.

The Complaint alleges three counts against Defendants for alleged breach of fiduciary duty (Count III), gross mismanagement (Count IV) and corporate waste (Count V). All of those claims, however, are barred by the applicable three-year statute of limitations.

While "[g]enerally, . . . the bar of limitations is an affirmative defense[,] . . . it is equally well settled that where the complaint itself alleges facts that show that the complaint is filed too late, the matter may be raised by defendants' motion to dismiss . . . ." Kahn v. Seaboard Corp., 625 A.2d 269, 277 (Del. Ch. 1993). The statute of limitations begins to run "at the time of the alleged wrongful act, even if the plaintiff is ignorant of the cause of action." In re Dean Witter P'ship Litig., No. CIV. A. 14816, 1998 WL 442456, at *4 (Del. Ch. July 17, 1998) (emphasis added) (Comp. Tab D), aff'd 725 A.2d 441 (Del. 1999). In short, a complaint should be dismissed where -- as here -- it alleges facts that demonstrate that the claims are time barred as a matter of law. See id., at *4 (dismissing complaint as time barred); Kahn, 625 A.2d at 277 (dismissing shareholder derivative action on statute of limitations grounds).

When evaluating a statute of limitations argument, the court first ascertains the date Plaintiff's claim accrued (i.e., when the alleged misconduct occurred), then determines whether the statute of limitations was in fact tolled. CertainTeed Corp. v. Celotex Corp., No. Civ. A. 471, 2005 WL 217032, at *7 (Del. Ch. Jan. 24, 2005) (Comp.

Tab C).  Only if a tolling exception applies the Court then determines whether the plaintiff received inquiry notice of any alleged injury, thereby resuming the running of the limitations period.  Id.

### 1. Plaintiff's claims are barred because they were not brought within three years of the alleged misconduct.

The statute of limitations for claims of breach of fiduciary duty, gross mismanagement and corporate waste is three years.  10 Del. Code § 8106 ("no action . . . arising out of contractual or fiduciary relations . . . shall be brought after the expiration of 3 years from the accruing of the cause of such action"); see also Halpern v. Barran, 313 A.2d 139, 141 (Del. Ch. 1973) ("It is by now firmly established that the three-year statute of limitations, 10 Del. C. s 8106, applies to shareholder derivative actions which seek recovery of damages or other essentially legal relief.")

In this case, the Complaint alleges that during 1999 to 2001, Defendants "authorized, modified, or failed to halt the back-dating."  (Compl. ¶ 5.)  Accordingly, the limitations period began to run -- at the latest -- in 2001, even if Plaintiff was not actually aware of the conduct.  In re Dean Witter P'ship Litig., 1998 WL 442456, at *4 ("the cause of action accrues, at the time of the alleged wrongful act, even if the plaintiff is ignorant of the cause of action").  The Complaint makes plain that the alleged misconduct occurred no later than 2001 -- five years prior to bringing this action.  (Compl. ¶ 36.) Because the stock option grants challenged here are alleged to have occurred between 1999 and 2001 (id.), the three-year statute of limitations period for those claims has long expired.

    **2.**      **Plaintiff's conclusory allegations do not -- because they cannot -- demonstrate that the statute of limitations was tolled.**

Plaintiff attempts to allege that the applicable three-year statute of limitations was tolled by the doctrine of fraudulent concealment (Compl. ¶ 44), but he fails to "bear the burden of pleading <u>specific</u> <u>facts</u> to demonstrate that the statute of limitations was, in fact, tolled." <u>In re Dean Witter P'ship Litig.</u>, 1998 WL 442456, at *6 (emphasis added).

Plaintiff conclusorily asserts that "concealment [of the alleged backdating] could not have been discovered through reasonable diligence by the typical shareholder, prior to the commencement of the SEC investigation." (Compl. ¶ 44). In order to toll the statute of limitations by allegations of fraudulent concealment, Plaintiff must plead "an affirmative act of concealment by defendant -- an 'actual artifice'" that prevents plaintiff from discovering the misrepresentation intended to place the plaintiff off the path of inquiry. <u>Id.</u>, at *5. Further, a plaintiff alleging fraudulent concealment must plead fraud <u>with</u> <u>particularity</u>, "and mere use of the word 'fraud' or its equivalent is not a sufficiently particular statement. . . ." <u>Halpern</u>, 313 A.2d at 143 (citations omitted) (holding fiduciary duty claims time barred because plaintiff failed to assert fraudulent concealment with sufficient particularity to toll the statute of limitations). <u>See</u> <u>also</u> <u>Boeing Co. v. Shrontz</u>, Civ. A. No. 11273, 1992 WL 81228, at *3 (Del. Ch. April 20, 1992) (finding fiduciary duty claims time barred because not disclosing illegal activity in SEC filings does not suggest the existence of scheme to conceal facts from plaintiffs) (Comp. Tab A).

Where -- as here -- a plaintiff fails to satisfy <u>his</u> <u>burden</u> to allege with particularity an affirmative act of concealment beyond "mere generalizations, anchored to

no specific acts of concealments by defendants," the doctrine of fraudulent concealment will not toll the statute of limitations. <u>Halpern</u>, 313 A.2d at 144. Plaintiff's single conclusory allegation that unidentified SEC filings misrepresented that stock grants were priced at fair market value falls far short of pleading fraud with the requisite particularity. <u>Boeing Co.</u>, 1992 WL 81228, at *3 (rejecting plaintiffs' claim that defendants' failing to disclose existence of illegal activity in SEC filings as insufficiently particular to toll the statute of limitations under doctrine of fraudulent concealment). Plaintiff fails to allege any particularized facts about the allegedly misrepresented SEC filings, such as <u>which</u> filings contained purported misrepresentations, <u>how</u> those statements were allegedly false or <u>when</u> those filings were actually filed with the SEC. (<u>See</u> Compl. ¶¶ 42). The complete lack of specificity regarding Plaintiff's claim of fraudulent concealment renders that tolling exception inapplicable as a matter of law. Accordingly, Counts III, IV and V should be dismissed.

## CONCLUSION

For all the foregoing reasons, Defendants' motion to dismiss should be granted, and the Complaint should be dismissed with prejudice.

Dated:  August 25, 2006                     Respectfully submitted,
          Wilmington, Delaware


                                            /s/ Robert A. Weber
Of counsel:                                 Anthony W. Clark (#2051)
                                            Robert A. Weber (#4013)
James R. Carroll                            SKADDEN, ARPS, SLATE,
Michael S. Hines                              MEAGHER & FLOM LLP
SKADDEN, ARPS, SLATE,                       One Rodney Square
  MEAGHER & FLOM LLP                        P.O. Box 636
One Beacon Street                           Wilmington, Delaware 19899
Boston, Massachusetts 02108                 (302) 651-3000
(617) 573-4800


                                            Counsel for Nominal Defendant
                                            Sycamore Networks, Inc. and
                                            Defendants Gururaj Deshpande,
                                            Daniel E. Smith and Richard J. Gaynor

                                                  -and-

                                            John D. Donovan, Jr.
                                            Kelly Begg Lawrence
                                            ROPES & GRAY LLP
                                            One International Place
                                            Boston, Massachusetts 02110
                                            (617) 951-7000

                                            Counsel for Defendants
                                            Timothy A. Barrows,
                                            Paul W. Chisholm, Paul J. Ferri
                                            and John W. Gerdelman

# EXHIBIT A

EXHIBIT 3.1

AMENDED AND RESTATED
CERTIFICATE OF INCORPORATION
OF
SYCAMORE NETWORKS, INC.

Sycamore Networks, Inc., a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware, does hereby certify as follows:

1.  The Corporation filed its original Certificate of Incorporation with the Secretary of State of the State of Delaware (the "Delaware Secretary") on February 17, 1998.  A Certificate of Amendment to Certificate of Incorporation was filed with the Delaware Secretary on October 29, 1998.  A Certificate of Amendment to Certificate of Incorporation was filed with the Delaware Secretary on December 3, 1998.  A Certificate of Amendment to Certificate of Incorporation was filed with the Delaware Secretary on February 25, 1999.  A Certificate of Amendment to Certificate of Incorporation was filed with the Delaware Secretary on July 23, 1999.  A Certificate of Amendment to the Certificate of Incorporation was filed with the Delaware Secretary of State on August 27, 1999.

2.  At a duly called meeting of the Board of Directors of the Corporation at which a quorum was present at all times, a resolution was duly adopted, pursuant to Sections 242 and 245 of the General Corporation Law of the State of Delaware, setting forth an Amended and Restated Certificate of Incorporation of the Corporation and declaring said Amended and Restated Certificate of Incorporation advisable.  The stockholders of the Corporation duly approved said proposed Amended and Restated Certificate of Incorporation by written consent in accordance with Sections 228, 242 and 245 of the General Corporation Law of the State of Delaware, and written notice of such consent has been given to all stockholders who have not consented in writing to said restatement.  The resolution setting forth the Amended and Restated Certificate of Incorporation is as follows:

RESOLVED:  That the Certificate of Incorporation of the Corporation, be and
--------
             hereby is amended and restated in its entirety so that the same
             shall read as follows:

    FIRST.  The name of the Corporation is:

             Sycamore Networks, Inc.

    SECOND.  The address of its registered office in the State of Delaware is Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, County of New Castle.  The name of its registered agent at such address is The Corporation Trust Company.

    THIRD.  The nature of the business or purposes to be conducted or promoted by the Corporation is as follows:

To engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

FOURTH:  The total number of shares of all classes of stock which the Corporation shall have authority to issue is 255,000,000 shares, consisting of (i) 250,000,000 shares of Common Stock, $.001 par value per share ("Common Stock"), and (ii) 5,000,000 shares of Preferred Stock, $.01 par value per share ("Preferred Stock").

The following is a statement of the designations and the powers, privileges and rights, and the qualifications, limitations or restrictions thereof in respect of each class of capital stock of the Corporation.

A.    COMMON STOCK.
      ------------

1.    General.  The voting, dividend and liquidation rights of the holders
      -------
of the Common Stock are subject to and qualified by the rights of the holders of the Preferred Stock of any series as may be designated by the Board of Directors upon any issuance of the Preferred Stock of any series.

2.    Voting.  The holders of the Common Stock are entitled to one vote for
      ------
each share held at all meetings of stockholders.  There shall be no cumulative voting.

The number of authorized shares of Common Stock may be increased or decreased (but not below the number of shares thereof then outstanding) by the affirmative vote of the holders of a majority of the stock of the Corporation entitled to vote, irrespective of the provisions of Section 242(b)(2) of the General Corporation Law of Delaware.

3.    Dividends.  Dividends may be declared and paid on the Common Stock
      ---------
from funds lawfully available therefor as and when determined by the Board of Directors and subject to any preferential dividend rights of any then outstanding Preferred Stock.

4.    Liquidation.  Upon the dissolution or liquidation of the Corporation,
      -----------
whether voluntary or involuntary, holders of Common Stock will be entitled to receive all assets of the Corporation available for distribution to its stockholders, subject to any preferential rights of any then outstanding Preferred Stock.

B.    PREFERRED STOCK.
      ---------------

Preferred Stock may be issued from time to time in one or more series, each of such series to have such terms as stated or expressed herein and in the resolution or resolutions providing for the issue of such series adopted by the Board of Directors of the Corporation as hereinafter provided.  Any shares of Preferred Stock which may be redeemed, purchased or acquired by the Corporation may be reissued except as otherwise provided by law.  Different series of Preferred Stock shall not be construed to constitute different classes of shares for the purposes of voting by classes unless expressly provided.

Authority is hereby expressly granted to the Board of Directors from time to time to issue the Preferred Stock in one or more series, and in connection with the creation of any such series,

-2-

by resolution or resolutions providing for the issue of the shares thereof, to
determine and fix such voting powers, full or limited, or no voting powers, and
such designations, preferences and relative participating, optional or other
special rights, and qualifications, limitations or restrictions thereof,
including without limitation thereof, dividend rights, conversion rights,
redemption privileges and liquidation preferences, as shall be stated and
expressed in such resolutions, all to the full extent now or hereafter permitted
by the General Corporation Law of Delaware. Without limiting the generality of
the foregoing, the resolutions providing for issuance of any series of Preferred
Stock may provide that such series shall be superior or rank equally or be
junior to the Preferred Stock of any other series to the extent permitted by
law. Except as otherwise provided in this Certificate of Incorporation, no vote
of the holders of the Preferred Stock or Common Stock shall be a prerequisite to
the designation or issuance of any shares of any series of the Preferred Stock
authorized by and complying with the conditions of this Certificate of
Incorporation, the right to have such vote being expressly waived by all present
and future holders of the capital stock of the Corporation.

       FIFTH.   The Corporation shall have a perpetual existence.

       SIXTH.   In furtherance of and not in limitation of powers conferred by
statute, it is further provided that the Board of Directors is expressly
authorized to adopt, amend or repeal the By-Laws of the Corporation.

       SEVENTH.  Except to the extent that the General Corporation Law of Delaware
prohibits the elimination or limitation of liability of directors for breaches
of fiduciary duty, no director of the Corporation shall be personally liable to
the Corporation or its stockholders for monetary damages for any breach of
fiduciary duty as a director, notwithstanding any provision of law imposing such
liability.  No amendment to or repeal of this provision shall apply to or have
any effect on the liability or alleged liability of any director of the
Corporation for or with respect to any acts or omissions of such director
occurring prior to such amendment.

       EIGHTH.  1.   Actions, Suits and Proceedings Other than by or in the Right
                     -------------------------------------------------------------
of the Corporation.  The Corporation shall indemnify each person who was or is a
------------------
party or is threatened to be made a party to any threatened, pending or
completed action, suit or proceeding, whether civil, criminal, administrative or
investigative (other than an action by or in the right of the Corporation), by
reason of the fact that he is or was, or has agreed to become, a director or
officer of the Corporation, or is or was serving, or has agreed to serve, at the
request of the Corporation, as a director, officer or trustee of, or in a
similar capacity with, another corporation, partnership, joint venture, trust or
other enterprise (including any employee benefit plan) (all such persons being
referred to hereafter as an "Indemnitee"), or by reason of any action alleged to
have been taken or omitted in such capacity, against all expenses (including
attorneys' fees), judgments, fines and amounts paid in settlement actually and
reasonably incurred by him or on his behalf in connection with such action, suit
or proceeding and any appeal therefrom, if he acted in good faith and in a
manner he reasonably believed to be in, or not opposed to, the best interests of
the Corporation, and, with respect to any criminal action or proceeding, had no
reasonable cause to believe his conduct was unlawful.  The termination of any
action, suit or proceeding by judgment, order, settlement, conviction or upon a
plea of nolo contendere or its equivalent, shall not, of itself, create a
              ---------------
presumption that the person did not act in good faith and in a manner which he
reasonably believed to be in, or not opposed to, the best interests of the

-3-

Corporation, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful. Notwithstanding anything to the contrary in this Article, except as set forth in Section 7 below, the Corporation shall not indemnify an Indemnitee seeking indemnification in connection with a proceeding (or part thereof) initiated by the Indemnitee unless the initiation thereof was approved by the Board of Directors of the Corporation. Notwithstanding anything to the contrary in this Article, the Corporation shall not indemnify an Indemnitee to the extent such Indemnitee is reimbursed from the proceeds of insurance, and in the event the Corporation makes any indemnification payments to an Indemnitee and such Indemnitee is subsequently reimbursed from the proceeds of insurance, such Indemnitee shall promptly refund such indemnification payments to the Corporation to the extent of such insurance reimbursement.

2.   Actions or Suits by or in the Right of the Corporation.  The
     --------------------------------------------------------
Corporation shall indemnify any Indemnitee who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Corporation to procure a judgment in its favor by reason of the fact that he is or was, or has agreed to become, a director or officer of the Corporation, or is or was serving, or has agreed to serve, at the request of the Corporation, as a director, officer or trustee of, or in a similar capacity with, another corporation, partnership, joint venture, trust or other enterprise (including any employee benefit plan), or by reason of any action alleged to have been taken or omitted in such capacity, against all expenses (including attorneys' fees) and, to the extent permitted by law, amounts paid in settlement actually and reasonably incurred by him or on his behalf in connection with such action, suit or proceeding and any appeal therefrom, if he acted in good faith and in a manner he reasonably believed to be in, or not opposed to, the best interests of the Corporation, except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable to the Corporation unless and only to the extent that the Court of Chancery of Delaware shall determine upon application that, despite the adjudication of such liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses (including attorneys' fees) which the Court of Chancery of Delaware shall deem proper.

3.   Indemnification for Expenses of Successful Party.  Notwithstanding the
     -------------------------------------------------
other provisions of this Article, to the extent that an Indemnitee has been successful, on the merits or otherwise, in defense of any action, suit or proceeding referred to in Sections 1 and 2 of this Article, or in defense of any claim, issue or matter therein, or on appeal from any such action, suit or proceeding, he shall be indemnified against all expenses (including attorneys' fees) actually and reasonably incurred by him or on his behalf in connection therewith. Without limiting the foregoing, if any action, suit or proceeding is disposed of, on the merits or otherwise (including a disposition without prejudice), without (i) the disposition being adverse to the Indemnitee, (ii) an adjudication that the Indemnitee was liable to the Corporation, (iii) a plea of guilty or nolo contendere by the Indemnitee, (iv) an adjudication that the
     ---------------
Indemnitee did not act in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Corporation, and (v) with respect to any criminal proceeding, an adjudication that the Indemnitee had reasonable cause to believe his conduct was unlawful, the Indemnitee shall be considered for the purposes hereof to have been wholly successful with respect thereto.

-4-

4.   Notification and Defense of Claim.  As a condition precedent to his
     --------------------------------
right to be indemnified, the Indemnitee must notify the Corporation in writing
as soon as practicable of any action, suit, proceeding or investigation
involving him for which indemnity will or could be sought.  With respect to any
action, suit, proceeding or investigation of which the Corporation is so
notified, the Corporation will be entitled to participate therein at its own
expense and/or to assume the defense thereof at its own expense, with legal
counsel reasonably acceptable to the Indemnitee.  After notice from the
Corporation to the Indemnitee of its election so to assume such defense, the
Corporation shall not be liable to the Indemnitee for any legal or other
expenses subsequently incurred by the Indemnitee in connection with such claim,
other than as provided below in this Section 4.  The Indemnitee shall have the
right to employ his own counsel in connection with such claim, but the fees and
expenses of such counsel incurred after notice from the Corporation of its
assumption of the defense thereof shall be at the expense of the Indemnitee
unless (i) the employment of counsel by the Indemnitee has been authorized by
the Corporation, (ii) counsel to the Indemnitee shall have reasonably concluded
that there may be a conflict of interest or position on any significant issue
between the Corporation and the Indemnitee in the conduct of the defense of such
action or (iii) the Corporation shall not in fact have employed counsel to
assume the defense of such action, in each of which cases the fees and expenses
of counsel for the Indemnitee shall be at the expense of the Corporation, except
as otherwise expressly provided by this Article.  The Corporation shall not be
entitled, without the consent of the Indemnitee, to assume the defense of any
claim brought by or in the right of the Corporation or as to which counsel for
the Indemnitee shall have reasonably made the conclusion provided for in clause
(ii) above.

5.   Advance of Expenses.  Subject to the provisions of Section 6 below, in
     -------------------
the event that the Corporation does not assume the defense pursuant to Section 4
of this Article of any action, suit, proceeding or investigation of which the
Corporation receives notice under this Article, any expenses (including
attorneys' fees) incurred by an Indemnitee in defending a civil or criminal
action, suit, proceeding or investigation or any appeal therefrom shall be paid
by the Corporation in advance of the final disposition of such matter; provided,
however, that the payment of such expenses incurred by an Indemnitee in advance
of the final disposition of such matter shall be made only upon receipt of an
undertaking by or on behalf of the Indemnitee to repay all amounts so advanced
in the event that it shall ultimately be determined that the Indemnitee is not
entitled to be indemnified by the Corporation as authorized in this Article.
Such undertaking shall be accepted without reference to the financial ability of
the Indemnitee to make such repayment.

6.   Procedure for Indemnification.  In order to obtain indemnification or
     -----------------------------
advancement of expenses pursuant to Section 1, 2, 3 or 5 of this Article, the
Indemnitee shall submit to the Corporation a written request, including in such
request such documentation and information as is reasonably available to the
Indemnitee and is reasonably necessary to determine whether and to what extent
the Indemnitee is entitled to indemnification or advancement of expenses.  Any
such indemnification or advancement of expenses shall be made promptly, and in
any event within 60 days after receipt by the Corporation of the written request
of the Indemnitee, unless with respect to requests under Section 1, 2 or 5 the
Corporation determines within such 60-day period that the Indemnitee did not
meet the applicable standard of conduct set forth in Section 1 or 2, as the case
may be.  Such determination shall be made in each instance by (a) a majority
vote of the directors of the Corporation consisting of persons who are

-5-

not at that time parties to the action, suit or proceeding in question
("disinterested directors"), whether or not a quorum, (b) a majority vote of a
committee of disinterested directors designated by majority vote of
disinterested directors, whether or not a quorum, (c) a majority vote of a
quorum of the outstanding shares of stock of all classes entitled to vote for
directors, voting as a single class, which quorum shall consist of stockholders
who are not at that time parties to the action, suit or proceeding in question,
(d) independent legal counsel (who may, to the extent permitted by law, be
regular legal counsel to the Corporation), or (e) a court of competent
jurisdiction.

     7.   Remedies.  The right to indemnification or advances as granted by this
        --------
Article shall be enforceable by the Indemnitee in any court of competent
jurisdiction if the Corporation denies such request, in whole or in part, or if
no disposition thereof is made within the 60-day period referred to above in
Section 6.  Unless otherwise required by law, the burden of proving that the
Indemnitee is not entitled to indemnification or advancement of expenses under
this Article shall be on the Corporation.  Neither the failure of the
Corporation to have made a determination prior to the commencement of such
action that indemnification is proper in the circumstances because the
Indemnitee has met the applicable standard of conduct, nor an actual
determination by the Corporation pursuant to Section 6 that the Indemnitee has
not met such applicable standard of conduct, shall be a defense to the action or
create a presumption that the Indemnitee has not met the applicable standard of
conduct.  The Indemnitee's expenses (including attorneys' fees) incurred in
connection with successfully establishing his right to indemnification, in whole
or in part, in any such proceeding shall also be indemnified by the Corporation.

     8.   Subsequent Amendment.  No amendment, termination or repeal of this
        ---------------------
Article or of the relevant provisions of the General Corporation Law of Delaware
or any other applicable laws shall affect or diminish in any way the rights of
any Indemnitee to indemnification under the provisions hereof with respect to
any action, suit, proceeding or investigation arising out of or relating to any
actions, transactions or facts occurring prior to the final adoption of such
amendment, termination or repeal.

     9.   Other Rights.  The indemnification and advancement of expenses
        ------------
provided by this Article shall not be deemed exclusive of any other rights to
which an Indemnitee seeking indemnification or advancement of expenses may be
entitled under any law (common or statutory), agreement or vote of stockholders
or disinterested directors or otherwise, both as to action in his official
capacity and as to action in any other capacity while holding office for the
Corporation, and shall continue as to an Indemnitee who has ceased to be a
director or officer, and shall inure to the benefit of the estate, heirs,
executors and administrators of the Indemnitee.  Nothing contained in this
Article shall be deemed to prohibit, and the Corporation is specifically
authorized to enter into, agreements with officers and directors providing
indemnification rights and procedures different from those set forth in this
Article.  In addition, the Corporation may, to the extent authorized from time
to time by its Board of Directors, grant indemnification rights to other
employees or agents of the Corporation or other persons serving the Corporation
and such rights may be equivalent to, or greater or less than, those set forth
in this Article.

     10.  Partial Indemnification.  If an Indemnitee is entitled under any
        ------------------------
provision of this Article to indemnification by the Corporation for some or a
portion of the expenses (including

-6-

attorneys' fees), judgments, fines or amounts paid in settlement actually and reasonably incurred by him or on his behalf in connection with any action, suit, proceeding or investigation and any appeal therefrom but not, however, for the total amount thereof, the Corporation shall nevertheless indemnify the Indemnitee for the portion of such expenses (including attorneys' fees), judgments, fines or amounts paid in settlement to which the Indemnitee is entitled.

11.   Insurance.  The Corporation may purchase and maintain insurance, at
      ---------
its expense, to protect itself and any director, officer, employee or agent of the Corporation or another corporation, partnership, joint venture, trust or other enterprise (including any employee benefit plan) against any expense, liability or loss incurred by him in any such capacity, or arising out of his status as such, whether or not the Corporation would have the power to indemnify such person against such expense, liability or loss under the General Corporation Law of Delaware.

12.   Merger or Consolidation.  If the Corporation is merged into or
      -----------------------
consolidated with another corporation and the Corporation is not the surviving corporation, the surviving corporation shall assume the obligations of the Corporation under this Article with respect to any action, suit, proceeding or investigation arising out of or relating to any actions, transactions or facts occurring prior to the date of such merger or consolidation.

13.   Savings Clause.  If this Article or any portion hereof shall be
      --------------
invalidated on any ground by any court of competent jurisdiction, then the Corporation shall nevertheless indemnify each Indemnitee as to any expenses (including attorneys' fees), judgments, fines and amounts paid in settlement in connection with any action, suit, proceeding or investigation, whether civil, criminal or administrative, including an action by or in the right of the Corporation, to the fullest extent permitted by any applicable portion of this Article that shall not have been invalidated and to the fullest extent permitted by applicable law.

14.   Definitions.  Terms used herein and defined in Section 145(h) and
      -----------
Section 145(i) of the General Corporation Law of Delaware shall have the respective meanings assigned to such terms in such Section 145(h) and Section 145(i).

15.   Subsequent Legislation.  If the General Corporation Law of Delaware is
      ----------------------
amended after adoption of this Article to expand further the indemnification permitted to Indemnitees, then the Corporation shall indemnify such persons to the fullest extent permitted by the General Corporation Law of Delaware, as so amended.

NINTH.  The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Certificate of Incorporation, in the manner now or hereafter prescribed by statute and this Certificate of Incorporation, and all rights conferred upon stockholders herein are granted subject to this reservation.

TENTH.  This Article is inserted for the management of the business and for the conduct of the affairs of the Corporation.

1.   Number of Directors.  The number of directors of the Corporation shall
     -------------------
not be less than three.  The exact number of directors within the limitations specified in the preceding sentence shall be fixed from time to time by, or in the manner provided in, the Corporation's By-Laws.

2.   Classes of Directors.  The Board of Directors shall be and is divided
     --------------------
into three classes:  Class I, Class II and Class III.  No one class shall have
more than one director more than any other class.  If a fraction is contained in
the quotient arrived at by dividing the designated number of directors by three,
then, if such fraction is one-third, the extra director shall be a member of
Class I, and if such fraction is two-thirds, one of the extra directors shall be
a member of Class I and one of the extra directors shall be a member of Class
II, unless otherwise provided from time to time by resolution adopted by the
Board of Directors.

3.   Election of Directors.  Elections of directors need not be by written
     ---------------------
ballot except as and to the extent provided in the By-Laws of the Corporation.

4.   Terms of Office.  Each director shall serve for a term ending on the
     ---------------
date of the third annual meeting following the annual meeting at which such
director was elected; provided, that each initial director in Class I shall
serve for a term ending on the date of the annual meeting in 2000; each initial
director in Class II shall serve for a term ending on the date of the annual
meeting in 2001; and each initial director in Class III shall serve for a term
ending on the date of the annual meeting in 2002; and provided further, that the
term of each director shall be subject to the election and qualification of his
successor and to his earlier death, resignation or removal.

5.   Allocation of Directors Among Classes in the Event of Increases or
     ---------------------------------------------------------------
Decreases in the Number of Directors.  In the event of any increase or decrease
-------------------------------------
in the authorized number of directors, (i) each director then serving as such
shall nevertheless continue as a director of the class of which he is a member
and (ii) the newly created or eliminated directorships resulting from such
increase or decrease shall be apportioned by the Board of Directors among the
three classes of directors so as to ensure that no one class has more than any
director more than any other class.  To the extent possible, consistent with the
foregoing rule, any newly created directorships shall be added to those classes
whose terms of office are to expire at the latest dates following such
allocation, and any newly eliminated directorships shall be subtracted from
those classes whose terms of offices are to expire at the earliest dates
following such allocation, unless otherwise provided from time to time by
resolution adopted by the Board of Directors.

6.   Quorum; Action at Meeting.  A majority of the directors at any time in
     -------------------------
office shall constitute a quorum for the transaction of business.  In the event
one or more of the directors shall be disqualified to vote at any meeting, then
the required quorum shall be reduced by one for each director so disqualified,
provided that in no case shall less than one-third of the number of directors
fixed pursuant to Section 1 above constitute a quorum.  If at any meeting the
Board of Directors there shall be less than such a quorum, a majority of those
present may adjourn the meeting from time to time.  Every act or decision done
or made by a majority of the directors present at a meeting duly held at which a
quorum is present shall be regarded as the act of the Board of Directors unless
a greater number is required by law, by the By-Laws of the Corporation or by
this Certificate of Incorporation.

7.   Removal.  Directors of the Corporation may be removed only for cause
     -------
by the affirmative vote of the holders of at least two-thirds of the shares of
the capital stock of the Corporation issued and outstanding and entitled to
vote.

-8-

8.   Vacancies.  Any vacancy in the Board of Directors, however occurring,
     ---------
including a vacancy resulting from an enlargement of the size of the Board of
Directors, shall be filled only by a vote of a majority of the directors then in
office, although less than a quorum, or by a sole remaining director.  A
director elected to fill a vacancy shall be elected for the unexpired term of
his predecessor in office, and a director chosen to fill a position resulting
from an increase in the number of directors shall hold office until the next
election of the class for which such director shall have been chosen, subject to
the election and qualification of his successor and to his earlier death,
resignation or removal.

9.   Stockholder Nominations and Introduction of Business, Etc.  Advance
     ------------------------------------------------------------
notice of stockholder nominations for election of directors and other business
to be brought by stockholders before a meeting of stockholders shall be given in
the manner provided by the By-Laws of the Corporation.

10.  Amendments to Article.  Notwithstanding any other provisions of law,
     ---------------------
this Certificate of Incorporation or the By-Laws of the Corporation, and
notwithstanding the fact that a lesser percentage may be specified by law, the
affirmative vote of the holders of at least sixty-six and two-thirds percent (66
2/3%) of the shares of capital stock of the Corporation issued and outstanding
and entitled to vote shall be required to amend or repeal, or to adopt any
provision inconsistent with, this Article TENTH.

ELEVENTH.  Stockholders of the Corporation may not take any action by
written consent in lieu of a meeting.  Notwithstanding any other provisions of
law, this Certificate of Incorporation or the By-Laws of the Corporation, and
notwithstanding the fact that a lesser percentage may be specified by law, the
affirmative vote of the holders of at least sixty-six and two-thirds percent (66
2/3%) of the shares of capital stock of the Corporation issued and outstanding
and entitled to vote shall be required to amend or repeal, or to adopt any
provision inconsistent with, this Article ELEVENTH.

TWELFTH.  Special meetings of stockholders may be called at any time by
only the Chairman of the Board of Directors, the President or the Board of
Directors.  Business transacted at any special meeting of stockholders shall be
limited to matters relating to the purpose or purposes stated in the notice of
meeting.  Notwithstanding any other provision of law, this Certificate of
Incorporation or the By-Laws of the Corporation, and notwithstanding the fact
that a lesser percentage may be specified by law, the affirmative vote of the
holders of at least sixty-six and two-thirds percent (66 2/3%) of the shares of
capital stock of the Corporation issued and outstanding and entitled to vote
shall be required to amend or repeal, or to adopt any provision inconsistent
with, this Article TWELFTH.

IN WITNESS WHEREOF, the Corporation has caused this Amended and Restated
Certificate of Incorporation to be signed by its President this 27th day of
October, 1999.

                    SYCAMORE NETWORKS, INC.

                    /s/ Daniel E. Smith
                    -------------------
                    Daniel E. Smith
                    President

                    -9-

EXHIBIT 3.2

CERTIFICATE OF AMENDMENT

TO THE

AMENDED AND RESTATED CERTIFICATE OF INCORPORATION

OF

SYCAMORE NETWORKS, INC.

---

Pursuant to Section 242 of the General
Corporation Law of the State of Delaware

---

Sycamore Networks, Inc., a Delaware corporation (hereinafter called the "Corporation"), does hereby certify as follows:

FIRST: Article 4 of the Corporation's Amended and Restated Certificate of Incorporation is hereby amended to read in its entirety as set forth below:

FOURTH: The total number of shares of all classes of stock which the Corporation shall have authority to issue is 1,505,000,000 shares, consisting of (i) 1,500,000,000 shares of Common Stock, $.001 par value per share ("Common Stock"), and (ii) 5,000,000 shares of Preferred Stock, $.01 par value per share ("Preferred Stock").

SECOND: The foregoing amendment was duly adopted in accordance with Section 242 of the General Corporation Law of the State of Delaware.

IN WITNESS WHEREOF, Sycamore Networks, Inc. has caused this Certificate to be duly executed in its corporate name this 26th day of January, 2000.

SYCAMORE NETWORKS, INC.

By: /s/ Daniel E. Smith
    ------------------------------------
Name:  Daniel E. Smith
Title: President and Chief Executive
       Officer

2

Exhibit 3.3

CERTIFICATE OF AMENDMENT

TO THE

AMENDED AND RESTATED CERTIFICATE OF INCORPORATION

OF

SYCAMORE NETWORKS, INC.

---

Pursuant to Section 242 of the General
Corporation Law of the State of Delaware

---

Sycamore Networks, Inc., a Delaware corporation (hereinafter called the "Corporation"), does hereby certify as follows:

FIRST: The first paragraph of Article Fourth of the Corporation's Amended and Restated Certificate of Incorporation is hereby amended to read in its entirety as set forth below:

FOURTH: The total number of shares of all classes of stock which the Corporation shall have authority to issue is 2,505,000,000 shares, consisting of (i) 2,500,000,000 shares of Common Stock, $.001 par value per share ("Common Stock"), and (ii) 5,000,000 shares of Preferred Stock, $.01 par value per share ("Preferred Stock.).

SECOND: The foregoing amendment was duly adopted in accordance with Section 242 of the General Corporation Law of the State of Delaware.

IN WITNESS WHEREOF, Sycamore Networks, Inc. has caused this Certificate to be duly executed in its corporate name this 14/th/ day of December, 2000

SYCAMORE NETWORKS, INC.


By: /s/ Daniel E. Smith
    ------------------------

Name:  Daniel E. Smith
Title: President and Chief Executive Officer

## CERTIFICATE OF SERVICE

I, Robert A. Weber, do hereby certify that on August 25, 2006, I caused Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss to be served upon the following counsel of record:

**BY HAND**

| | |
|---|---|
| Pamela S. Tikellis | Michael S. Gardener |
| Robert J. Kriner, Jr. | Michael F. Connolly |
| A. Zachary Naylor | MINTZ, LEVIN, COHN, FERRIS |
| CHIMICLES& TIKELLIS LLP | GLOVSKY & POPEO P.C. |
| One Rodney Square | One Financial Center |
| P.O. Box 1035 | Boston, Massachusetts 02111 |
| Wilmington, Delaware 19899 | |

**BY FEDEX**

| | |
|---|---|
| Jeffrey G. Smith | Jacob T. Fogel |
| Lawrence P. Kolker | LAW OFFICES OF |
| Gustavo Bruckner | JACOB T. FOGEL |
| Martin Restituyo | 32 Court Street |
| WOLF HALDENSTEIN ADLER | Suite # 602 |
| FREEMAN & HERZ LLP | Brooklyn, New York 11201 |
| 270 Madison Avenue | |
| New York, New York 10016 | |

William O. LaMotte, III
MORRIS, NICHOLS, ARSHT
 & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899

/s/ Robert A. Weber
Robert A. Weber (#4013)

32